UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | CRIMINAL NO. 04-10060-RCL |
| | ) | |
| GEORGE SCHUSSEL, | ) | |
| Defendant | ) | |

**DEFENDANT GEORGE SCHUSSEL'S MOTION TO SUPPRESS THE TESTIMONY OF ATTORNEYS EDWARD DEFRANCESCHI AND KENNETH GLUSMAN AND INCORPORATED MEMORANDUM OF LAW**

Now comes the defendant George Schussel and respectfully moves that this Honorable Court exclude from the trial of this case any testimony of attorneys Edward DeFranceschi and Kenneth Glusman[1] regarding confidential and privileged communications between either of them and Digital Consulting, Inc. ("DCI") and/or Schussel and regarding any communications either of them had with Ron Gomes disclosure of which would violate the common interest doctrine.

As reason therefor, defendant states:

1. Both he and his company, DCI, had attorney-client relationships with Kenneth Glusman, other attorneys in his firm, and Edward DeFranceschi, during the course of which privileged communications passed between defendant or DCI and DeFranceschi, Glusman, and other persons acting on behalf of Brown, Rudnick.

2. The government proposes to call both DeFranceschi and Glusman as witnesses against Schussel at the trial of this case and to elicit from them communications as to which DCI or

---

[1] With respect to Glusman, this motion also seeks to exclude any testimony by him regarding privileged communications between DCI or Schussel and any person acting on behalf of Brown, Rudnick, Glusman's law firm, during the course of that firm's representation of DCI or Schussel.

Schussel, or both, assert their attorney-client privileges.[2] Because these communications are protected by the attorney-client privilege, testimony regarding them at trial should be precluded.

3. The government has provided defendant with an affidavit of DeFranceschi and a Memorandum of Interview of his IRS interview. *See* Deft. Reply, Ex. A. All of the communications reflected in those documents are protected by one or more of the attorney-client privilege, the work-product privilege, or the common interest privilege. At a minimum, this Court should order the government to provide defendant with a list of the communications made by Schussel or DCI to DeFranceschi or Glusman, or anyone acting on behalf of Brown, Rudnick, and the communications made by DeFranceschi or Glusman, or anyone else associated with Brown, Rudnick, which it intends to elicit at trial. Such disclosure would enable defendant to identify the communications as to which he asserts his attorney-client privilege and/or that of DCI and to present arguments to the Court regarding why each document as to which he or DCI claims the privilege falls within the protection of the attorney-client privilege. Concomitantly, such disclosure would enable this Court to make a communication-by-communication determination as to whether or not each communication is protected by the attorney-client privilege and to decide these important issues in advance of trial. Defendant also requests that this Court hold an evidentiary hearing on this issue.

---

[2] Defendant anticipates that the government will also seek to introduce through both of these witnesses documents or other written communications between Schussel or DCI and counsel as to which DCI or Schussel or both have asserted their attorney-client privileges and, as to some documents, their work-product privileges. Those documents, insofar as they are known to the defendant to be in the possession of the government and intended for use at trial, are the subject of a separate motion. *See* Memorandum of Law in Support of Motion to Suppress Government's Use of Privileged Materials and for Other Appropriate Relief and defendant's Reply to the government's Opposition thereto. In addition, the defendant has filed a privilege log relating to other documents which the government intends to subpoena from DeFranceschi, but the resolution of issues relating to those documents would be premature in the absence of a subpoena which would create an actual case or controversy regarding the documents in question.

As further reason therefor, defendant refers this Court to the Memorandum of Law incorporated herein.

## REQUEST FOR ORAL ARGUMENT

Defendant requests oral argument and, if necessary, an evidentiary hearing on this motion.

## LOCAL RULE 7.1(A)(2) STATEMENT

Counsel attempted to contact AUSA Carmen Ortiz on Monday, January 17, 2005, but was unsuccessful because of the holiday. Counsel does, however, understand from prior conversations with AUSA Ortiz that the government would not assent to the granting of this motion.

## MEMORANDUM OF LAW

### I.   BACKGROUND

Much of the background information underlying this motion has been set forth in detail in defendant's Memorandum of Law in Support of Motion to Suppress Government's Use of Privileged Materials and for Other Appropriate Relief ("Deft. Memo") and defendant's Reply to the government's Opposition thereto ("Deft. Reply"), and defendant will, therefore, set forth only a brief précis here.

### A.   Edward DeFranceschi

The attorney-client relationship between Schussel, DCI, and Gomes began on November 4, 1997, with DCI and its owner Schussel seeking representation in a 1995 IRS audit of DCI. The audit expanded to 1996, during which DCI was converted into a S Corporation so implicitly the individual interests of Schussel were implicated. Following the audit, DeFranceschi gave tax advice to Schussel individually. During the course of that representation, numerous privileged and confidential communications passed from Schussel, DCI, and/or Gomes to   DeFranceschi and from

DeFranceschi to Schussel, DCI, and/or Gomes. Several years later, the IRS began a tax investigation of Schussel, during the course of which it notified DeFranceschi, through counsel, that he was a subject of its investigation. DeFranceschi thereafter met with the government and proffered information to the government, which included privileged communications of Schussel and DCI. *See* Deft. Reply, Ex. A. He also provided the government with documents as to which DCI and/or Schussel have asserted both their attorney-client privileges and, as to some, their work-product privileges. Following a series of meetings between the government and DeFranceschi and/or his counsel, the government determined that DeFranceschi would not be indicted and now proposes to call him as a witness against his former client and to elicit from him privileged communications.

