UNITED STATES DISTRICT COURT
DISTRICT COURT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA )<br>)<br>v. )<br>)  CRIMINAL NO. 04-10060-RCL<br>GEORGE SCHUSSEL, )<br>    Defendant )<br>) | |

**GOVERNMENT'S OPPOSITION TO DEFENDANT'S
MOTION TO DISMISS COUNTS 2 AND 3 FOR VIOLATION
OF THE STATUTE OF LIMITATIONS**

    The United States of America, by and through the undersigned counsel, hereby opposes George Schussel's ("Schussel") motion to dismiss Counts 2 and 3 of the indictment, and submits this memorandum in support thereof. Schussel was indicted on February 26, 2004 and is seeking dismissal of Counts 2 and 3 by alleging that: (i) his crime of tax evasion was complete as of the filing of the corporate and income tax returns on or about March 15, 1996; (ii) that the statute of limitations began to run as of then; and (iii) that the statute of limitations had run on or about March 15, 2002. Contrary to Schussel's position, the statute of limitations in the instant case did not begin to run until after May 6, 1998 when Schussel committed the last affirmative act of evasion. Counts 2 and 3 charge the offenses as occurring on or about March 11, 1998 (well within the statute of limitations), when Schussel committed an affirmative act of evasion by causing false statements to be made to the IRS in order to conceal his tax fraud relative to DCI's 1995 corporate return and his own 1995 personal return. Schussel's restrictive interpretation of the statute of limitations would allow a taxpayer, such as Schussel, to be rewarded for

1

successfully evading discovery of his tax fraud for a period of six years subsequent to the date the returns were filed, which, as will be discussed below, is contrary to law.

Schussel's arguments are without merit and his motion to dismiss should be denied.

## **BRIEF SUMMARY OF THE FACTS**[1]

The indictment charges that from 1988 through 1995, Schussel wilfully attempted to evade and actually defeated part of the income tax due and owing by him personally and by Digital Consulting, Inc. ("DCI").[2]  Schussel did so by diverting income generated by DCI to Digital Consulting International, Ltd. ( "DCIL"), through a bank account under his control at the Bank of Bermuda Limited.  Schussel then wire transferred the funds to an account that he controlled at Fidelity Investments.  During this period, Schussel filed false income tax returns by failing to report any of the diverted funds in either the corporate tax return of DCI or his own personal return.  In this scheme, Schussel diverted close to $17 million, and in 1995 alone, he transferred approximately $4 million of DCI unreported income to the Bank of Bermuda which was then wire transferred to the Fidelity account.

From 1997 through May 6, 1998, Schussel engaged in activities to conceal the diversion of unreported income.  In or about September 1997, the IRS began an audit of Schussel's 1995 corporate tax return. During the course of the audit, Schussel caused false representations to be made to an IRS revenue agent that all of the income generated by DCI was deposited in an account at Northmark Bank. On or about February 13, 1998, Schussel caused his tax attorney,

---

[1] Detailed factual summary contained in case related memorandum in Government's Opposition to Defendant's Motion to Suppress on Claim of Privilege.

[2] Contrary to Schussel's assertion, Counts 2 and 3 *do* incorporate by reference the "overt acts" alleged in the indictment through paragraph 40, which contains all of the overt acts (a - hh).

who was his representative for the audit and acted on his behalf, to provide a false and fraudulent contract to the IRS that purported to establish the basis for payments from DCI to DCIL. Schussel further caused his tax attorney on or about March 11, 1998, to provide additional false information regarding Schussel's relationship to DCIL, and to reaffirm that the false and fraudulent contract governed the transfer of funds from DCI to DCIL.  These affirmative acts of evasion continued through May 6, 1998 when Schussel signed IRS Form CG-4549, acknowledging and agreeing to income tax examination changes that the IRS revenue agent made to DCI's 1995 corporate tax return and to Schussel's 1996 personal income tax return.  At this time, Schussel affirmatively agreed to the examination changes and affirmatively paid the tax amount due on those changes, which amount he, in fact knew, was significantly less than what he truly owed because the changes made in 1998 were based on false information Schussel had provided to the IRS during the audit.

