UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA )<br>)<br>v. )<br>)<br>GEORGE SCHUSSEL, )<br>    Defendant ) | CRIMINAL NO. 04-10060-RCL |

**DEFENDANT GEORGE SCHUSSEL'S REPLY TO GOVERNMENT'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS COUNTS 2 AND 3 FOR VIOLATION OF THE STATUTE OF LIMITATIONS**

This memorandum is submitted to the Court to reply to Government's Opposition to Defendant's Motion to Dismiss Counts 2 and 3 for Violation of the Statute of Limitations ("Opposition").

In his Motion to Dismiss Counts 2 and 3 for Violation of the Statute of Limitations and Incorporated Memorandum of Law ("Motion to Dismiss") at 6-8 & n.8, defendant has explained why *United States v. Ferris*, 807 F.2d 269 (1st Cir. 1986), *cert. denied*, 480 U.S. 950 (1987), is not inconsistent with the statute of limitations arguments which he advances. In its Opposition, the only counter-argument which the government advances for why defendant's interpretation of *Ferris* is incorrect – and the only argument it advances in support of its own argument that *Ferris* drew no distinction between whether the defendant had filed a tax return or whether he had not – is that *Ferris* cited *United States v. Mousley*, 194 F.Supp. 119 (E.D.Pa. 1961), which the government describes as a case in which the defendant had "file[d] an income tax return as part of the tax evasion in violation of 26 U.S.C. §7201." Opposition at 5. This is scant support indeed for the government's position, and it becomes even scanter on review of *Mousley*. In *Mousley*, there is no indication that the tax returns filed were in any way false or fraudulent. In *Mousley*, the defendant was not, as here,

charged with filing a false tax return; the attempted tax evasion charges were based *solely* on false statements made a number of years later in subsequent offer in compromise/discharge of tax lien proceedings. "These [statements], if the indictment is correct, were false and they constituted an entirely separate false statement to evade the payment of taxes and from a legal standpoint, *are wholly unrelated to the filing of a false tax return* sometime in 1946 or prior thereto." *Id.* at 120 (emphasis added). In other words, the government did not seek, as here, to extend the 6-year statute of limitations on the filing of an allegedly false tax return by relying on false statements made after the statute of limitations as to the tax return would have otherwise expired.[1] *Ferris*' citation of *Mousley* does not, therefore, undercut defendant's argument.

The government also relies, Opposition at 3-4, on a series of cases from other circuits to support its argument that the statement in *Ferris* that "it is the date of the latest act of evasion . . . that triggers the statute of limitations," Opposition at 3, quoting 807 F.2d at 271, is a valid basis for extending the statute of limitations as to the filing of defendant's 1995 tax returns and for ignoring *Sansone v. United States*, 380 U.S. 343 (1965).[2] Most of the cases cited by the government at pages 3-4 of its Opposition do not, however, support the government's argument that subsequent affirmative acts of evasion extend the statute of limitations in all cases. The most glaring example is *United States v. Winfield*, 960 F.2d 970 (11th Cir. 1992), a case in which no tax returns were filed. In *United States v. Uscinski*, 369 F.3d 1243 (11th Cir. 2004), the Eleventh Circuit expressly

---

[1] This distinction would explain why the *Ferris* Court, after discussing two other cases, merely cited *Mousley* without discussion, prefaced by a "*see also*" signal.

[2] Defendant acknowledged in his Motion to Dismiss that courts had applied the "last affirmative act of evasion" theory to cases in which the false tax returns were filed outside the statute of limitations. He argued, however, that those cases are both predicated on a fundamental misunderstanding of *United States v. Beacon Brass Co.*, 344 U.S. 43 (1952), and are contrary to *Sansone. See* Motion to Dismiss at 4-6. He continues to rely on that discussion.

