UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA )<br>)<br>    v.                                                )<br>)     CRIMINAL NO.  04-10060-RCL<br>GEORGE SCHUSSEL,                 )<br>         Defendant                         )<br>)  | |

**UNITED STATES' MEMORANDUM IN SUPPORT
OF ITS MOTION TO EXCLUDE DEFENSE EXPERTS
CHARLES REILLY, ARNOLD ROSENFELD AND JAMES DINELL**

The United States submits this memorandum in support of its motion in limine to exclude the testimony of three experts on which the defendant, George Schussel ("Schussel" or the "Defendant"), has said he intends to rely.  Schussel has disclosed three experts: (a) Charles Reilly ("Reilly"), a tax attorney, (b) Arnold Rosenfeld ("Rosenfeld"), an attorney with expertise in legal ethics, and (c) James Dinell ("Dinell"), a fax machine salesman and installer.  For the reasons discussed below, the Court should exclude, or significantly limit, the proposed testimony of each of the proffered experts.

   A.    **Relevant Legal Principles**

Fed. R. Evid. 702 ("Rule 702") permits the introduction of expert testimony if that expert's "specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue."  Fed. R. Evid. 702.  Under this rule, the proponent of the expert must show that the expert is qualified, that the testimony is reliable, and that it will fit the facts of the case.  See Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579, 113 S.Ct. 2786, 2796 (1993).  It is well established that expert testimony is ordinarily not permitted for matters that lie within a layperson's experience.  See Fed. R. Evid. 702, Advisory Committee Notes, 1972 ("There is no more certain test for determining when experts may be used than the common

sense inquiry whether the untrained layman would be qualified to determine intelligently and to the best possible degree the particular issue without enlightenment from those having a specialized understanding of the subject involved in the dispute."); United States v. Salimonu, 182 F.3d 63, 72-73 (1st Cir. 1999) (excluding expert testimony from linguist regarding differences in voices on a recording).  In addition, expert testimony cannot infringe on matters that are reserved for the finder of fact.  See United States v. Duncan, 42 F.3d 97, 101 (2d Cir.1994) ("When an expert undertakes to tell the jury what result to reach, this does not aid the jury in making a decision, but rather attempts to substitute the expert's judgment for the jury's."); cf. Dinco v. Dylex Ltd., 111 F.3d 964, 973 (1st Cir. 1997)  ("It is one thing to testify about ordinary corporate practice; it is quite another for the expert to tell the jury at length that the plaintiffs reasonably relied upon specific statements made to them.").  Nor can an expert testify on the law, which is considered to be a subject within the province of the Court.  See United States v. Mikutowicz, 365 F.3d 65, 72 (1st Cir. 2004).[1]

      B.      **Application of the Principles to the Three Proposed Experts**

           1.      **Reilly.**

By letter dated December 8, 2006, Schussel disclosed that he intends to rely on Reilly as an expert witness.  The December 8, 2006 letter is attached hereto at Tab A.  Reilly is a tax attorney and owner of Reilly Law Associates, Inc., based in Providence, Rhode Island.  According to the disclosure, Reilly will provide six "expert opinions."  Schussel has not

---

[1] The evidence must also be relevant, as required by Fed. R. Evid. 401, and otherwise satisfy the requirements of Fed. R. Evid. 403.  See United States v. Montas, 41 F.3d 775, 783 (1st Cir. 1994) ("Even if admissible under Rule 702, expert testimony still may be excluded under Fed.R.Evid. 403 if its probative value is substantially outweighed by the risk of unfair prejudice it creates.").

explained in any detail how any of the six "expert opinions" are relevant to facts in issue in this matter. Nor has he explained how these opinions will assist the trier of fact to understand the evidence. In fact, none of the six "expert opinions" appear to be appropriate areas of expert testimony in this case. The United States addresses each of those proposed "opinions" in turn.

### a. Opinions 1 and 2.

Reilly proposes to testify:

(1) that Edward DeFranceschi ["DeFrancheschi"] had sufficient knowledge regarding DCIL, its relation to George Schussel and its function in receiving payments so that he would be required, consistent with the attorney-client privilege, to either answer questions propounded by an IRS Agent accurately or to decline to answer such questions; and

(2) that [DeFranceschi], as the representative of DCI and Mr. Schussel in relation to the 1997-98 tax audit, had the obligation to determine what facts to disclose and what facts not to disclose in response to questions, whether oral or in writing, propounded by the IRS Revenue Agent.

These opinions relate to the duties and responsibilities DeFranceschi had in dealing with the IRS on Schussel's behalf. Specifically, they address DeFranceschi's responsibilities in what he could, or could not, say to the IRS based on the information Schussel may have provided to him. Presumably, Schussel intends to present this information to argue that DeFranceschi acted unprofessionally with respect to the DCI audit and Schussel's tax returns.

