UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

|  |  |
|---|---|
| UNITED STATES OF AMERICA * | CRIMINAL NO. 04-10060-RCL |
| v. * |  |
| GEORGE SCHUSSEL * |  |
| Defendant * |  |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

## AFFIDAVIT OF ARNOLD R. ROSENFELD

### I.   BACKGROUND OF ARNOLD R. ROSENFELD

I, Arnold R. Rosenfeld, presently am a member in good standing of the bar of Massachusetts, No. 428860 and the United States District Court for the District of Massachusetts. I am Of Counsel at the law firm of Kirkpatrick & Lockhart, LLP, in their Boston office, where my practice is primarily in the areas of representing lawyers and law firms in professional ethical matters including providing expert opinions on professional responsibility questions in court cases and representing clients in criminal and civil litigation. My expertise in the area of professional ethics stems from several sources. Prior to my current status at Kirkpatrick & Lockhart, I served for eight years as the Chief Bar Counsel for the Board of Bar Overseers of the Supreme Judicial Court of Massachusetts. In that role, I was responsible for interpreting the ethical rules in effect in Massachusetts, investigating complaints about lawyers, who were members of the Massachusetts bar or practiced in the state or federal courts in Massachusetts, and determining whether that lawyer had violated the Massachusetts Rules of Professional Conduct or its predecessor Canons of Ethics and Disciplinary Rules Governing Lawyers

in Massachusetts. At the time the Rules of Professional Conduct were adopted in Massachusetts, I wrote an article for the Massachusetts Law Review, entitled: "The Duties and Obligation of Confidentiality and Candor Under the Massachusetts Rules of Professional Conduct".

Since 1989, I also have been teaching at Boston University Law School. From 1989 until 2001, I was an Adjunct Professor, teaching Professional Responsibility as part of the Criminal Clinic. In this class, one of the most important topics I covered was Lawyer-Client Confidentiality and Attorney-Client Privilege. Beginning in 2002, and until the present time, I have been a Visiting Professor of Law at Boston University Law School, where in addition to the Criminal Clinic, I teach the basic course in Professional Responsibility, where I devote one class to the subject of Lawyer-Client Confidentiality and Attorney-Client Privilege, and this past semester, I also taught a Seminar in Attorney-Client Privilege, Work Product, and Confidentiality. Since 1995, I also have been an Adjunct Professor of Law at Northeastern University Law School, where I also teach Professional Responsibility, including one class devoted to the topic of Attorney-Client Privilege and Lawyer-client Confidentiality.

In addition, I was a member of the Committee appointed by the Supreme Judicial Court to Recommend the Adoption of the Rules of Professional Conduct, and after the new rules were adopted, I was appointed by the Massachusetts Supreme Judicial Court as a member of the Standing Committee on the Rules of Professional Conduct. I also am a member of the Association of Professional Responsibility Lawyers (APRL), a member of the Center for Professional Responsibility of the American Bar Association, and a member of the American Law Institute. I also write a column on professional ethics for

the Massachusetts Lawyers Weekly. Several of my columns have been on the subject of Lawyer-Client Confidentiality and Attorney-Client Privilege.

## II. INTRODUCTION

In preparing this Opinion, I have reviewed the following documents:

1. The Indictment of George Schussel in 04 CR 10060RCL;

2. Motion to Suppress Government's Use and Acquisition of Privileged Materials and for Other Appropriate Relief, dated October 15, 2004;

3. Memorandum of Law in Support of Motion to Suppress Government's Use and Acquisition of Privileged Materials and for Other Appropriate Relief, dated October 15, 2004;

4. Defendant George Schussel's Reply to Government's Opposition to Defendant's Motion to Suppress Government's Use and Acquisition of Privileged Materials and for Other Appropriate Relief, dated January 14, 2005;

5. Defendant George Schussel's Motion to Suppress the Testimony of Attorneys Edward DeFranceschi and Kenneth Glusman and Incorporated Memorandum of Law, dated January 18, 2005;

6. Government's Response to Defendant's Reply to Opposition to Defendant's Motion to Suppress Evidence on Claim of Privilege, dated March 4, 2005;

7. Affidavit of Edward DeFranceschi, with Exhibits A-C, dated February 5, 2004.

    8.    Exhibits Files Under Seal, Defendant George Schussel's Privilege Log of Documents Disclosed to Government by Attorney Edward DeFranceschi, PC, Documents 1-13.

