UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

_____
                              )
UNITED STATES OF AMERICA      )
                              )
                              )
v.                            )        CRIMINAL NO. 04-10060-RCL
                              )
                              )
GEORGE SCHUSSEL               )
_____)

**DEFENDANT GEORGE SCHUSSEL'S RESPONSE TO UNITED STATES'
MOTION TO EXCLUDE DEFENSE EXPERTS CHARLES REILLY,
ARNOLD ROSENFELD, AND JAMES DINELL**

This Court should reject the government's attempt to preclude the presentation of defendant Schussel's defenses to the jury. The proffered expert testimony is admissible under Fed. R. Evid. 702. It is relevant, it will be of substantial assistance to the jury in determining the issues before it, and it is crucial to the presentation of Schussel's theory of defense to the jury.[1] The Court should, therefore, deny the government's motion. Alternatively, the Court should defer ruling on the motion until the conclusion of the government's case-in-chief.

Any determination of whether evidence favorable to the defense should be excluded at the behest of the government must begin with the proposition that "[f]ew rights are more fundamental than that of an accused to present witnesses in his own defense." *Chambers v. Mississippi*, 410 U.S. 284, 302 (1973). *See, e.g., Washington v. Texas*, 388 U.S. 14, 18-19 (1967); *In re Oliver*, 333 U.S. 257, 273 (1948). "The Compulsory Process Clause of the Sixth Amendment guarantees every defendant 'the right . . . to have compulsory process for obtaining witnesses in his favor . . . .' The clause thus provides criminal defendants the right to present witnesses and evidence in their

---

[1] The government does not question the qualifications of the proffered experts.

defense." *United States v. Levy-Cordero*, 67 F.3d 1002, 1012 (1st Cir. 1995). *See also United States v. Mulinelli-Navas*, 111 F.3d 983, 992 (1st Cir. 1997)(Sixth Amendment guarantees the right to prepare and present a defense). While the right of the defense to present evidence is not absolute, the expert testimony proffered by defendant Schussel falls comfortably within the parameters of admissibility defined by Rule 702, as this response will demonstrate.

**I.      TESTIMONY OF CHARLES REILLY.**

    **A.      Opinions 1 and 2.**

The opinions at issue are that (1) Edward DeFranceschi had sufficient knowledge regarding DCIL, its relation to George Schussel, and its function in receiving payments so that he would be required, consistent with the attorney-client privilege, to either answer questions propounded by an IRS Revenue Agent accurately or decline to answer such questions; and (2) Edward DeFranceschi, as the representative of DCI and Mr. Schussel in relation to the 1997-98 tax audit, had the obligation to determine what facts to disclose and what facts not to disclose in response to questions, whether oral or in writing, propounded by the IRS Revenue Agent. The government objects to this testimony on the ground that it will not, in its view, assist the trier of fact. *See* United States' Memorandum in Support of Its Motion to Exclude Defense Experts Charles Reilly, Arnold Rosenfeld, and James Dinell ("Memorandum") at 3. Contrary to the government's argument, however, this testimony will provide crucial assistance to the jury in determining the issues before it.

"The fundamental question that a court must answer in determining whether a proposed expert's testimony will assist the trier of fact is '[w]hether the untrained layman would be qualified to determine intelligently and to the best degree, the particular issue without enlightenment from those having a specialized understanding of the subject matter involved.'" *United States v. Shay*, 57

F.3d 126, 132 (1st Cir. 1995), *quoting United States v. Montas*, 41 F.3d 775, 783 (1st Cir. 1994). In so doing, courts are to look to "whether the proposed testimony is relevant and fits the facts of the case." *Shay*, 57 F.3d at 133. This testimony readily meets that standard.

