UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

_____
                                    )
UNITED STATES OF AMERICA            )
                                    )
                                    )
v.                                  )     CRIMINAL NO. 04-10060-RCL
                                    )
                                    )
GEORGE SCHUSSEL                     )
_____)

### DEFENDANT GEORGE SCHUSSEL'S TRIAL BRIEF

This Trial Brief will address two primary issues which defendant Schussel expects to arise at trial. It will first address issues relating to the operation of the statute of limitations as to all three counts of the indictment. It will then address matters relating to the attorney-client privilege and the rule of completeness.

**I.   STATUTE OF LIMITATIONS ISSUES.**

   **A.   Count One.**

Count One charges Schussel under 18 U.S.C. §371 with conspiring to defraud the United States. The statute of limitations on this offense is six years. 26 U.S.C. §6531. The indictment in this case was returned on February 26, 2004. Therefore, because §371 requires the commission of an overt act, the government must prove beyond a reasonable doubt that the conspiracy charged continued to exist beyond February 26, 1998, that Schussel continued to be a member of the conspiracy charged beyond February 26, 1998, and that Schussel or an alleged coconspirator committed an overt act in furtherance of the conspiracy charged on or after February 26, 1998. It is defendant Schussel's position that the government will be unable to meet its burden of proof as to any of these issues.

      **1.**      **If there was a conspiracy, it did not extend into the limitations period, nor did Schussel or any alleged coconspirator commit an overt act in furtherance of the conspiracy charged on or after February 26, 1998.**

Efforts to conceal a crime extend the life of a conspiracy only if the government proves beyond a reasonable doubt that there was "an express original agreement among the coconspirators to continue to act in concert in order to cover up" the crime which was the object of the conspiracy. *Grunewald v. United States*, 353 U.S. 391, 404 (1957). As the First Circuit has explained:

> *Grunewald* . . . laid down special requirements of proof resting upon a distinct policy concern, namely, that "every conspiracy is by its nature secret"; that "every conspiracy will inevitably be followed by actions taken to cover the conspirators' traces"; and that if these facts were enough for a conspiracy to conceal, then the statute of limitations and other safeguards would be virtually "wipe[d] out." 353 U.S. at 402 . . . . *For this reason, it held that even egregious and organized acts of concealment were not sufficient, unless agreed to as part of the original conspiratorial plan.*

*United States v. Twitty*, 72 F.3d 228, 233 (1st Cir. 1995)(emphasis added). Thus, "a vital distinction must be made between acts of concealment done in furtherance of the main criminal objectives of the conspiracy, and acts of concealment done after these central objectives have been obtained, for the purpose only of covering up after the crime." *Grunewald*, 353 U.S. at 405.

It is defendant Schussel's position that, if there was a conspiracy to defraud the IRS with respect to any taxes due and owing for calendar year 1995, that conspiracy ended on or about March 15, 1996, the date on which DCI's and Schussel's federal tax returns for calendar 1995 were filed, well outside the statute of limitations. Assuming *arguendo* that any acts of concealment were undertaken in conjunction with the 1997-98 IRS audit, they were not part of the original conspiratorial agreement, if any there was. Thus, overt acts cc-hh (Indictment at 14-15) were not part of the original conspiracy to defraud the IRS with respect to the taxes due for 1995. They were instead *at most* separate acts of concealment, undertaken after the objective of the alleged conspiracy

had been achieved, for the purpose of covering up *after* the crime. They cannot, therefore, be relied upon to extend the life of the conspiracy into the limitations period or as proof of an overt act in furtherance of the conspiracy within the limitations period. Accordingly, Schussel will be entitled to a judgment of acquittal on Count One on the ground that it is barred by the statute of limitations.

> **2.    If the conspiracy charged existed, Schussel withdrew from the conspiracy no later than December 31, 1996, well outside the limitations period.**

Schussel will also contend that, if the conspiracy charged in Count One continued to exist beyond on or about March 15, 1996, he withdrew from the conspiracy no later early 1996. The factual predicate for this contention lies in the efforts Schussel made during 1996 to bring his and DCI's tax filings into full compliance with the income reporting requirement. These included ending the deposits of payments into the Bermuda account, ending the transfers of money from the Bermuda account to the Fidelity account, bringing in Coopers & Lybrand to do an independent outside audit of DCI's 1996 finances, ensuring that all payments to him were made through, and on the books of, DCI, and declaring all income on DCI's federal income tax return for 1996, all of which was communicated to his alleged coconspirators and done with their knowledge.

