UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

_____
                                )
UNITED STATES OF AMERICA        )
                                )
                                )
v.                              )   CRIMINAL NO. 04-10060-RCL
                                )
                                )
GEORGE SCHUSSEL                 )
_____)


**DEFENDANT GEORGE SCHUSSEL'S MOTION FOR JUDGMENT OF ACQUITTAL
AND INCORPORATED MEMORANDUM OF LAW**

Now comes the defendant George Schussel and respectfully moves, pursuant to Fed. R. Crim. P. 29, that this Honorable Court enter a judgment of acquittal on all counts of the indictment.

As reason therefor, defendant states:

**COUNT ONE**

1. **No conspiracy existed after November 10, 1997.** To convict a defendant of conspiracy, the government must prove beyond a reasonable doubt that there were at least two culpable participants. *See* Governments's Proposed Instruction No. 21 (Doc. 79)("For you to find the defendant guilty of conspiracy, you must be convinced that the government has proven . . . beyond a reasonable doubt . . . that the agreement specified in the indictment . . . existed between two or more people . . . ."). The first failure of the government's proof is its failure to prove that *anyone* conspired with Schussel after November 10, 1997, to "defraud the United States by impeding, impairing, obstructing and defeating the lawful government function of the Treasury Department and the Internal Revenue Service . . . in the ascertainment, computation, assessment and collection of . . . federal income taxes." Indictment, ¶12. If there was such a conspiracy, which Schussel does

not concede, Diane Reed withdrew from it in October, 1997, when she declared that she wanted no more to do with the audit. *See, e.g., United States v. Nason*, 9 F.3d 155, 161-62 (1st Cir. 1993)(coconspirator can withdraw from conspiracy by communicating to coconspirators that she has "abandoned the enterprise and its goals"); *United States v. Piva*, 870 F.2d 753, 757 (1st Cir. 1989)(same); *United States v. Juodakis*, 834 F.2d 1099, 1102 (1st Cir.1987)(same). Beginning in November, 1997, DeFranceschi, as the attorney, and Schussel, as the client, were solely responsible for the conduct of the audit, with Schussel having given DeFranceschi a power of attorney to act as his tax representative. There being no evidence that Gomes participated in any conspiracy to obstruct the IRS audit, *see* ¶6, *infra*, that leaves only DeFranceschi as a potential coconspirator, and the government has never contended that DeFranceschi was a coconspirator, as opposed to an innocent conduit of misinformation. Accordingly, no reasonable juror could conclude beyond a reasonable doubt that the conspiracy charged in Count One extended into the limitations period, *i.e.*, that there existed an agreement between Schussel and another criminally culpable individual to conspire to impede the IRS audit as of February 26, 1998.

  2. **Multiple conspiracies/*Grunewald***. Efforts to conceal a crime extend the life of a conspiracy only if the government proves beyond a reasonable doubt that there was "an express original agreement among the coconspirators to continue to act in concert in order to cover up" the crime which was the object of the conspiracy. *Grunewald v. United States*, 353 U.S. 391, 404 (1957). As the First Circuit has explained:

> *Grunewald* . . . laid down special requirements of proof resting upon a distinct policy concern, namely, that "every conspiracy is by its nature secret"; that "every conspiracy will inevitably be followed by actions taken to cover the conspirators' traces"; and that if these facts were enough for a conspiracy to conceal, then the statute of limitations and other safeguards would be virtually "wipe[d] out." 353 U.S. at 402 . . . . *For this reason, it held that even egregious and organized acts of*

> *concealment were not sufficient, unless agreed to as part of the original conspiratorial plan.*

*United States v. Twitty*, 72 F.3d 228, 233 (1st Cir. 1995)(emphasis added). Thus, "a vital distinction must be made between acts of concealment done in furtherance of the main criminal objectives of the conspiracy, and acts of concealment done after these central objectives have been obtained, for the purpose only of covering up after the crime." *Grunewald*, 353 U.S. at 405.