### B.    Kenneth Glusman

Glusman was retained to represent Schussel personally regarding the tax implications of different proposed strategies for the sale of his interests in DCI. He also, jointly with DeFranceschi, represented DCI, Schussel, and Ron Gomes with respect to the DCI tax audit and to advising Schussel and Gomes with respect to filing amended tax returns. Schussel and DCI had an attorney-client relationship with Glusman from 1997 to 1998, during which numerous confidential communications passed among Schussel, DCI, Gomes and Glusman. Glusman has not yet, to Schussel's knowledge, spoken with the government, but the government has indicated a desire to subpoena him and his records to appear as a witness at the trial of this case.

## II.    ARGUMENT

The government cannot be permitted to call DeFranceschi and Glusman as witnesses against him to testify regarding confidential communications between or among themselves and their clients until this Court determines whether such confidential communications are encompassed

within the attorney-client privileges of DCI and/or Schussel. Because neither DeFranceschi nor Glusman may reveal publicly any communications which are entitled to the protection of the privilege, this is a matter which should be determined prior to trial.

The attorney-client privilege is not only "the oldest of the privileges for confidential communications known to the common law," *Upjohn Co. v. United States*, 449 U.S. 383, 389 (1981), but it is also one which plays a crucial role in the administration of justice. The attorney-client privilege embodies the recognition that our system of justice – both civil and criminal – cannot function unless clients feel free to confide in their attorneys all the information necessary to fully effective assistance of counsel. The purpose of the privilege

> is to encourage full and frank communication between attorneys and their clients and thereby promote broader public interests in the observance of law and administration of justice. The privilege recognizes that sound legal advice or advocacy depends upon the lawyer's being fully informed by the client.

*Id. See also State of Maine v. United States Dep't of Interior*, 298 F.3d 60, 71 (1st Cir. 2002)("The modern rationale for the privilege is more practical and expansive, promoting full disclosure by clients to their attorneys; it enables the attorney to act more effectively, justly, and expeditiously" (internal quotation marks omitted)). So sacrosanct is the privilege that it survives even the death of the client because "[k]nowing that communications will remain confidential even after death encourages the client to communicate fully and frankly with counsel." *Swidler & Berlin v. United States*, 524 U.S. 399, 407 (1998). Where the privilege exists, the unavailability of evidence protected by the privilege "is justified by the fact that without the privilege, the client may not have made the communications in the first place." *Id.* at 408. *See* Deft. Memo at 3-5.

Here, there can be no question that DCI had an attorney-client relationship with both DeFranceschi and Glusman, and the government does not contend that it did not. It has suggested

that Schussel may not be empowered to assert the privileges of DCI, but, as demonstrated in Deft. Reply at 38-40 & n.15, Schussel, as Chairman, CEO, and sole shareholder of DCI, now known as DCI Massachusetts Business Trust, is unquestionably an individual with control over the management of DCI who may assert the privileges of DCI, and he has done so. DeFranceschi and Glusman also represented Schussel in his individual capacity, in regard to matters relating to his personal income tax returns. Schussel's personal communications with counsel regarding individual matters were distinct from communications which Schussel made to counsel on behalf of DCI within the meaning of *In re Grand Jury Subpoena*, 274 F.3d 563 (1st Cir. 2001). *See* Deft. Reply at 40-41.[3] Such communications are, therefore, encompassed within Schussel's personal attorney-client privilege.

The government will no doubt argue, as it did with respect to the documents addressed in Deft. Memo and Deft. Reply, that the communications between and among Schussel, DCI, and counsel which it intends to introduce are encompassed within the crime-fraud exception and are not, therefore, protected by the attorney-client privilege. The applicability of the crime-fraud exception is not subject to the government's unilateral determination. Quite the contrary – it is a matter which the government has the burden to prove before the Court. *See* Deft. Memo at 21-23; Deft. Reply at 15-22. The applicability of the crime-fraud exception must be determined by this Court on a communication-by-communication basis. *See* Deft. Reply at 18-19.

There are, accordingly, many issues to be resolved before the government can be permitted

---

[3] The government has also argued that Ron Gomes has the power to waive the attorney-client privileges of Schussel and DCI. Communications among Schussel, DCI, Gomes, and counsel are, however, protected by the common interest doctrine, under which Gomes may *not* waive the privileges of the other parties to the common interest representation, nor could DCI waive Schussel's individual privileges, or vice versa. *See* Deft. Memo at 14-16; Deft. Reply at 41-43.

to elicit communications between and among Schussel, DCI, and counsel before the jury at the trial of this case, and these are all issues which should be resolved before trial. The Court should either exclude testimony from the two attorneys regarding any communications between them and Schussel and/or DCI or, at a minimum, require the government to identify the communications between Schussel, DCI, and counsel which it intends to elicit at trial so that this Court may, in advance of trial, determine, on a communication-by-communication basis, whether the communications are protected from disclosure under the attorney-client privilege.

        Respectfully submitted,
By his Attorneys,

/s/ Martin G. Weinberg
Mass. Bar No. 519480
20 Park Plaza, Suite 905
Boston MA 02116
(617) 227-3700

/s/ Francis J. DiMento
DiMento & Sullivan
7 Faneuil Marketplace
Boston, MA 02109
(617) 523 2345

DATED: January 18, 2005