### Statute of Limitations for Tax Evasion Charged Under 26 U.S.C. §7201 Begins to Run on the Date of the Last Affirmative Act of Evasion

The statute of limitations for an offense charged under 26 U.S.C. §7201 is six years.[3] The First Circuit Court held in United States v. Ferris that "it is the date of the latest act of evasion . . . that triggers the statute of limitations." 807 F.2d 269, 271 (1st Cir. 1986); See also United States v. Anderson, 319 F.3d 1218 (10th Cir. 2003),[4] United States v. Dandy, 998 F.2d

---

[3] No person shall be prosecuted, tried, or punished for any of the various offenses arising under the internal revenue laws unless the indictment is found or the information instituted within 3 years next after the commission of the offense, except that the period of limitation shall be 6 years-- … (2) for the offense of willfully attempting in any manner to evade or defeat any tax or the payment thereof…" 26 U.S.C. §6531.

[4] "[W]hen a defendant commits a series of evasive acts over several years after incurring a tax liability, the statute of limitations begins to run on the date of the last evasive act. We previously have noted this rule is not inconsistent with our own jurisprudence, see United States v. Payne, 978 F.2d 1177, 1179 n. 2 (10th Cir.1992), and now expressly adopt the rule." Anderson, 319 F.3d at 1219.

1344 (6th Cir. 1993)[5]; United States v. Wilson, 118 F.3d 228 (4th Cir. 1997); United States v. Winfield, 960 F.2d 970 (11th Cir. 1992); United States v. DeTar, 832 F.2d 1110 (9th Cir. 1987). See United States v. Trownsell, 367 F.2d 815 (1966).

During the statute of limitations period, Schussel, through his tax attorney, obstructed an audit of DCI's 1995 corporate tax return.  Schussel engaged in a series of affirmative acts of evasion that included causing his tax attorney to make false and misleading representations in a March 11, 1998 letter to the IRS, and acknowledging tax deficiencies found by the IRS as true and paying significantly less taxes than he owed on or about May 6, 1998.  It is this obstruction, that was committed for the sole purpose of concealing unreported income in DCI's 1995 return and Schussel's 1995 personal return, that constitutes the last, known affirmative act of tax evasion.  Therefore, in the instant case, the statute of limitations for the willful tax evasion committed by Schussel began to run after May 6, 1998 and would not have lapsed until on or about May 6, 2004 if the defendant not been indicted prior to then.[6]

Contrary to Ferris, Schussel asserts that the statute of limitations begins to run when the crime is completed, which he claims occurs at the time a false tax return is filed, relying on Sansone v. United States, 380 U.S. 343 (1965).[7]  Schussel attempts to distinguish Ferris from his

---

[5]"[T]he two circuits which have addressed this specific issue have held that it is the date of the latest affirmative act of evasion that triggers the statute of limitations. See United States v. Winfield, 960 F.2d 970, 973 (11th Cir.1992) (per curiam); United States v. Ferris, 807 F.2d 269, 271 (1st Cir.1986), cert. denied, 480 U.S. 950, 107 S.Ct. 1613, 94 L.Ed.2d 798 (1987).  We adopt the First and Eleventh Circuits' approach to this issue because to hold otherwise would only reward a defendant for successfully evading discovery of his tax fraud for a period of six years subsequent to the date the returns were filed."
Dandy, 998 F.2d at 1355.

[6]It certainly did not run before the date of the offense alleged in Counts 2 and 3 of the indictment which is on or about March 11, 1998.