2

limited *Winfield* to cases in which no return was filed, recognizing the same distinction argued by defendant:

> We read *Winfield* narrowly to prevent it from conflicting with *Sansone*. *Winfield*'s application is limited to §7201 evasions involving failure to file a tax return. *Where a tax return has been filed,* Sansone *applies; and the tax evasion is complete upon filing.*

*Id.* at 1247 n.* (emphasis added).[3]

In *United States v. Dandy*, 998 F.2d 1344, 1355 (6th Cir. 1993), *cert. denied*, 510 U.S. 1163 (1994), Opposition at 3-4, a case in which tax returns were filed, the Court "adopt[ed] the First and Eleventh Circuit's approach to [the statute of limitations issue] . . . . ," citing *Ferris* and *Winfield*, in neither of which had returns been filed. The Court did not pause to consider whether there might be a difference for statute of limitations purposes between cases in which no returns were filed and those in which they were. Neither *Ferris* nor *Winfield* answer that question, and the Eleventh Circuit now takes a position on the issue directly contrary to *Dandy*, removing at least half the support on which it relied.[4] The defendant in *United States v. Wilson*, 118 F.3d 228 (4th Cir. 1997), was not

---

[3] The government's attempt to distinguish *Uscinski*, Opposition at 7-8, is unavailing. There is nothing in *Uscinski* which in any way suggests that its holding is not of general applicability in all §7201 cases. The *Uscinski* Court stated flatly that Uscinski's subsequent false statements "were not part of Uscinski's offense of tax evasion under . . . §7201." *Id.* at 1247. If that were not clear enough, the Court continued:

> Under §7201, false statements are sometimes part of the crime of tax evasion. *See* . . . *Winfield* . . . (stating that under §7201, for tax evasion for failing to file a return, a false statement made after the date the return was due is an affirmative act of evasion). But, under §7201, when tax evasion involves the filing of a fraudulent tax return, the offense is complete upon filing. [citing *Sansone*] Because Uscinski's tax evasion was complete upon the filing of his tax return, his false statements to the government were not a continuation of his crime.

*Id.* It is worthy of note that the position adopted in *Uscinski* was advanced by the *government.*

[4] *Dandy* also professed to find support for its conclusion in *United States v. Habig*, 390 U.S. 222 (1968), on which the government also relies. *See* Opposition at 8-9. *Habig*, however, provides

3

the taxpayer but rather an attorney who was charged with doing various acts over a period of time to help the taxpayer conceal assets from the IRS. There was no issue in *Wilson* having to do with the extension of the statute of limitations beyond six years from the date of the filing of the tax return; the issue was whether the attorney had done acts within the statute of limitations to assist the taxpayer in concealing assets. Because he had done so, he had committed a §7201 offense within the statute of limitations.

---

no support for either the *Dandy* Court's holding or the government's argument. There was no issue in *Habig* regarding whether subsequent false statements could extend the statute of limitations beyond six years from the filing of the tax return. Quite the contrary, the prosecution in *Habig* was commenced within six years of the filing of the returns. The defendant, however, argued that the operative date for statute of limitations purposes was not the date the returns were actually filed but instead the date on which they were due to be filed. That could not be the case, the Court said, agreeing with the government's position, because no crime was committed until the return was filed. Thus, *Habig* does not "support[] the notion that the statute of limitations begins to run as of the last affirmative acts of tax evasion." Opposition at 9. Under *Spies v. United States*, 317 U.S. 492, 499 (1943), which held that simply failing to file a tax return does not constitute an affirmative act of evasion sufficient to make the offense a §7201 felony, as opposed to a §7203 misdemeanor, there *was* no affirmative act of tax evasion until the return was filed. The filing of the return in *Habig* was not the *last* affirmative act of tax evasion – it was the *only* one.

    The government also argues that defendant's reliance on *Habig* "to suggest that statutes of limitations should be narrowly construed" is inconsistent with *Ferris*. Opposition at 8. First, defendant was not relying on *Habig* to *suggest* anything; *Habig* says flatly that statutes of limitations are " to be liberally interpreted in favor of repose," 390 U.S. at 227, the very same language which the Court used two years later in *Toussie v. United States*, 397 U.S. 112, 114-15 (1970), and a year later in *Marion v. United States*, 404 U.S. 307, 323 n.14 (1971), and essentially the same language relied on, *inter alia*, by the First Circuit in determining that a particular type of act did not extend the statute of limitations with respect to the conspiracy charged in *United States v. Doherty*, 867 F.2d 47, 63 (1st Cir. 1989). The government also quotes a passage from *Ferris* in which the Court stated that *Habig* supported the government's position in that case. Opposition at 8-9. And so it does: because *Habig* indicates that there was no §7201 offense committed simply by failing to file a return when due, the defendant in *Ferris* did not commit a crime until he later made false statements on two different dates. All of these statements were made within the statute of limitations, so nothing in *Ferris extended* the statute of limitations. The statement in *Ferris* that "[i]f all that defendant had done was to fail to file his 1977 income tax return, then the last act of evasion would have been April 15, 1978, the date the return and tax were due[;] the defendant, however, by deceitful statements continued his tax evasion through January of 1983," 807 F.2d 271,  is inconsistent with both *Spies* and *Habig*, which clearly establish that no §7201 offense is committed at all by simply failing to file a tax return when due. Thus, Ferris' false statements did not *continue* his offense – they *were* the §7201 offense. *Ferris* hardly supports the proposition that statutes of limitations are *not* to be construed in favor of repose. *See* Opposition at 8.