Neither opinion appears to be one in which "specialized knowledge" will assist the trier of fact either to understand the evidence or to resolve a fact in issue. See, for example, United States v. Scholl, 166 F.3d 964, 973 (9th Cir. 1999) (affirming exclusion of testimony of proffered experts on tax and accounting law and record keeping practices where it would not have

"assist[ed] the trier of fact to understand the evidence or to determine a fact in issue") (quoting Rule 702); cf. also, United States v. Iskander, 407 F.3d 232 (4th Cir. 2005) (affirming exclusion of defense tax expert where proffered testimony was not sufficiently connected to the charged conduct). The United States expects the evidence to show that Schussel transmitted false and misleading information to DeFranceschi during the 1997/98 Audit under circumstances where Schussel was aware that the false and misleading information was being re-transmitted to the IRS. An expert "opinion" on whether DeFranceschi violated his duties to the IRS is not sufficiently connected to the question of whether Schussel conspired to defraud the IRS or committed affirmative acts to mislead or conceal from the IRS the income he had diverted to Bermuda. There seems to be considerable risk that opinion evidence on a collateral issue such a Defranchsechi's duties will inject confusion, rather than clarity, to the issues before the finder of fact. For that reason, the Court should not permit the expert testimony as to opinions 1 and 2.[2]

### b. Opinions 3 and 4.

Reilly will also testify:

> (3) [that] [a]ttempts to delete management records such as portions of the vendor or attendee database did not deprive the IRS of records requested by their initial IDR nor records that would normally be requested by the IRS in conducting tax audits; and
>
> (4) [that] [r]ecords that were the subject of the so-called "Project Phoenix" would either not be requested in

---

[2] The United States is also concerned that Schussel's true purpose in presenting these "expert opinions" is to impeach DeFranchsechi's credibility through extrinsic evidence, which is not permitted. See Fed. R. Evid. 608(b) ("Specific instances of conduct for the purpose of attacking or supporting the witnesses character for truthfulness, other than conviction of crime as provided in Rule 609, may not be proved by extrinsic evidence.").

> a tax audit or would be available to the auditor from third party sources.

These opinions seem to relate to the question of whether Schussel's and his co-conspirators' destruction of documents and falsification of records were material to the 1997/98 Audit. The jury does not need an expert to perceive the relevance of the co-conspirators' agreement to destroy and falsify records that showed the diversion of funds to Bermuda.

Furthermore, the destruction of documents and the falsification of records contemplated by "Project Phoenix" tends to show that the defendant, and his co-conspirators, had the specific intent to mislead the IRS and conceal from the IRS the true nature of the millions of dollars DCI had paid to the DCIL Bermuda Account. While, in theory, the proposed "opinions" might be relevant if the evidence showed that the defendants actually believed that the documents were irrelevant to the IRS, in which case the defendants might argue that the purpose of the destruction was not to frustrate the IRS or conceal the diversion of income, the United States does not expect there to be any such evidence. Absent a foundation that the defendant and his co-conspirators were aware that the information was irrelevant to a possible audit, expert testimony on what the IRS would or would not have looked at or considered to be important will not be helpful to the finder of fact.

**c.     Opinion 5.**

Reilly will also testify:

> (5)     [that] Bermuda is a common venue for U.S. Corporations engaged in a business or trade which generate foreign income and is frequently and legitimately relied upon by such corporations, often through subsidiaries, to avoid unnecessarily [] double taxation.

5

Opinion 5 is not helpful. It is not the United States' position that there is anything inherently criminal about Bermuda or the use by domestic corporations of Bermuda subsidiaries or Bermuda bank accounts. What is relevant here is how Schussel actually used the Bermuda company (DCIL) and the Bermuda Account and his affirmative acts to mislead or conceal from the IRS how he was actually using DCIL and the Bermuda Account. Reilly's expert "opinion" that U.S.-based companies might legitimately use Bermuda corporations and bank accounts is not helpful to the finder of fact.

### d.    Opinion 6.

Reilly will also testify:

> (6)    [that] Schussel's accountant had sufficient information from Schussel in both 1995 and 1996 to accurately compute Schussel's taxable income including income derived from DCIL.

Opinion 6 appears to attack the competence of Schussel's accountant, Paul Law. Again, this "opinion" does not appear to be relevant to Schussel's conduct in obstructing the IRS audit. Perhaps it is being proffered to show that Schussel made full disclosure to Law and to blame Law for mishandling Schussel's personal return for 1995. Because Schussel's disclosure regarding Reilly's opinion is so limited, it is difficult for the United States to assess whether, and to what extent, Reilly has an adequate basis to provide any opinion as to whether Schussel made a full disclosure to Law.

Moreover, any such testimony would appear to relate to a defense that Schussel relied on the advice of his tax preparer. But it is not clear that Reilly has any factual basis upon which to state that Law advised Schussel that the profits from DCI that were diverted to the Bermuda Account and then came back to the Fidelity Account held by Schussel were not taxable to

Schussel. Under such circumstances any expert "opinion" on Law's failure to include the taxable income from DCIL is not likely to assist the trier of fact.