## III.  REQUEST FOR OPINION

I have been asked by the attorneys representing George Schussel to render an Opinion, utilizing my experience and expertise as the former Chief Bar Counsel, as the former Chief Counsel of the state public defenders and a criminal lawyer, as a professor teaching Professional Responsibility, and as a lawyer practicing for the past six years primarily in the area of professional responsibility, on two questions regarding the lawyer-client confidentiality issue based upon the following premise:

The client is charged with tax fraud for taxes filed by his corporation for 1995 and for his personal taxes for 1996. He hires a lawyer or lawyers to represent him in dealing with the Internal Revenue Service (IRS). He has fully disclosed to the lawyer or lawyers the facts of his past wrongdoing. He gives the lawyer or lawyers representing him full authority to deal with the IRS on his behalf.

IV. QUESTION A

Does the client have an obligation to correct an error made by the lawyer, or communicate to the lawyer that he made an error, when the lawyer communicated on his behalf to the IRS, if the mistake is helpful to the client?

The Rule on Confidentiality, Rule 1.6, encourages a client to communicate fully with his or her lawyer and disclose to the lawyer as much information as possible about the matter for which the lawyer has been engaged. As Comment [3] to Mass. R. Prof. C. 1.6 so eloquently states: "Almost without exception, clients come to lawyers in order to determine what their rights are and what is, in the maze of laws and regulations, deemed to be legal and correct. The common law recognizes that the client's confidences must be protected from disclosure." Clients therefore are encouraged to fully disclose all information regarding the matter, even if embarrassing or legally damaging. If that were not the case, the client would be far less likely to receive sound legal advice. Lawyers often receive information from clients about past acts that if known to others would be embarrassing or legally damaging to the client. The ethical rules prohibit a lawyer from revealing such information, unless the confidential communication falls within one of the specific exceptions enumerated in the Rules.

Once the client has fully disclosed all information regarding past acts, and especially when the client has, at the request of the lawyer, signed over authority to the lawyer to act on his behalf, the client legitimately is relying on the lawyer's judgment about what is appropriate and not appropriate to communicate. In this instance, based upon the materials I read, it is my opinion that Schussel was under no obligation to correct or communicate to DeFranceschi the fact that the DCI/DCIL contract had not

been in effect or was not a valid contract, even if that were true, assuming that he previously had fully disclosed to DeFranceschi all of the facts of his past wrongdoing. As far as Schussel knew, DeFranceschi may have had some sound legal reason to send the DCI/DCIL contract to the IRS and Schussel had the right to rely on DeFranceschi's legal judgment to do so. Thus, in my opinion, Schussel had no further obligation to restate to DeFranceschi what he already had told him about the contract and his past wrongdoing, and his failure to correct what he perceived as DeFranceschi's mistakes in communicating on his behalf in no way violates his duties as a client insofar as the ethical rules are concerned.

V.    QUESTION B.

Can a client send a lawyer drafts or suggestions that might, if implemented? result in a continuing tax fraud?

The fact that a client has allegedly perpetrated a past tax fraud does not preclude a client from suggesting a proposed response to questions posed by the IRS agent. In the case of the March 4, 1998 draft Schussel sent to DeFranceschi, Schussel is further setting out facts and proposals for DeFranceschi to consider for a letter from DeFranceschi to the IRS agent. What Schussel is doing is requesting advice. Once a client has fully disclosed his past wrongdoings to his lawyer, it is up to the lawyer-"to determine what their rights are and what is, in the maze of laws and regulations, deemed to be legally correct." (Comment [3], Rule 1.6. A client could not determine what is legally correct unless he sought his lawyer's sound legal advice. One way to accomplish this is to make proposals to one's lawyer and to accept the lawyer's advice. Unless the client ignores the lawyer's advice and seeks to violate the law, there is a duty on the part of the lawyer under the

Rules of Professional Conduct not to disclose proposals a client makes, even if those proposals would lead to illegal acts if implemented. The FAX cover letter of the March 4, 1998 letter makes clear that Schussel's attached proposed response is a draft, and that he wants his attorney's reactions. The lawyer needs this information in order to "represent the client effectively and, if necessary, to advise the client to refrain from wrongful conduct. Almost without exception, clients come to lawyers in order to determine their rights and what is, in the complex of law and regulations, deemed to be legal and correct." Comment [2], ABA Model Rules of Professional Conduct 1.6. In other words, there is nothing unusual for a client to offer a lawyer proposed statements that may not be appropriate and may even be wrongful if sent. As the Comments to Rule 1.6 state clearly, that is why clients seek legal advice and why client communications with lawyer are confidential.

## VI.   CONCLUSION

For the reasons stated above, it is my opinion that assuming Schussel fully disclosed all the facts of his wrongdoing to DeFranceschi prior to any of these communications, all of these communications with DeFranceschi were confidential within the scope of the Massachusetts Rules of Professional Conduct.

SWORN TO AND SUSCRIBED THIS 5TH DAY OF MAY, 2005:

_____
Arnold R Rosenfeld