The elements of tax evasion under 26 U.S.C. §7201 are: (1) wilfulness, (2) the existence of a tax deficiency, and (3) an affirmative act constituting an evasion or an attempted evasion of the tax. *See, e.g., Sansone v. United States*, 380 U.S. 343, 351 (1965); *United States v. Lavoie*, 433 F.3d 95, 97 (1st Cir. 2005). Critical issues at the trial of this case will be whether the government has sustained its burden to prove beyond a reasonable doubt that Schussel acted wilfully with respect to the 1997-98 IRS audit and whether he committed affirmative acts constituting evasion or attempted evasion of the tax during that audit. "[W]here the element of wilfulness is critical to the defense, the defendant is entitled to wide latitude in the introduction of evidence tending to show lack of intent." *United States v. Lankford*, 955 F.2d 1545, 1550 (11th Cir.1992), *quoting United States v. Garber*, 607 F.2d 92, 99 (5th Cir. 1979)(en banc). *See also United States v. Angiulo*, 897 F.2d 1169, 1189 (1st Cir. 1990)*(*"The permissible scope of expert testimony under [Rule] 702 is quite broad . . . .").

At the heart of this issue is the question of causation: given the disclosures made to DeFranceschi and his complete sovereignty over the determination of what to disclose and not to disclose in response to the Revenue Agent's inquiries, as well as the limitations imposed upon his determination by the attorney-client privilege, were any false or misleading statements made by DeFranceschi to the Revenue Agent caused by Schussel or were they the product of DeFranceschi's independent actions?[2] The key point is that, whatever information Schussel may have provided to

---

[2] The purpose of the proffered testimony is not, as the government characterizes it, to provide

DeFranceschi, it was DeFranceschi's duty and obligation, as DCI's and Schussel's attorney and tax representative, to decide what to disclose and what not to disclose to the Revenue Agent, and he had sufficient information based on which he could make that determination. That being the case, Schussel will contend, he did not wilfully cause false or misleading statements to be made to the Revenue Agent. The proffered testimony does not, therefore, as the government argues, Memorandum at 4, relate to a "collateral issue" – quite the contrary, it concerns matters of pivotal importance to the primary issues for the jury's consideration, as is clear from the government's assertion that its evidence will show that Schussel's alleged transmission of false and misleading information to DeFranceschi resulted in DeFranceschi's transmission of false and misleading information to the IRS. *See* Memorandum at 4. The government will, of course, remain entirely free to present its evidence and argue its theory to the jury, but Schussel is entitled to present to the jury evidence based on which it could take a different view of the matter, one inconsistent with Schussel's criminal culpability for the acts and decisions of DeFranceschi.

Expert testimony regarding the role of the client and the attorney/tax representative in the audit process and the respective responsibilities and obligations of each is not information already within the ken of the average layman. Absent the expert testimony, the jury would not have the necessary understanding of the attorney-client privilege and the limitations it places on the information which an attorney may disclose or of the customary practices of tax professionals in balancing the requirements of the attorney-client privilege against their duty not to provide

---

a basis on which to argue that DeFranceschi "acted unprofessionally with respect to the DCI audit and Schussel's tax returns," Memorandum at 3, or to prove that DeFranceschi "violated his duties to the IRS." Memorandum at 4. Thus, Schussel's "true purpose" in seeking to introduce the challenged expert opinion is *not* to impeach DeFranceschi's credibility through extrinsic evidence, as the government suggests. *See* Memorandum at 4 n.2.

4

misleading information to the IRS or of the options available to DeFranceschi in making his professional determination regarding how, or if, to respond to the Revenue Agent's inquiries. An understanding of all these matters is essential to the jury's reasoned consideration of Schussel's defenses and, concomitantly, to its determination whether the government has met its burden to prove all the elements of the charged offenses beyond a reasonable doubt. Such testimony has, therefore, a "valid connection" to the jury's determination of Schussel's guilt of the offenses with which he is charged and therefore "fits the facts of the case." *See Shay*, 57 F.3d at 133 & n.5.