In order to withdraw from a conspiracy, a coconspirator must act affirmatively either to defeat or disavow the conspiracy. One way in which he may do so is to communicate to his coconspirators that he had abandoned the conspiracy and its goals. *See, e.g., United States v. Nason*, 9 F.3d 155, 161-62 (1st Cir. 1993); *United States v. Piva*, 870 F.2d 753, 757 (1st Cir. 1989); *United States v. Juodakis*, 834 F.2d 1099, 1102 (1st Cir.1987). The evidence will demonstrate that Schussel's conduct satisfied these requirements and that, therefore, the statute of limitations began to run from the date on which he withdrew from the conspiracy, which was well outside the

limitations period. *See Juodakis*, 834 F.2d at 1103-05; *see also United States v. Rogers*, 102 F.3d 641, 644 (1st Cir. 1996)(withdrawal from conspiracy normally starts the running of the statute of limitations); *United States v. Sax*, 39 F.3d 1380, 1386 (7th Cir. 1994)(same).

> **3.    There were at best multiple conspiracies rather than the single conspiracy charged, and the conspiracy charged ended prior to February 26, 1998.**

Schussel will also contend that, at best, the evidence will show that there were multiple conspiracies rather than the single overarching conspiracy charged in Count One.[1] There was a significant temporal separation between the acts involved in the transfers of payments from DCI to Bermuda and from Bermuda to the Fidelity account, which ended before the filing of DCI's and Schussel's federal income tax returns for calendar 1995 on or about March 15, 1996, and the events related to the IRS audit, which did not begin until the fall of 1997, more than a year and a half later. Those events were separated not just temporally, but also by a revolutionizing of DCI's accounting and bookkeeping practices, as described on page 3, *supra*, which was purposefully instituted to bring DCI and Schussel into full compliance with the requirements for the reporting of income to the IRS and which did in fact accomplish that goal. These changes brought the conspiratorial agreement (if there was one), which revolved around the diversion of payments to Bermuda, to an end, as the evidence will clearly show that the practice of transferring funds to Bermuda ended in late 1995. If there was a conspiracy to defraud the IRS directed at concealing the under-reporting of income for calendar 1995 during the 1997-98 audit – which Schussel denies – it was, at most, a separate concealment conspiracy, predicated upon a separate conspiratorial agreement, for the reasons

---

[1] Whether there was a single conspiracy or instead multiple conspiracies is a question of fact for the jury, *see, e.g, United States v. Villarman-Oviedo*, 325 F.3d 1, 12 (1st Cir. 2003), and Schussel has requested that the jury be instructed on this issue.

addressed at pages 2-3, *supra*. Accordingly, prosecution of Schussel for the conspiracy charged in Count One is time-barred.

    **B.**    **Counts Two and Three.**

Counts Two and Three charge Schussel with committing substantive tax evasion in two ways: by filing false tax returns for himself and DCI for calendar year 1995 and by making and causing to be made false statements to an IRS revenue agent for the purpose of misleading and impeding an audit of DCI's 1995 tax return. Schussel moved pretrial to dismiss Counts Two and Three on the grounds that those counts were time-barred as a matter of law. *See* Defendant George Schussel's Motion to Dismiss Counts 2 and 3 for Violation of the Statute of Limitations and Incorporated Memorandum of Law (Doc. 30). In that motion, Schussel contended that the offenses charged in Counts Two and Three were complete upon the filing of the 1995 returns. *See Sansone v. United States*, 380 U.S. 343 (1965); *United States v. Uscinski*, 369 F.3d 1243, 1247 & n.* (11th Cir. 2004).This Court rejected Schussel's position and denied that motion. Schussel continues to maintain that these counts are time-barred as a matter of law, for all the reasons set forth in the previously-filed motion and memorandum. This Trial Brief will, however, address itself to Schussel's contention that the evidence will show that these counts are time-barred as a matter of fact.