    3.  If there was a conspiracy to defraud the IRS with respect to any taxes due and owing for calendar year 1995, that conspiracy ended on or about March 15, 1996, the date on which DCI's and Schussel's federal tax returns for calendar 1995 were filed, well outside the statute of limitations. Assuming *arguendo* that any acts of concealment were undertaken in conjunction with the 1997-98 IRS audit, they were not part of the original conspiratorial agreement, if any there was. Thus, overt acts cc-hh (Indictment at 14-15) were not part of the original conspiracy to defraud the IRS with respect to the taxes due for 1995. They were instead *at most* separate acts of concealment, undertaken after the objective of the alleged conspiracy had been achieved, for the purpose of covering up *after* the crime. They cannot, therefore, be relied upon to extend the life of the conspiracy into the limitations period or as proof of an overt act in furtherance of the conspiracy within the limitations period.

    4.  *Forman v. United States*, 361 U.S. 416 (1960), *overruled in part on other grounds*, *Burks v. United States,* 437 U.S. 1 (1978), does not require a different result. In this case, as in *Grunewald*, the indictment charges a conspiracy which had as its objects both the evasion of taxes and the later concealment of the acts of evasion, implying the same sort of subsidiary conspiracy which the Supreme Court found problematic in *Grunewald*, in which the indictment alleged that as part of the conspiracy, the defendants and co-conspirators would "make continuing efforts to avoid detection

and prosecution by any governmental body" and "misrepresent, conceal and hide and cause to be misrepresented, concealed and hidden, the acts done pursuant to and the purposes of said conspiracy." 353 U.S. at 394 n.3. Similarly, here, like *Grunewald* and unlike *Forman*, in which "the indictment did not allege that one of the objects of the conspiracy was to conceal the acts of the conspirators," *Forman*, 361 U.S. at 485, the indictment alleges that it was part of the conspiracy that Schussel and others:

- "for purposes of preventing discovery of DCI unreported income, endeavored to impede and obstruct an audit conducted by the IRS of DCI's 1995 Corporate U.S. Income Tax Return," Indictment, ¶34;

- "participated in meetings, including during the fall of 1997, where they discussed how to conceal from the IRS the relationship between DCI and DCIL in an effort to prevent the IRS from finding out about Schussel's diversion of DCI unreported income to the Bank of Bermuda account," ¶35;

- "caused a false and fraudulent contract to be provided to . . . the revenue agent conducting the audit for the IRS, in order to mislead the revenue agent . . . .," ¶36;

- caused false representations to be made to be made to the IRS revenue agent "for the purpose of preventing the IRS from discovering his diversion of DCI taxable income to Bermuda in 1995," ¶¶37, 38.

Thus, unlike *Forman*, in which the indictment charged a single conspiracy to evade taxes, the indictment here explicitly charges a conspiracy to evade taxes *and* to conceal the acts of evasion.

5.  Under *Grunewald*, therefore, Schussel may not be convicted of the conspiracy charged unless the government "adduce[s] *direct* evidence that the particular acts of concealment relied on to extend the statute of limitations were fully embraced within the original aims of the conspiracy." *United States v. Gabriel*, 920 F.Supp. 498, 506-07 (S.D.N.Y. 1996)(emphasis in original), *aff'd* 125 F.3d 89 (2d Cir. 1997). *See Grunewald*, 353 U.S. at 404. "[T]he crucial question . . . is the scope of the conspiratorial agreement." *Id.* at 397. The government has failed to present evidence from which

a reasonable jury could conclude beyond a reasonable doubt that the original conspiratorial agreement included an agreement to "continue to act in concert in order to cover up" the diversion of income to Bermuda and the under-reporting of income. Because the evidence is to the contrary – that there was *not* such an original agreement – the government's evidence proves, *at best*, two separate conspiracies – a conspiracy to evade the payment of taxes which ended on March 15, 1996, and a conspiracy to conceal the acts of evasion, which did not begin until October, 1997. Accordingly, Schussel is entitled to a judgment of acquittal on Count One, as none of the 1997-98 overt acts of concealment alleged may be relied on to extend the statute of limitations,[1] and Count One is, therefore, time-barred.