[7]Based on this assertion, Schussel contends that Counts 2 and 3 as written, allege two affirmative acts of evasion and that the one charged - the filing of the false 1995 returns - could not provide a valid basis for

own circumstances by asserting that the defendant in Ferris did not file an income tax return. Thus, Schussel argues, the defendant in Ferris did not commit felony income tax evasion under 26 U.S.C. §7201 until he engaged in affirmative acts of concealment through misrepresentations to IRS agents on at least two occasions in 1979 and 1983 regarding the monetary benefits gained from a business deal consummated in 1977. Ferris, 807 F.2d at 270. According to Schussel, therefore, the statute of limitations in Ferris could not have begun to run until the last affirmative act of evasion, because the felony offense of tax evasion could not have been completed until at least one affirmative act had been committed. The factual difference between the circumstances surrounding the willful income tax evasion of Schussel and the defendant in Ferris – that the former filed a false income tax return and the latter failed to file an income tax return – is not dispositive in the instant case. In reaching its holding in Ferris, the First Circuit cited a case in which the defendant did, in fact, file an income tax return as part of the tax evasion in violation of 26 U.S.C. §7201. United States v. Mousley, 194 F. Supp. 119 (E.D.Pa. 1961). Thus, provided the offense is complete, the First Circuit does not distinguish between those defendants who file false income tax returns and those defendants who do not for the purpose of the holding in Ferris – that the statute of limitations begins to run from the date of the last affirmative act of income tax evasion.

---

conviction, because the statute of limitations had run on that affirmative act. (Defendant's Motion to Dismiss at 3 ("Def. Mot. Dism.").) Schussel claims that these counts could not be submitted to a jury, because they would permit the jury to convict Schussel of an offense on which the statute of limitations had expired. Id. Schussel attempts to split the wording in the indictment and is wrong in his argument. When Counts 2 and 3 are each read in their entirety, including the paragraphs it incorporates from the indictment, it is clear that they charge an affirmative act in 1998, as it relates to Schussel's tax fraud in 1995, which constitutes a violation of Section 7201. The cure to Schussel's concern is an instruction to the jury that they cannot convict unless they find that Schussel committed an affirmative act of evasion on or about March 11, 1998.

Clearly on point is <u>United States v. Anderson</u>, supra, where the court, citing <u>Ferris</u>, noted that Section 7201 criminalizes not just the failure to file a return or the filing of a false return, but the wilful attempt to evade taxes *in any manner*. <u>Id</u>. at 1220. There is no question that the court agreed with the reasoning in <u>Ferris</u>, and stated "In light of the fact that evasive acts following the filing of a return may be considered part of the offense . . . "it is the date of the latest act of evasion, not the due date of the taxes, that triggers the statute of limitations."" <u>Id</u>. at 1220, quoting <u>Ferris</u> at 270. The court in <u>Anderson</u> acknowledged that its holding was in line with its sister circuits, and summarized cases from the Sixth, Fourth, Eleventh, Ninth, and Seventh Circuits that support its holding that, regardless of whether or not a false tax return is filed, the statute of limitations begins to run as of the last date of an affirmative act of evasion. <u>Anderson</u>, 319 F.3d at 1220. To hold otherwise, would allow a taxpayer -- like Schussel -- to benefit from his successful acts of concealment after the actual filing of a false tax return. If Schussel had not made any affirmative acts of evasion during the IRS audit in 1998, his 1995 tax fraud would have been discovered and he would have faced prosecution then.

Schussel attempts to eviscerate the holdings in these courts, which rely in part and cite the Unites States Supreme Court holding in <u>Beacon Brass</u>, 344 U.S. 43 (1952) by claiming that these courts have a fundamental misunderstanding of <u>Beacon Brass</u>. To the contrary, the First Circuit and its sister circuits have got it right. As <u>Ferris</u> noted in citing <u>Beacon Brass</u>, with regards to interpreting the tax evasion statute considered in that case, "[t]he language of § 145(b) [the predecessor to 26 U.S.C. § 7201] which outlaws willful attempts to evade taxes 'in any manner' is clearly broad enough to include false statements made to Treasury representatives for the *purpose of concealing unreported income*." <u>Ferris</u>, 807 F.2d at 270, quoting from <u>Beacon Brass</u>, 344 U.S. at 45-46 (emphasis added). The key here is that when a defendant takes

affirmative acts to conceal unreported income, and continues to do so, the fact that he filed a tax return is not going to excuse his efforts at concealment as they relate to that return, and the subsequent evasive acts will extend the duration of the offense. Anderson, 319 F.3d at 1220.