4

*United States v. DeTar*, 832 F.2d 1110 (9th Cir. 1987), *see* Opposition at 4, also does not support the government's position. *DeTar* did not involve the filing of allegedly false tax returns; the defendant had apparently filed timely and accurate returns, and the §7201 offense charged related to his failure to pay the taxes due and owing. The Court concluded that the statute of limitations did not begin to run when the taxes were first due and payable and that overt, affirmative acts "are sufficient to keep the action alive." *Id.* at 1113. However, in a different context, the Court noted that a §7201 failure-to-pay offense was not made out by the simple omission to pay the taxes when due, as that was not the type of wilful affirmative act required under §7201. *See id.* at 1114. Thus, it is not at all clear from *DeTar* that the statute of limitations was actually extended beyond six years at all.[5]

Finally, we come to *United States v. Anderson*, 319 F.3d 1218 (10th Cir. 2003), on which the government places its primary reliance, *see* Opposition at 4, 6, 7, which does, to be sure, appear to support the government's position. *Anderson* was, however, wrongly decided, as it did not consider whether there was any difference between cases in which tax returns were filed and those in which they were not.[6] *Anderson* was faultily reasoned, not the least because, with the exception

---

[5] In addition, neither of the two cases relied on by the *DeTar* Court for the proposition that "the indictment is timely so long as it is returned within six years of an affirmative act of evasion," *id.* at 1113, involve extension of the statute of limitations. In *United States v. Trownsell*, 367 F.2d 815 (7th Cir. 1966), the §7201 offense was predicated on the transfer of assets to thwart the IRS collection process, and it was that event which triggered the running of the statute of limitations. *Trownsell* was also relied on by the government in its Opposition at 4. *United States v. Andros*, 484 F.2d 531 (9th Cir. 1973), was, like *DeTar*, a failure to pay prosecution; the Court held that the statute of limitations did not begin to run when defendant received a deficiency notice "but rather when the failure to pay bec[ame] wilful." *Id.* at 532.

[6] In *Anderson*, the defendant received two large payments in 1991, which he deposited in a Swiss bank account. In his tax return for 1991, filed on April 15, 1992, he did not report the income and denied that he had an interest in any foreign bank account. In subsequent returns filed in 1993-96, he continued to deny any interest in a foreign bank account. He was not indicted until 1999. The Court concluded that the statute of limitations did not begin to run until the filing of the 1996 return,

5

of *Dandy*, which was also faultily reasoned, *see* page 3, *supra*, *none* of the cases cited by the *Anderson* Court as a basis for rejecting the defendant's argument that the statute of limitations began to run on April 15, 1992, the date on which the defendant filed his 1991 return support its conclusion that subsequent acts of evasion extend the statute of limitations as to an allegedly fraudulent tax return. In three of those cases – *Ferris*, *Winfield*, and *Trownsell* – no return was filed, and so there was no affirmative act of evasion until some time after the return was filed; the two remaining cases – *Wilson* and *DeTar* – are inapposite for the reasons addressed at pages 4-5, *supra.* Moreover, nothing in *Anderson* indicates that the Court considered the clear implications of *Sansone* in reaching its conclusion. Rather, it relied on a proposition stated in cases involving very different circumstances than those before it.[7]

The government also takes issue with the defendant's analysis of *United States v. Beacon*

---

because that was the last affirmative act of evasion.