### 2. Rosenfeld.

#### a. The Proposed Testimony.

Schussel has notified the United States that he intends to rely on the opinions of Rosenfeld that were provided to the United States in the form of an Affidavit of Arnold R. Rosenfeld dated May 5, 2005 ("Rosenfeld Affidavit," attached hereto as Tab B). In that affidavit, Rosenfeld recites his qualifications as a legal ethics expert and expresses an opinion on the Massachusetts Rules of Professional Conduct. Specifically he says:

> it is my opinion that assuming Schussel fully disclosed all the facts of his wrongdoing to DeFranceschi prior to any of these communications, all of these communications with DeFranceschi were confidential within the scope of the Massachusetts Rules of Professional Conduct.

See Rosenfeld Affidavit at "Conclusion."

#### b. Bases For Exclusion.

The Court should exclude Rosenfeld's testimony because it will not "assist the trier of fact to understand the evidence or to determine a fact in issue." Fed. R. Evid. 702. At issue in this case is whether Schussel intentionally and wilfully conspired to defraud the United States and committed tax evasion. The question as to whether his communications with DeFranceschi were confidential within the meaning of the Massachusetts Rules of Professional conduct is not a "fact in issue" at this trial. Indeed, Rosenfeld's opinion on the Massachusetts Professional Rules doesn't even satisfy the threshold for relevancy under Rule 401. Even if it may, an opinion on

the Massachusetts Professional Rules is so far afield from what is at issue here that it will likely cause confusion that substantially outweighs any probative value it may have.[3]

In addition, Rosenfeld's legal conclusion that certain information is covered by Rule 1.6 of the Massachusetts Rules of Professional Conduct improperly encroaches on areas reserved for the Court.  See Mikutowicz, 365 F.3d at 72 ("Expert testimony proffered solely to establish the meaning of a law is presumptively improper." (internal quotations omitted)).

Finally, a closer look at the Rosenfeld Affidavit reveals that Rosenfeld expresses a number of "opinions" in his affidavit that improperly encroach on the function of the jury.  For example, in addressing whether Schussel had an obligation to correct the false information he had provided to DeFranceschi, Rosenfeld cloaks in the language of an "expert opinion" a conclusion as to Schussel's state of mind:

> As far as Schussel knew, DeFranceschi may have had some sound legal reason to send the DCI/DCIL contract to the IRS and Schussel had the right to rely on DeFranceschi's legal judgment to do so.

Similarly, in addressing whether Schussel could send letters to DeFranceschi that "might, if implemented?[sic] result in a continuing tax fraud," Rosenfeld simply expresses his "opinion" as to what a fax sent from Schussel to DeFranceschi on March 4, 1998 says: "Schussel is further setting out facts and proposals for DeFranceschi to consider for a letter from DeFranceschi to the IRS agent."  (The March 4, 1998 fax is attached hereto at Tab C.)  This is not an appropriate area

---

[3] Indeed, Rosenfeld's opinion is somewhat puzzling, in that he speaks in terms of the client's duties to the lawyer.  See Rosenfeld Affidavit at Question A ("Schussel had no further obligation to restate to DeFranceschi what he already had told him about the contract and his past wrongdoing, and his failure to correct what he perceived as DeFranceschi's mistakes in communicating on his behalf in no way violates his duties as a client insofar as the ethical rules are concerned.").  Ordinarily, the Rules of Professional Conduct speak to the lawyer's duties to the client, not the other way around.

for "expert" opinion. It does nothing more than substitute Rosenfeld's judgment for the jury's on a matter well within a layperson's expertise, namely, Schussel's intent in sending the March 4, 1998 fax, which the United States expects to show was filled with false and misleading information.

### 3. Dinell.

Schussel proposes to have Dinell, who sells and installs fax machines, testify that, in his opinion, the Contract of Agreement was "transmitted by a fax machine manufactured by the Sharp Electronics Corporation." (See December 11, 2006 Letter attached at Tab D.) The United States is unable to see how expert testimony on the make of a fax machine sending the Contact of Agreement is relevant to this case. The testimony is not admissible under Rules 401 or 702.

                                Respectfully submitted,
                                MICHAEL J. SULLIVAN
                                United States Attorney

By:

                                **/s/ Jack W. Pirozzolo**
                                Carmen M. Ortiz
                                Jack Pirozzolo
                                Assistant U.S. Attorneys

Date:   December 29, 2006

### CERTIFICATE OF SERVICE

I, Jack W. Pirozzolo, hereby certify that on December 29, 2006 I served a copy of the foregoing by electronic filing on counsel for the defendant.

                                **/s/ Jack W. Pirozzolo**
                                Jack W. Pirozzolo