"The testimony of a legal expert is admissible as to the ordinary practices of those engaged in the business of law, legal studies, or law-related fields, or as to trade customs and usages of those so employed." *Music Sales, Corp. v. Morris*, 73 F.Supp.2d 364, 381 (S.D.N.Y. 1999). *See, e.g., Waco Intern, Inc. v. KHK Scaffolding Houston, Inc.*, 278 F.3d 523 (5th Cir. 2002)(attorney properly permitted to testify as expert regarding the issues an attorney typically investigates in determining whether to pursue an *ex parte* seizure for trademark infringement); *Brown v. Slenker*, 220 F.3d 411, 422 n.10 (5th Cir. 2000)(error to preclude expert testimony regarding whether an attorney-client relationship existed); *United States v. Riddle*, 103 F.3d 423, 430 (5th Cir. 1997)(court erred in excluding expert testimony regarding how banks operate and what precautions bank officers know they should take); *Oxford Gene Technology Ltd. v. Mergen Ltd.*, 345 F.Supp.2d 431, 443 (D.Del. 2004)(allowing attorney to testify regarding the actions a reasonable corporation would take upon learning of a patent relevant to its business). Expert testimony is particularly appropriate where, as here, "specialized areas of the law . . . are at issue." *United States v. Cavin*, 39 F.3d 1299, 1309 (5th Cir. 1994). *See Peckham v. Continental Cas. Ins. Co.*, 895 F.2d 830, 837 (1st Cir. 1990)("Insurance is a complicated subject and the industry, over time, has developed a patina of custom and usage.

Arcana abound. Defendant's proffered experts could reasonably be expected to shed some light in a shadowy domain"). Expert opinion regarding the ordinary practices of a tax representative to retain complete responsibility over the decision regarding what to disclose and what not to disclose to the IRS during an audit and to decide what communications of his client will be included in the disclosures and which will be protected falls well within the heartland of permissible expert testimony under Rule 702 and should be permitted. The Court should therefore permit Reilly to testify to opinions #1 and #2.

### B.    Opinions 3 and 4.

The opinions at issue are that (3) attempts to delete management records such as portions of the vendor or attendee database did not deprive the IRS of records requested by their initial IDR nor of records that would normally be requested by the IRS in conducting tax audits, and (4) records that were the subject of the so-called "Project Phoenix" would either not be requested in a tax audit or would be available to the auditor from third party sources. The government argues that "[t]he jury does not need an expert to perceive the relevance of the co-conspirators' agreement to destroy and falsify records that showed the diversion of funds to Bermuda." Memorandum at 5. That argument, however, illustrates why the jury *does* need this information – it may not need expert assistance to blindly accept the government's version of events and motivations, but it does need information necessary to an understanding of the alternative view of the matter which the defense will propose to it, namely, that the principal purpose of Project Phoenix was to keep certain business and management data out of the hands of a potential buyer and that Project Phoenix was not expressly intended to preclude the IRS Revenue Agent from reviewing the records in question.[3]

---

[3]

In the spring of 1997, when the discussion of deleting records began, DCI had not even yet

The government will contend at trial that the destruction of documents in conjunction with Project Phoenix was indicative of an intent to conceal information from the IRS. A direct counter to that contention is the fact, to which Reilly would testify, that the documents in question were not the type of financial documents which IRS auditors generally request or which had been requested by the IRS in this case. Reilly's testimony on these points is essential to the jury's understanding of the types of records a taxpayer would reasonably foresee the need to maintain in the event they were requested by the IRS and of the unlikelihood that documents such as those at issue would ever be requested by the IRS. In the absence of the proffered testimony, the average juror would lack the knowledge necessary to make a reasoned assessment of the evidence relating to Project Phoenix and what it did or did not show regarding the intent of Schussel and his alleged coconspirators.

The relevance of this evidence is not, as the government suggests, dependent upon Schussel's having actual knowledge that the documents would be irrelevant to the IRS. *See* Memorandum at 5. If documents are not of a type generally requested by the IRS, then their destruction is unlikely to be indicative of an intent to conceal and mislead. The government wishes the jury to draw an inference of criminally culpable intent from the destruction of the documents without evidence that the documents were likely to be requested by the IRS or that the documents would have been within a class of documents that would ordinarily be required to be disclosed to the IRS during a revenue audit had they not been destroyed.[4]  Fairness dictates that Schussel be permitted to introduce

---

received a notice of audit. Instead, DCI was focused on a sale of its business and was concerned about the scope of records that could potentially pass to a prospective buyer that would indicate a variance between DCI's tax reporting and its prior attendee and vendor payments.

[4] There will be non-expert testimony that the documents which were the object of Project Phoenix were not accounting records but instead were parts of attendee and vendor registration databases which were kept by DCI for business purposes rather than for accounting, financial, or

evidence to refute the inference which the government intends to urge upon the jury.