Because the tax returns were filed well outside the statute of limitations, the government's ability to prove Schussel guilty of the offenses charged in these counts rests upon its ability to prove beyond a reasonable doubt that Schussel obstructed the IRS audit on or after February 26, 1998. To find Schussel guilty of these offenses, the government must present sufficient evidence to convince a reasonable jury beyond a reasonable doubt that at least one of two specified acts constituted an

affirmative act of evasion done or caused to be done by Schussel within the limitations period: (1) the March 11, 1998, letter from his attorney/tax representative, Edward DeFranceschi to the IRS Revenue Agent, and/or (2) the signing of the adjustment letter on May 6, 1998. Schussel contends that the government will be unable to meet this burden and that he will, therefore, be entitled to a judgment of acquittal at the conclusion of the government's case. It is Schussel's theory of defense that he is not criminally culpable for either of those acts.

With respect to the March 11, 1998, letter, that letter was written, signed, and sent by DeFranceschi. It is Schussel's position, as discussed in Defendant George Schussel's Response to United States' Motion to Exclude Defense Experts Charles Reilly, Arnold Rosenfeld, and James Dinell, filed on January 4, 2007 (Doc. 88), that Schussel is not responsible for the conduct of DeFranceschi because Schussel provided DeFranceschi with sufficient information to permit him to conduct the representation in conformity with his ethical and professional duties and obligations and gave DeFranceschi complete sovereignty to decide what to disclose to the IRS and what not to disclose. Schussel will also argue that, even if the letter was arguably misleading, it cannot be the basis for conviction of Schussel because it was literally true. *See Bronston v. United States*, 409 U.S. 352 (1973).[2]  For example, the first question to which DeFranceschi was responding in his March 11, 1998, letter was framed by R/A McGovern in the present tense: "Is Dr. Schussel a shareholder, employee, or officer in DCIL?" DeFranceschi elected to answer the question as it was written, in

---

[2]

*See also United States v. Poutre*, 646 F.2d 685, 687-88 (1st Cir. 1980); *United States v. Attick*, 649 F.2d 61, 63 (1st Cir. 1981); *United States v. Good*, 326 F.3d 589, 591 (4th Cir. 2003); *United States v. Moses*, 94 F.3d 182, 188 (5th Cir. 1996); *United States v. Serafini*, 167 F.3d 812, 822 n.16 (3d Cir. 1999); *United States v. Mandanici*, 729 F.2d 914, 921 (2d Cir. 1984); *United States v. United States v. Rendon-Marquez*, 79 F.Supp.2d 1361, 1363 (N.D. Ga. 1999), *aff'd* 228 F.3d 416 (11th Cir. 2000)(table).

the present tense: "Dr. Schussel is not an employee or officer of . . . . DCIL." This response was literally true in March, 1998, as DCIL had ceased to exist by that time. It was DeFranceschi who chose to so answer, rather than to answer in a manner which reflected Schussel's past involvement as the principal beneficial owner of DCIL and, at one time, as its President. DeFranceschi had previously been told that DCIL was defunct and that DCIL and Schussel had been, but no longer were, one and the same. Thus, DeFranceschi had all the information necessary to inform R/A McGovern of Schussel's prior relationship to DCIL in his March 11, 1998, letter but elected, on his own, to answer in a fashion that was literally true but arguably misleading.

With respect to the May 6, 1998, signing of the adjustment letter by Schussel, the evidence will also be insufficient to prove beyond a reasonable doubt that this was a criminally culpable act on Schussel's part. Schussel will contend that the signing of the adjustment letter, thereby accepting the offer of the IRS to settle the matter, was not a criminally culpable act. Under *Cheek v. United States*, 498 U.S. 192 (1991), the government must prove beyond a reasonable doubt that Schussel acted wilfully, which in the context of a tax prosecution under 26 U.S.C. §7201 requires that the government prove that the law imposed a duty on Schussel, that he knew of that duty, and that he voluntarily and intentionally violated that duty. In the context of this case, *Cheek* requires that the government prove beyond a reasonable doubt that Schussel knew that he had a duty not to sign the adjustment letter and that he voluntarily and intentionally violated that duty. The evidence will not prove that Schussel acted wilfully, as defined by *Cheek*, when he signed the adjustment letter.