      6. **Multiple conspiracies**. In determining whether the evidence proves the single conspiracy charged in the indictment or instead multiple conspiracies,

> [c]ourts typically look to the totality of the circumstances in determining whether the

---

[1]     Overt Act dd may not be considered for an additional reason, as there is insufficient evidence to support the allegation that "[i]n or about September 1997 through in or about November 1997, Schussel caused steps to be taken to delete information in DCI's computer database relating to DCI's revenues in 1995, in an effort to falsely and fraudulently have the amount of DCI revenue noted in the database equal the amount of revenue provided by Schussel in DCI's 1995 Corporate U.S. Income Tax return." The evidence clearly demonstrates that the deletion of database information was not an act in furtherance of the conspiracy. Those deletions were motivated not by a desire to deceive the IRS but rather by the desire to sell the company. Indeed, the evidence shows that discussions regarding the database deletions began in June, 1997, three months before the notice of audit was received. Moreover, Reed testified that the data at issue, the attendee and vendor databases, was in fact made available to the revenue agent.
    Neither may Overt Act hh be considered. No reasonable juror could find, based upon the evidence presented by the government, that the signing of the adjustment letter by Schussel was a criminally culpable affirmative act of evasion on Schussel's part. At most, Schussel consented to the adjustment made by the IRS; his signing of the letter in no way constituted an affirmative representation that the additional taxes due set forth in the adjustment letter reflected the entirety of the additional taxes which the IRS could possibly have added to the adjustment. Either party was free to reopen the matter. *See* Defendant George Schussel's Motion to Strike Overt Acts dd and hh.

> proof suffices to establish a single, overarching conspiracy. Relevant factors may include such things as "(1) the existence of a common purpose . . . , (2) the interdependency of various elements in the plan, . . . . and (3) the degree of overlap among the participants."

*United States v. Perez-Ruiz*, 353 F.3d 1, 7 (1st Cir. 2003), *quoting United States v. Soto-Beníquez,* 356 F.3d 1, 19 (1st Cir.2003). Here, to the extent that the evidence demonstrates the existence of a conspiracy to defraud the United States of tax revenue by diverting funds to Bermuda and failing to declare the income in tax returns for calendar 1995 (which Schussel does not concede), any such conspiracy was separate from any later conspiracy to impede the IRS audit (the existence of which Schussel also does not concede). Both Gomes and Reed were involved in the diversion of funds to Bermuda, unlike any later audit conspiracy. Moreover, the two plans were not interdependent, nor did they have a common purpose.

7. As addressed in the preceding paragraph, any conspiracy to evade taxes ended no later than March 15, 1996. During 1996, Schussel made extensive efforts to bring his and DCI's tax filings into full compliance with the income reporting requirement. These efforts included ending the deposits of payments into the Bermuda account, ending the transfers of money from the Bermuda account to the Fidelity account, bringing in Coopers & Lybrand to do an independent outside audit of DCI's 1996 finances, ensuring that all payments to him were made through, and on the books of, DCI, and declaring all income on DCI's federal income tax return for 1996.

8. There was a significant temporal separation between the acts involved in the transfers of payments from DCI to Bermuda and from Bermuda to the Fidelity account, which ended before the filing of DCI's and Schussel's federal income tax returns for calendar 1995 on or about March 15, 1996, and the events related to the IRS audit, which did not begin until the fall of 1997, more than a year and a half later. Those events were separated not just temporally, but also by the

6

revolutionizing of DCI's accounting and bookkeeping practices, which was purposefully instituted to bring DCI and Schussel into full compliance with the requirements for the reporting of income to the IRS and which did in fact accomplish that goal. These changes brought the conspiratorial agreement (if there was one) which revolved around the diversion of payments to Bermuda to an end. If there was a conspiracy to defraud the IRS directed at concealing the acts of evasion from the IRS auditor in 1997-98 – which Schussel denies – it was, at most, a separate concealment conspiracy. Thus, no reasonable jury could find the existence of the single conspiracy charged in the indictment beyond a reasonable doubt.

**COUNTS TWO AND THREE**

9. **Statute of Limitations.** In *Sansone v. United States*, 380 U.S. 343, 354 (1965), the Court held that the §7201 offense was complete "as soon as the false and fraudulent understatement of taxes . . . was filed," for which proposition the Court cited *United States v. Beacon Brass Co.*, 344 U.S. 43 (1952). The Eleventh Circuit recognized the applicability of *Sansone* to the question of when a §7201 offense was complete in *United States v. Uscinski*, 369 F.3d 1243, 1247 & n.* (11th Cir. 2004). Based upon the language of *Sansone* quoted above, the Court ruled that its prior holding in *United States v. Winfield*, 960 F.2d 970 (11th Cir. 1992), that the statute of limitations began to run from the date of the last act of evasion, was required to be limited to cases in which no return had been filed. In cases in which a return *had* been filed, the Court concluded, *Sansone* mandated that the offense be regarded as complete upon the filing of the allegedly false return. Thus, under *Sansone*, the §7201 offense was complete when the allegedly false tax returns were filed, and the portions of Counts Two and Three which charge that Schussel on or about March 11, 1998, filed or caused to be filed a false and fraudulent income tax return are barred by the statute of limitations.