Schussel also misconstrues Sansone by suggesting that the U.S. Supreme Court's use of the term "complete" in Sansone implies that the statute of limitations of a crime begins to run when the crime is complete and cannot, therefore, be extended by a subsequent affirmative act. However, in Sansone, the Court uses the term "complete" to refer to a crime in which the defendant "had committed all the elements" of the charged offense. Sansone, 380 U.S. at 1012.[8] The fact that a crime is complete in the sense that the defendant has committed all of the elements of the crime and can be prosecuted, does not suggest that the statute of limitations cannot be extended if the defendant completes additional affirmative acts of evasion before the statute of limitations has run. See Ferris, 807 F.2d at 269.

Schussel relies on an interpretation of Sansone handed down by the Court of Appeals for the Eleventh Circuit. Schussel's reliance is misplaced, because the circumstances of United States v. Uscinski, 369 F.3d 1243 (11th Cir. 2004), are distinct from those in the instant case. In Uscinski, the Court was dealing with a sentencing guideline enhancement, and viewed affirmative acts of evasion, which included misrepresentations to IRS agents and which occurred after the filing of the false income tax return, as constituting obstruction of justice rather than acts extending the date on which the statute of limitations would have run. Uscinski, 369 F.3d at 1246-7. The government took this view, because obstruction of justice constituted a sentence

---

[8]"That crime [26 U.S.C. § 7201] was complete as soon as the false and fraudulent understatement of taxes (assuming, of course, that there was in fact a deficiency) was filed." Id. at 1011.

enhancement under the United States Sentencing Guidelines, U.S.S.G. §3C1.1.  Uscinski, 369 F.3d at 1247-8.

## The Statute of Limitations is to be Construed Broadly

In Toussie v. United States, 397 U.S. 112 (1970) , the Supreme Court noted the following: "The purpose of a statute of limitations is to limit exposure to criminal prosecution to a certain fixed period of time following the occurrence of those acts the legislature has decided to punish by criminal sanctions.  Such a limitation is designed to protect individuals from having to defend themselves against charges when the basic facts may have become obscured by the passage of time and to minimize the danger of official punishment because of acts in the far-distant past." Toussie, 397 U.S. 112, 114 (1970).  Through his own conduct – the affirmative acts of furnishing a fraudulent contract, providing a subsequent letter of affirmation, and the payment of a tax adjustment knowing the amount of payment substantially understated the true amount due to the IRS – Schussel extended the date on which the statute of limitations would run.  In so doing, Schussel engaged in continuing his evasion of income tax and, thus, made it highly unlikely that the facts related to his crimes would be obscured by the passage of time.  Schussel intentionally continued his crime beyond the original date of commission, and, in so doing, committed affirmative acts that *were not* in the far-distant past.

Schussel further relies on Habig, supra to suggest that statutes of limitations should be narrowly construed. (Def. Mot. Dism. at 7).  However, this is inconsistent with the First Circuit's interpretation of Habig.  See Ferris, 807 F.2d at 271.  The court noted that Habig supported the government's position in that case, and stated:

> "The acts upon which the crime was based here are the false statements made in 1979 and 1983, continuing attempts to evade payment of the 1977 income tax.  If all that defendant had done

> was fail to file his 1977 income tax return, then the las act of evasion would have been April 15, 1978, the date the return and tax were due. The defendant, however, by deceitful statements continued his tax evasion through January of 1983."

Ferris, 807 F.2d at 271.