[7]

The *Anderson* Court also derived some support for its conclusion from its prior decision in *United States v. Payne*, 978 F.2d 1177 (10th Cir. 1992), *cert. denied*, 508 U.S. 950 (1993). *See* 319 F.3d at 1219, 1220-21; Opposition at 3 n.4. No tax returns were filed in *Payne*; instead, the prosecution was predicated on the defendant's having provided false social security numbers to his bankers and brokers, who then filed 1099s for defendant under the wrong social security number. The Court noted, citing *Spies*, that "[t]he failure to file a tax return is insufficient to establish the affirmative act necessary for a §7201 conviction." 978 F.2d at 1178. It also indicated, perhaps having given a bit more thought to the matter than did the *Anderson* Court, that it did *not* read *Ferris, Trownsell*, or *Habig*

> to stand for the proposition that the statute of limitations always commences at the point the defendant takes his final affirmative act to evade taxes. Rather, these cases are consistent with our holding that the statute of limitations in a §7201 prosecution does not begin to run until the defendant has taken an affirmative act *and* incurred a tax deficiency.

*Id.* at 1179-80 n.2 (emphasis in original). In *Payne*, while the defendant's affirmative acts of providing false social security numbers occurred outside the statute of limitations, the tax deficiency necessary to make his crime complete did not accrue until his return was due to be filed, which date was within the statute of limitations.

*Brass Co.*, 344 U.S. 43 (1952), and its application to the statute of limitations issue before the Court. *See* Motion to Dismiss at 4-6. However, the government takes aim at a portion of the *Beacon Brass* opinion which the First Circuit quoted in *Ferris* with which the defendant did not and does not quarrel. That "[t]he language of [§7201] which outlaws wilful attempts to evade taxes 'in any manner' is clearly broad enough to include false statements made to Treasury representatives for the purpose of concealing unreported income," Opposition at 6 (emphasis omitted), says nothing about when the statute of limitations begins to run. As addressed in Motion to Dismiss at 4-5, in *Beacon Brass*, the district court dismissed the original one-count indictment because it viewed it as charging, as here, both filing a false tax return and making false statements. Because the statute of limitations had run as to the filing of the false return, the government obtained a superceding indictment which charged only the making of false statements, which fell within the statute of limitations. *Beacon Brass* stands for no more than the proposition that false statements alone can support a §7201 charge.

The government also misconstrues defendant's *Beacon Brass* argument. Defendant does not contend that "the fact that he filed a tax return . . . excuse[s] his [alleged] efforts at concealment as they relate to that return," Opposition at 7, as is obvious from the fact that he has not argued that he cannot, as a matter of law, be prosecuted under §7201 for allegedly making false statements to the IRS. There is no question of alleged tax evaders who commit affirmative acts of evasion within the statute of limitations avoiding all possibility of prosecution because more than six years has passed since the filing of an allegedly false return. Under *Beacon Brass*, the government may, as it has, charge the alleged false statement or other affirmative act of evasion under §7201;[8] what it may *not*

---

[8] Cases such as *Dandy* and others which have raised the spectre of tax evaders avoiding all punishment if they successfully conceal the evasion for six years, *see* Opposition at 9, are, therefore, just plain wrong. It is not a question of whether tax evaders may escape punishment entirely but

7

do, as the government also has, is predicate a §7201 charge on the filing of an allegedly false tax return in 1996, as the statute of limitations had already expired as to that alleged offense when the indictment was returned.[9]

It ill-behooves the government to fault the defendant's interpretation of *Sansone*, as it is the same interpretation urged by the government itself in *Uscinski*. *See* page 3 & n.3, *supra*.[10] The government should be estopped from taking a different position in this case. The language of *Sansone* on which the defendant relies, and on which the government relied in *Uscinski*, is consistent with what the Court had earlier said in *Spies*: "The attempt made criminal by [§7201] . . . is an independent crime, complete in its most serious form when the attempt is complete and

---

instead what they may be punished for.

[9] The government argues, although in a footnote and with no particular vigor, that Counts 2 and 3 actually only charge "an affirmative act in 1998, as it relates to Schussel's tax fraud in 1995." Opposition at 5 n.7. Counts 2 and 3 do indeed contain such a charge: that Schussel attempted to evade taxes by "making and causing to be made false statements to a revenue agent of the Internal Revenue Service in order to mislead and impede an audit examination of Digital Consulting, Inc.'s 1995 United States Corporate Income Tax Return, IRS Form 1120." Had Counts 2 and 3 stopped there, defendant could not have raised a pretrial statute of limitations challenge. However, they did not. The quoted language is ended with a semi-colon, following which these counts continue "*and* by filing and causing to be filed . . . a false and fraudulent United States Corporate Tax return" (emphasis added). Thus, Counts 2 and 3 clearly charge evasion through the filing of a false tax return.