  **C. Opinion 5.**

  The opinion at issue is that Bermuda is a common venue for U.S. corporations engaged in a business or trade which generates foreign income and is frequently and legitimately relied upon by such corporations, often through subsidiaries, to avoid unnecessary double taxation. In recent years, newspapers and other media have been full of articles and reports of use of foreign countries, foreign subsidiaries, and foreign bank accounts to evade taxation or for other nefarious purposes. In the absence of this testimony, there is a substantial danger that the jury will infer wrongdoing simply from the use of a Bermuda subsidiary and a Bermuda bank account, even if the government does not argue that there is anything "inherently criminal" in such use. *See* Memorandum at 5. Thus, it will assist the jury in properly determining the issues before if it is informed that there is nothing inherently culpable in using a foreign subsidiary to receive foreign income and that American corporations frequently employ such practices for entirely legitimate reasons. The proffered testimony will not affect any legitimate interest of the government; it will simply prevent it from being the beneficiary of unwarranted assumptions on the part of jurors. The necessary point can be made quite briefly and will avert potential unfair prejudice to Schussel.

  **D. Opinion 6.**

  The opinion at issue is that Schussel's accountant had sufficient information from Schussel in both 1995 and 1996 to accurately compute Schussel's taxable income, including income derived from DCIL. Essentially, Reilly will testify that, based on the information which Schussel's accountant had, it would have been normal and customary practice for an accountant/tax preparer

---

tax purposes.

to make further inquiry to determine whether the DCIL income was taxable to Schussel and, if so, in what year. The subject of the proffered testimony is not whether Schussel made "full disclosure." *See* Memorandum at 6. Instead, it is whether Schussel made *enough* disclosure to put a tax preparer on notice that there was an issue to be determined regarding the taxability of income.

This is information crucial to the jury's ability to fairly determine the issues before it. The government wishes the jury to conclude that Schussel hid income information from his accountant/tax preparer and must therefore have intended to evade taxes on the undisclosed income. Reilly's testimony is directly relevant to the reasonableness of Schussel's conduct and whether he wilfully evaded the payment of taxes. Schussel's having provided his accountant/tax preparer with sufficient information for the accountant/tax preparer to have, with normal and customary follow-up inquiry, made an accurate determination of Schussel's reportable income for calendar year 1995 would undermine the government's contention that Schussel wilfully evaded payment of a portion of the taxes due and owing for 1995.[5] Thus, the testimony would be of assistance to the jury and should be admitted.

## II.    TESTIMONY OF ARNOLD R. ROSENFELD.

As summarized in his affidavit, Rosenfeld will testify:

> The Rule on Confidentiality, Rule 1.6, encourages a client to communicate fully with his or her lawyer and to disclose to the lawyer as much information as possible about the matter for which the lawyer has been engaged. As Comment [3] to Mass. R. Prof. C. 1.6 so eloquently states: "Almost without exception, clients come to lawyers in order to determine what their rights are and what is, in the maze of laws and regulations, deemed to be legal and correct. The common law recognizes that the client's confidences muse be protected from disclosure." Clients therefore

---

[5] Schussel does not intend to rely on a defense that Schussel relied on advice from his tax preparer that the DCIL profits were not taxable to him, nor does the proffered testimony relate to such a defense. *See* Memorandum at 6.

are encouraged to fully disclose all information regarding the matter, even if embarrassing or legally damaging. If that were not the case, the client would be far less likely to receive sound legal advice. Lawyers often receive information from clients about past acts that if known to others would be embarrassing or legally damaging to the client. The ethical rules prohibit a lawyer from revealing such information, unless the confidential communication falls within one of the specific exceptions enumerated in the Rules.

Once the client has fully disclosed all information regarding past acts, and especially when the client has, at the request of the lawyer, signed over authority to the lawyer to act on his behalf, the client legitimately is relying on the lawyer's judgment about what is appropriate and not appropriate to communicate. In this instance, based upon the materials I read, it is my opinion that Schussel was under no obligation to correct or communicate to DeFranceschi the fact that the DCI/DCIL contract had not been in effect or was not a valid contract, even if that were true, assuming that he had previously fully disclosed to DeFranceschi all of the facts of his past wrongdoing. As far as Schussel knew, DeFranceschi may have had some sound legal reason to send the DCI/DCIL contract to the IRS and Schussel had the right to rely on DeFranceschi's legal judgment to do so. Thus, in my opinion, Schussel had no further obligation to restate to DeFranceschi what he already told him about the contract and his past wrongdoing, and his failure to correct what he perceived as DeFranceschi's mistakes in communicating on his behalf in no way violates his duties as a client insofar as the ethical rules are concerned.