Therefore, the evidence will be insufficient to prove that either DeFranceschi's March 11, 1998, letter or Schussel's May 6, 1998, signing of the adjustment letter were criminally culpable affirmative acts of evasion done or cause to be done by Schussel. Accordingly, the evidence will be

insufficient to prove that the offenses charged in Counts Two and Three continued into the limitations period, and Schussel will be entitled to a judgment of acquittal on those counts.

## II. ATTORNEY-CLIENT PRIVILEGE ISSUES.

Defendant Schussel renews his pretrial objections to the introduction into evidence of any documents which he has contended were protected by the attorney-client privilege and to the government's presentation of the testimony of Edward DeFranceschi or of any other attorney with whom Schussel had an attorney client relationship. Schussel understands, however, that the Court has made its ruling with respect to that evidence and that the government will, accordingly, be permitted to introduce documents and present testimony which this Court had found not to be protected by the attorney-client privilege. If it does so, as Schussel anticipates that it will, the need is likely to arise for Schussel to respond to documents or testimony presented by the government with other documents and testimony which make it clear that he neither deceived DeFranceschi nor caused misleading statements to be made to the IRS through DeFranceschi.

Such additional documents may be offered under the rule of completeness, codified in Fed. R. Evid. 106, which applies "where the introduction of limited pieces of information create[s] unfairness or potential for misimpression." *United States v. Simonelli*, 237 F.3d 19, 28 (1st Cir. 2001). The key principle embodied in the rule of completeness is one of fairness. *See United States v. Awon*, 135 F.3d 96, 101 (1st Cir. 1998)(rule "operates to ensure fairness where a misunderstanding or distortion created by the other party can only be averted by" the admission of other documents).[3] In assessing whether fairness requires the admission of additional evidence

---

[3] The First Circuit has expressly recognized that the "unit" required to make the presentation complete may consist of a number of documents. *See United States v. Boylan*, 898 F.2d 230, 257 (1st Cir. 1990).

offered by a defendant, "a district judge should be sensitive to the defendant's right to present evidence on his own behalf, as well as his right not to testify." *United States v. Glover*, 101 F.3d 1183, 1192 (7th Cir. 1996). If they are so offered, counsel will be prepared to specify for the Court the parts of the evidence offered by the government which, because of their incompleteness, create a misleading impression and the parts of the documents offered by him which clarify and complete the evidence offered by the government.

The documents at issue are likely to include DeFranceschi's notes of his meetings with Schussel and others with whom he had an attorney-client relationship and faxes from the clients which are inconsistent with DeFranceschi's testimony. It is Schussel's position that, should he be forced to use documents which he contends are protected by the attorney-client privilege or to elicit testimony that would fall within the privilege to defend against the government's use against him of documents which he contends are protected by the privilege, this should not waive his objection to the use of *any* of the attorney-client documents or to the testimony of DeFranceschi or any attorney with whom he had an attorney-client relationship, nor should it work an open-ended waiver of his attorney-client privilege. Schussel will not be raising a reliance on counsel or reliance on the advice of counsel defense. This is not, for example, a case in which Schussel himself wrote the March 11, 1998, letter and is seeking to prove that his attorney approved its content. Instead, this is a case in which the government must prove that Schussel caused DeFranceschi to include false or misleading information in that letter, and Schussel's defense is that he did not. Such a defense is not remotely comparable to an advice of counsel defense. It is in fact in many ways its opposite: here, the government will argue the attorney's reliance on his client rather than the client's reliance on his attorney.

                            Respectfully submitted,

                            By his attorneys,

| **/s/ Francis J. DiMento** | **/s/ Martin G. Weinberg** |
|---|---|
| Francis J. DiMento. | Martin G. Weinberg |
| DiMento & Sullivan | Mass. Bar. No. 519480 |
| 7 Faneuil Hall Marketplace | 20 Park Plaza, Suite 905 |
| Boston, Massachusetts 02109 | Boston, Massachusetts 02116 |
| (617) 523-2345 | (617) 227-3700 |

## CERTIFICATE OF SERVICE

I, Martin G. Weinberg, hereby certify that on this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on January 5, 2007.

                            **/s/ Martin G. Weinberg**
                            Martin G. Weinberg