10.  *United States v. Ferris*, 807 F.2d 269, 271 (1st Cir. 1986), does not validate the timing of the filing of this indictment with respect to the filing of the 1995 return. The fundamental distinction between *Ferris* and this case – which the Eleventh Circuit recognized in *Uscinski* – is that in *Ferris*, no tax return was filed. The count at issue in *Ferris* charged that Ferris evaded taxes by failing to file tax returns, failing to pay the taxes due, and concealing his true and correct taxable income from officers of the United States. 807 F.2d at 270 n.3. Ferris argued that the indictment, which was returned in January, 1985, was time-barred, as the statute of limitations had begun to run on the date he failed to file his 1977 return, April 15, 1978. At the defendant's plea hearing, the government identified two false statements made by the defendant after that date, both of which were within the statute of limitations. There was, in actuality, no issue before the *Ferris* Court regarding whether subsequent false statements extended the statute of limitations because, under *Spies v. United States*, 317 U.S. 492, 499 (1943), simply failing to file a tax return does not constitute an *affirmative* act of evasion sufficient to make the offense a §7201 felony, as opposed to a §7203 misdemeanor. *See, e.g., Sansone*, 380 U.S. at 351. Therefore, the statute of limitations could not have begun to run when the return was due, as Ferris had not yet committed an affirmative – as opposed to a passive – act of evasion. Accordingly, the statute of limitations necessarily would not begin to run until he had committed at least one affirmative act of evasion. Since both the false statements identified by the government fell within the statute of limitations, the statute of limitations was in no way extended by the false statements. *Ferris* cannot, therefore, be read to have settled the issue of when the statute of limitations begins to run when, as here, a tax return has been filed. As the *Uscinski* Court concluded, *Beacon Brass* – and by extension, *Ferris* – are properly limited to cases in which no return was filed.

11.  Moreover, as addressed in note 1, *supra*, no reasonable juror could find, based upon the evidence presented by the government, that the signing of the adjustment letter by Schussel was a criminally culpable affirmative act of evasion on Schussel's part. *See* Defendant George Schussel's Motion to Strike Overt Acts dd and hh at 2-3. No reasonable juror could find beyond a reasonable doubt that Schussel believed that DCI owed additional taxes, given his tax representative's advice to him. DeFranceschi testified that he informed Schussel that there was no tax due and owing as to DCI based upon his analysis of the DCI-DCIL user group finances for calendar 1995.

**COUNT THREE**

12.  Even if the alleged false statements contained in the March 11, 1998, letter extended the statute of limitations as to the filing of the DCI tax return charged in Count Two, which Schussel strenuously disputes, *see* ¶¶9-10, *supra*, it cannot be found to have extended the statute of limitations with respect to the filing of Schussel's *personal* tax return charged in Count Three. This is so because the alleged false statements are charged to have been made "in order to mislead and impede an audit examination of [DCI's] United States Corporate Income Tax Return." Even if it did contain false statements, therefore, the March 11, 1998, letter did not constitute an affirmative act of evasion with respect to Schussel's 1995 *personal* income tax return. He must, therefore, be acquitted on Count Three.

                                                            Respectfully submitted,
                                                            By his attorneys,

| **/s/ Francis J. DiMento** | **/s/ Martin G. Weinberg** |
|---|---|
| Francis J. DiMento. | Martin G. Weinberg |
| DiMento & Sullivan | Mass. Bar. No. 519480 |
| 7 Faneuil Hall Marketplace | 20 Park Plaza, Suite 905 |
| Boston, Massachusetts 02109 | Boston, Massachusetts 02116 |
| (617) 523-2345 | (617) 227-3700 |

Date: January 23, 2007

## CERTIFICATE OF SERVICE

    I, Martin G. Weinberg, hereby certify that on this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) on January 23, 2007.

                                                                    **/s/ Martin G. Weinberg**