In addition, the Sixth Circuit also interprets Habig as supporting the notion that the statute of limitations begins to run as of the last affirmative act of tax evasion. Dandy, 998 F.2d at 1356. Moreover, "this result seems reasonable when one considers the fact that had it not been for defendant's evasive acts . . . the IRS would very likely have discovered defendant's income tax fraud [ ]. To hold that the statute of limitations for income tax evasion . . . began to run on the date the returns were filed would reward defendant for successfully evading discovery of his tax fraud for a period of six years subsequent to the date the returns were filed." Dandy, 998 F.2d at 1356. Finally, in Habig, the United States Supreme Court relies on United States v. Scharton, 285 U.S. 518, 522 (1932), in asserting "that criminal limitations statutes are 'to be liberally interpreted in favor of repose." Habig, 390 U.S. at 227. However, a reading of Scharton suggests that the Court intended the liberal interpretation in favor of repose to apply to determining which statutory crimes or offenses would be subject to a three-year statute of limitations and which crimes or offenses would be subject to a six-year statute of limitations, *and not* to whether an affirmative act of tax evasion committed during the statute of limitations period will extend that period. Scharton, 285 U.S. at 522.[9]

---

[9]"And, as the section has to do with statutory crimes, it is to be liberally interpreted in favor of repose, and ought not to be extended by construction to embrace so-called frauds not so denominated by the statutes creating offenses. (Citations omitted.) The purpose of the proviso is to apply the six-year period to cases "in which defrauding or an attempt to defraud the United States is an ingredient under the statute defining the offense." (Citing United States v. Noveck, 271 U.S. 201, 203).

### **DCI's Income Tax Return is so Intertwined With the Defendant's Personal Tax Return That Evasion With Respect to the Former Implies Evasion With Respect to the Latter**

In Mousley, interpreting United States v. Bridell, 180 F. Supp. 268 (D.C.N.D. Ill. 1960), the court suggests that when a taxpayer files an individual tax return in close proximity to the filing of a corporate tax return, "both acts [are] part of the same attempt to evade." 194 F. Supp. 119 (E.D.Pa. 1961)(affirmed 3rd Cir. 1963) "In other words, as we understand that decision, the filing of the individual return and the corporate return were so interwoven with the attempt to evade that it was part of the same general plan and could not be separated so as to toll the statute of limitations." Id. at 120. On or about March 15, 1996, Schussel filed a false corporate tax return for DCI for the 1995 tax year. Income generated by DCI, which was not reported on the false, 1995 corporate tax return was diverted to a bank account in Bermuda and subsequently to a Fidelity Investment account under the control of Schussel for the personal benefit of Schussel and his family. Thus, any income not reported on DCI's 1995 corporate tax return and ultimately diverted to Schussel's investment account at Fidelity, should have been reported on his personal income tax return for 1995. On or about March 11, 1998, Schussel, acting through his tax attorney, supplied false and misleading representations to the IRS, in support of the false corporate tax return for DCI. For example, Schussel falsely represented that cash transfers made to the Bank of Bermuda Limited and subsequently transferred to the Fidelity account were made for DCIL services that were rendered pursuant to a contract. In fact, Schussel did not report to the IRS income he had *personally* received. Schussel falsely claimed that he had nothing to do with DCIL by falsely representing that his relationship with DCIL was limited to ownership of one share of stock. By supporting the false 1995 corporate tax return for DCI in these ways, Schussel necessarily and affirmatively supported his false 1995 personal tax return. Thus, the

last affirmative act of evasion with respect to the tax deficiency of DCI and of Schussel himself was on or about May 6, 1998. And, therefore, the statute of limitations for both Counts 2 and 3 would not have run until on or about May 6, 2004 had the defendant not been indicted before then.

Accordingly, Schussel's motion to dismiss Counts 2 and 3 must be denied.

>Respectfully submitted,
>
>MICHAEL J. SULLIVAN
>United States Attorney
>
>By:    /s/ Carmen M. Ortiz
>CARMEN M. ORTIZ
>Assistant U.S. Attorney

Dated: March 4, 2005