The "cure" proposed by the government is, therefore, no cure at all. If the jury were to find that Schussel committed an affirmative act of tax evasion on March 11, 1998, that might, if all other elements of the offense were proven, suffice to support a §7201 conviction based upon the allegedly false statements. However, because the statute of limitations had run as to the filing of the tax return, an affirmative act on March 11, 1998, would *not* permit the jury to convict Schussel of tax evasion through the filing of a false tax return.

[10] Contrary to the government's suggestion, Opposition at 7-8, it is clear from the *Uscinski* opinion that the government advanced its *Sansone* argument that false statements made subsequent to the filing of a false return were not a continuation of the §7201 offense, which was complete upon the filing of the return, not as a matter of guidelines interpretation but rather as a matter of the proper interpretation of §7201. That the Court was interpreting §7201 in light of *Sansone* is equally clear.

8

nothing is added to its criminality by success or consummation . . . ." 317 U.S. at 498-99. Here, the attempt, if any there was, which defendant denies, was complete when the 1995 returns were filed. Later attempts at concealment may sometimes be separate crimes, but they do not denigrate from the completeness of the offense at the time of the filing of a false tax return, as the "success" of the attempt – which a defendant might hope to attain, for example, through subsequent attempts at concealment – does not expand the criminality of the completed attempt and cannot, therefore, serve to extend the statute of limitations.

There is no support for the government's suggestion that questions regarding the applicability of statutes of limitations are to be approached from the standpoint that statutes of limitations are to be construed broadly. *See* Opposition at 8-9. Such a suggestion is neither consistent with pronouncements of the United States Supreme Court nor supported in any way by *Ferris. See* pages 3-4 n.4, *supra.* Moreover, in arguing that the purposes of statutes of limitations, as described in *Toussie*, are inapplicable in Schussel's circumstances, Opposition at 8, the government assumes its own conclusion – that subsequent alleged affirmative acts of evasion committed by Schussel extended the statute of limitations with respect to the filing of the 1995 tax return. The 1995 tax return was filed on or about March 15, 1996. Schussel was not charged with filing a false tax return until virtually eight years later. If defendant is correct as a matter of law that a §7201 offense based upon the filing of a false tax return is complete upon filing and that the statute of limitations with respect to the tax return begins to run at that time, then he is entitled to the benefit of that statute of limitations.

Finally, the government relies on *Mousley*'s interpretation of *United States v. Bridell*, 180 F.Supp. 268 (N.D.Ill. 1960), to argue that Schussel's personal tax returns were so interwoven with DCI's corporate tax returns that if the statute of limitations did not bar prosecution with respect to the filing of the corporate return, it would not bar prosecution based on the personal return. *See*

9

Opposition at 10. The biggest problem with this argument is that *Bridell* did not remotely say what *Mousley* said it did, either directly or by any stretch of the imagination. The tax returns at issue in *Bridell* were solely the personal tax returns of the corporate president; there was no statute of limitations issue in *Bridell* nor was there any discussion of statutes of limitation;[11] the author of the *Bridell* opinion (whom *Mousley* did correctly name) did not distinguish the case from *Beacon Brass* or even so much as mention *Beacon Brass*. *See Mousley* at 19-20. It is impossible to know what went wrong in the process from the presentation of the defense argument in *Mousley* to the drafting of the *Mousley* opinion, but someone gravely erred somewhere along the way, as if there was a case which said what *Mousley* interpreted it to say, it cannot have been *Bridell*. Thus, as *Mousley* did not rely on *Bridell* in deciding the issue before it, the government has no authority to support its argument that "DCI's income tax return is so intertwined with the defendant's personal tax return that evasion with respect to the former implies evasion as to the latter." Opposition at 10 (initial caps omitted).

## CONCLUSION

For all the foregoing reasons, and for all the reasons set forth in defendant's Motion to Dismiss, Counts 2 and 3 should be dismissed.

> Respectfully submitted,
> By his attorneys,

---

[11] Based upon the dates which appear in the *Bridell* opinion, it appears that the substantive charges were all brought within six years of the filing of the tax returns at issue.

          /s/ Martin G. Weinberg
          Martin G. Weinberg
          Mass. Bar No. 519480
          20 Park Plaza, Suite 905
          Boston, Massachusetts 02116
          (617) 227-3700


          /s/ Francis J. DiMento
          DiMento & Sullivan
          7 Faneuil Marketplace
          Boston, MA 02109
          (617) 523/ 2345

DATED: April 7, 2005