As further summarized in Rosenfeld's affidavit, he would also testify:

The fact that a client has allegedly perpetrated a past tax fraud does not preclude a client from suggesting a proposed response to questions posed by the IRS agent. In the case of the March 4, 1998 draft Schussel sent to DeFranceschi, Schussel is further setting out facts and proposals for DeFranceschi to consider for a letter from DeFranceschi to the IRS agent. What Schussel is doing is requesting advice. Once a client has fully disclosed his past wrongdoings to his lawyer, it is up to the lawyer "to determine what their rights are and what is, in the maze of laws and regulations, deemed to be legally correct." Comment [3], Rule 1.6. A client could not determine what is legally correct unless he sought his lawyer's sound legal advice. One way to accomplish this is to make proposals to one's lawyer and to accept the lawyer's advice. Unless the client ignores the lawyer's advice and seeks to violate the law, there is a duty on the part of the lawyer under the Rules of Professional Conduct not to disclose proposals a client makes, even if those proposals would lead to illegal acts if implemented. The FAX cover letter of the March 4, 1998 letter makes clear that Schussel's attached proposed response is a draft, and that he wants his attorney's reactions. The lawyer needs this information in order to "represent the client effectively and, if necessary, to advise the client to refrain from wrongful conduct. Almost without exception, clients come to lawyers in order to determine their rights and what is, in the complex of law and regulations, deemed to be legal

10

>and correct." Comment [2], ABA Model Rules of Professional Conduct 1.6. In other words, there is nothing unusual for a client to offer a lawyer proposed statements that may not be appropriate and may even be wrongful if sent. As the comments to Rule 1.6 state clearly, that is why clients seek legal advice and why client communications with lawyer are confidential.

Finally, Rosenfeld would testify that it is his opinion that "assuming Schussel fully disclosed all the facts of his wrongdoing to DeFranceschi prior to any of these communications, all of these communications with DeFranceschi were confidential within the scope of the Massachusetts Rules of Professional Conduct."

Under the terms of Rule 702, expert testimony is admissible if it will "assist the trier of fact to understand the evidence or to determine a fact in issue." Thus, it is irrelevant that, as the government contends, the confidentiality of attorney-client communications is not itself a "fact in issue." *See* Memorandum at 7. Rosenfeld's testimony will assist the jury in understanding the evidence relating to Schussel's defenses by providing it with essential information regarding the attorney-client relationship and the professional and ethical obligations imposed by the Massachusetts Rules of Professional Responsibility, particularly the rules governing client confidences, and the manner in which they affect what an attorney may and may not do when representing a client and, concomitantly, what a client may reasonably expect regarding how the attorney will conduct himself during the course of the representation. It will also explain for the jury the respective roles of client and attorney when the client seeks legal advice and representation, particularly when the client delegates to the attorney the full and exclusive power to act on his behalf in the matter. This evidence is crucial to the jury's full and fair consideration of Schussel's defenses and to its determination whether the government has met its burden to prove all the elements of the offenses charged beyond a reasonable doubt. It may well, as the government argues, be irrelevant

to *its* theory of the case, *see* Memorandum at 7, but it lies at the cornerstone of Schussel's defenses.[6]

The government next argues that Rosenfeld's testimony should be excluded because it embodies a "legal conclusion" that "improperly encroaches on areas reserved for the Court." Memorandum at 8. Rosenfeld's testimony will not, however, be offered, "solely to establish the meaning of a law." Memorandum at 8, *quoting United States v. Mikutowicz*, 365 F.3d 65, 73 (1st Cir. 2004). Nor will Rosenfeld's testimony embody inadmissible legal conclusions. As the Fourth Circuit has explained:

> The best way to determine whether opinion testimony contains legal conclusions is to determine whether the terms used by the witness have a separate, distinct and specialized meaning in the law different from that present in the vernacular. . . To determine when a question posed to an expert calls for an improper legal conclusion, the district court should consider first whether the question tracks the language of the legal principle at issue or of the applicable statute, and, second, whether any terms employed have specialized legal meaning. . . . In many circumstances, a problematic question can be more carefully phrased to elicit similar information yet avoid a response that constitutes a mere legal conclusion.

*United States v. Barile*, 286 F.3d 749, 760 (4th Cir. 2002).[7] Rosenfeld's opinions are not, and will

---

[6] The government argues that, even if relevant, the evidence "will likely cause confusion." Memorandum at 7-8. The evidence will not confuse the jury at all, as its relationship to the other evidence in the case and to Schussel's defenses will be clear in the context of the trial. In any event, this is not a reason to exclude the evidence outright, as the Court has substantial discretion to regulate the manner of the evidence's admission to avoid any potential for confusion, to the extent that it believes there may be any. This is an issue which should await developments at trial before final resolution of the question of the admissibility of Rosenfeld's testimony.

[7] The Advisory Committee Notes to Rule 704 contain an example which illustrates the distinction drawn by the *Barile* Court: "Thus the question, 'Did T have the capacity to make a will?' would be excluded, while the question, 'Did T have sufficient mental capacity to know the nature and extent of his property and the natural objects of his bounty and to formulate a rational scheme of distribution?' would be allowed." *See Torres v. County of Oakland*, 758 F.2d 147, 151 (6th Cir. 1985)(explaining that question asking expert whether he believed employer had "discriminated" against plaintiff could be properly rephrased to ask whether the expert believed that plaintiff's national origin "motivated" the employer's treatment of her).

not be at trial, couched in the terminology of legal conclusion. To the extent that the Court has present concerns regarding the admissibility of the evidence, the most appropriate course would be to defer ruling until after the conclusion of the government's case, at which point the Court will be in a position both to evaluate the relevance of the testimony and to judge, from the manner in which the questions are framed, whether the answers will or will not embody impermissible legal conclusions. Counsel for Schussel are well aware of what is permitted in this area and what is not, and the line between improper legal conclusion testimony and proper expert opinion will not be transgressed.

For similar reasons, nothing in Rosenfeld's testimony will "improperly encroach the function of the jury," as the government contends. Memorandum at 8. Expert testimony is not inadmissible because it "embraces an ultimate issue to be decided by the trier of fact," Rule 704, nor would Rosenfeld's testimony "merely tell the jury what result to reach." Advisory Committee Notes, Rule 704. In making this argument, the government focuses on two isolated snippets from Rosenfeld's affidavit which are not essential to what his testimony will be at trial. As previously addressed, the language in which Rosenfeld's opinions will be expressed will be largely determined by the manner in which the questions put to him at trial are framed, and this is a matter on which no pretrial ruling can or should be made. While Rosenfeld's affidavit sets forth the substance of his testimony, it does not necessarily reflect either the language in which the questions put to him will be framed or the language in which his responses will be delivered. The substance of that testimony will assist the jury in understanding the evidence and in determining the issues before it, and it should not be excluded.

### III. TESTIMONY OF JAMES DINELL.

Defendant asks the Court to defer ruling on the admissibility of Dinell's testimony until after the completion of the government's case-in-chief, when its admissibility can be evaluated in light of the extent to which the role of fax machines in the events at issue has assumed relevance to the government's case against him.

## CONCLUSION

For all the foregoing reasons, the government's motion to exclude the testimony of defendant Schussel's proffered expert witnesses should be denied. In the alternative, the Court should defer ruling on the admissibility of the evidence until after the conclusion of the government's case-in-chief or until it can evaluate the questions asked of the witnesses in the concrete context of the case.

Respectfully submitted,

By his attorneys,

**/s/ Francis J. DiMento**
Francis J. DiMento.
DiMento & Sullivan
7 Faneuil Hall Marketplace
Boston, Massachusetts 02109
(617) 523-2345

**/s/ Martin G. Weinberg**
Martin G. Weinberg
Mass. Bar. No. 519480
20 Park Plaza, Suite 905
Boston, Massachusetts 02116
(617) 227-3700

Date: January 4, 2007

## CERTIFICATE OF SERVICE

I, Martin G. Weinberg, hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on January 4, 2007.

/s/ Martin G. Weinberg