UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

_____
                                                )
UNITED STATES OF AMERICA  )
                                                )
                                                )
v.                                             )            CRIMINAL NO. 04-10060-RCL
                                                )
                                                )
GEORGE SCHUSSEL            )
_____)

**DEFENDANT GEORGE SCHUSSEL'S MOTION FOR JUDGMENT OF ACQUITTAL OR, IN THE ALTERNATIVE, A NEW TRIAL**

Now comes the defendant George Schussel and respectfully moves, pursuant to Fed. R. Crim. P. 29 and 33, that this Honorable Court enter a judgment of acquittal on all counts or, in the alternative, grant him a new trial**.**

As reason therefor, defendant relies on the grounds set forth in the Memorandum of Law incorporated herein.

**REQUEST FOR ORAL ARGUMENT**

Defendant requests oral argument on this motion.

**LOCAL RULE 7.1(A)(2) STATEMENT**

AUSA Carmen Ortiz has informed counsel for defendant Schussel that the government opposes the granting of this motion.

**MEMORANDUM OF LAW**

**I.      THE APPLICABLE STANDARDS.**

A defendant may "move for a judgment of acquittal, or renew such motion, within 7 days

after a guilty verdict . . . ." Fed. R. Crim. P 29(c)(1).[1] If the jury has returned a guilty verdict, the Court may set aside the verdict and enter an acquittal where, taking the evidence in the light most favorable to the government, the government failed to produce sufficient evidence to permit a reasonable jury to find all elements of the charged offenses beyond a reasonable doubt. *See, e.g., Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *United States v. Czubinski*, 106 F.3d 1069, 1073 (1st Cir. 1997).

Under Rule 33, "a new trial 'in the interests of justice,' may be granted liberally on a motion made 'within 7 days' after the verdict." *Conley v. United States*, 323 F.3d 7, 10 (1st Cir. 2003). A district court has "broad discretion" to grant a new trial in the interests of justice under Rule 33. *See, e.g., Trenkler v. United States*, 268 F.3d 16, 24 (1st Cir. 2001). In ruling on a motion for a new trial, the district court "has broad power to weigh the evidence and assess the credibility of . . . the witnesses who testified at trial . . . ." *United States v. Rothrock*, 806 F.2d 318, 321 (1st Cir. 1986), *quoting United States v. Wright*, 625 F.2d 1017, 1019 (1st Cir.1980). *See also United States v. Indelicato*, 611 F.2d 376, 387 (1st Cir. 1979)(district judge may weigh the evidence and evaluate the credibility of witnesses). A timely motion for a new trial may be granted when the "evidence preponderates heavily against the verdict." *United States v. Moran*, 393 F.3d 1, 9 (1st Cir. 2004).

## II.    RULE 29 RENEWED MOTION FOR JUDGMENT OF ACQUITTAL.

### A.    Counts Two and Three.

Without waiving any other sufficiency-of-the-evidence issues which he has raised with respect to Counts Two and Three, this renewed motion for judgment of acquittal is based primarily

---

[1] Defendant Schussel moved for a judgment of acquittal at the close of the government's case and at the close of all the evidence. *See* Defendant George Schussel's Motion for Judgment of Acquittal and Incorporated Memorandum of Law (Doc. 99). The Court reserved its ruling on the latter motion.

on the Eleventh Circuit's decision in *United States v. Uscinski*, 369 F.3d 1243, 1247 & n.* (11th Cir. 2004), in which it held that in cases in which a tax return had been filed, *Sansone v. United States*, 380 U.S. 343 (1965), mandated that the offense be regarded as complete upon the filing of the allegedly false return. Thus, for all the reasons addressed in Defendant George Schussel's Motion for Judgment of Acquittal and Incorporated Memorandum of Law (Doc. 99)("Rule 29 Motion") at 7-9, which discussion is incorporated by reference herein, under *Sansone* and *Uscinski*, the §7201 offenses charged in Counts Two and Three were complete when the allegedly false tax returns were filed on March 15, 1996. Thus, the portions of Counts Two and Three which charge that Schussel on or about March 11, 1998, filed or caused to be filed a false and fraudulent income tax return are barred by the statute of limitations, and the filing of the tax returns cannot permissibly serve as the basis for Schussel's convictions on Counts Two and Three.[2]

### B.     Count One.

Without waiving the other sufficiency-of-the-evidence issues which he has raised with respect to his conviction on Count One, the primary argument which Schussel wishes to renew is the government's failure to prove that the conspiracy charged continued into the limitations period, *i.e.*, beyond February 26, 1998.[3] To convict a defendant of conspiracy, the government must prove beyond a reasonable doubt that there were at least two culpable participants. *See* Governments's

---

[2] The Court charged the jury that it could not convict Schussel of Counts Two and Three unless it found that Schussel *both* filed false tax returns *and* made false statements. Instructions at 20. As Schussel has argued, Counts Two and Three are duplicitous, even as charged by the Court, in that they charge two offenses in a single count. *See United States v. Verrecchia*, 196 F.3d 294, 297 (1st Cir. 1999)("Duplicity is the joining in a single count of two or more distinct and separate offenses"). This is another factor which the Court can consider in determining whether a new trial is warranted in this case.

[3] In addition to the arguments addressed herein, Schussel incorporates by reference the arguments set forth in his Rule 29 Motion at 1-7.

Proposed Instruction No. 21 (Doc. 79)("For you to find the defendant guilty of conspiracy, you must be convinced that the government has proven . . . beyond a reasonable doubt . . . that the agreement specified in the indictment . . . existed between two or more people . . . ."). The government failed to prove that *anyone* conspired with Schussel after November 10, 1997, to "defraud the United States by impeding, impairing, obstructing and defeating the lawful government function of the Treasury Department and the Internal Revenue Service . . . in the ascertainment, computation, assessment and collection of . . . federal income taxes." Indictment, ¶12. If there was such a conspiracy, which Schussel does not concede, Diane Reed withdrew from it at the end of October, 1997, when she declared that she wanted no more to do with the audit. *See, e.g., United States v. Nason*, 9 F.3d 155, 161-62 (1st Cir. 1993)(coconspirator can withdraw from conspiracy by communicating to coconspirators that she has "abandoned the enterprise and its goals"), *cert. denied*, 510 U.S. 1207 (1994); *United States v. Piva*, 870 F.2d 753, 757 (1st Cir. 1989)(same); *United States v. Juodakis*, 834 F.2d 1099, 1102 (1st Cir.1987)(same).[4] Reed's communication that she wanted nothing further to do with the audit, which ended her meaningful contact with the auditor, and her replacement by DeFranceschi in November, 1997, was the termination of any role which Reed may have played in any conspiracy which may *arguendo* have existed until that point. Thereafter, her sole role was to provide what assistance DeFranceschi needed in his role as Schussel's and DCI's tax representative and the IRS revenue agent needed in communicating with DeFranceschi.

After November, 1997, DeFranceschi, as the attorney, and Schussel, as the client, were

---

[4] The government has argued that Reed cannot be found to have withdrawn from the conspiracy charged because she did not alert the authorities to the conspiracy. A coconspirator is not, however, required to confess to law enforcement authorities in order to withdraw from a conspiracy. Rather, confession to the authorities is an *alternative* manner in which a coconspirator may withdraw from the conspiracy. *See, e.g., Nason*, 9 F.3d at 161-62 ("Typically, there must be evidence *either* of a full confession to authorities *or* a communication by the accused to his co-conspirators [in this case Schussel] that he has abandoned the enterprise and its goals" (emphasis added)).

solely responsible for the conduct of the audit, with Schussel having given DeFranceschi(as well as attorney Glusman) a power of attorney to act as his tax representative. There was no evidence that any assistance which Reed supplied to DeFranceschi with respect to the audit was done with a criminally culpable state of mind. Quite the contrary: she believed that she was helping a reputable – and even prestigious – attorney and law professor to render lawful and professional legal services to Schussel and DCI.[5]

Although Gomes received a portion of the monies which were diverted to Bermuda and hence may arguably have been a member of a conspiracy which may have had as its object the under-reporting of DCI's taxable income on its 1995 tax return (a contention which Schussel does not concede), the record is devoid of any evidence of his state of mind after DCI halted the practice of sending money to Bermuda in January, 1996, and thereafter took aggressive steps to bring DCI's finances into full compliance with the company's federal income reporting obligations. Nor is there any evidence that he participated in any way in any of the audit-related activities. "[T]he gist of the [conspiracy] offense remains the agreement, and it is therefore essential to determine what kind of agreement or understanding existed *as to each defendant*." *United States v. Glenn*, 828 F.2d 855, 857 (1st Cir. 1987), *quoting United States v. Borelli*, 336 F.2d 376, 384 (2d Cir.1964)(emphasis added by Court), *cert. denied*, 379 U.S. 960 (1965). There was no evidence which would in any way warrant attributing to Gomes the conspiratorial objective of impeding the IRS audit, the *sine qua non* of extending the conspiracy into the limitations period.

---

[5] The indictment did not charge a conspiracy with the generalized object of concealing the under-reporting of income by DCI. Instead, it was clearly tied to impeding the IRS audit. For example, the conspiracy was alleged to have ended on May 8, 1998, a date which coincided with the end of the audit, and not some later open-ended date. *See also* Indictment ¶¶34-39, 40cc, ee-hh (alleging manner and means of the conspiracy and overt acts relating to the audit).

That leaves only DeFranceschi, and the government has never contended that DeFranceschi was a coconspirator, as opposed to a conduit of misinformation supplied by Schussel. It did not include his name on the list of alleged coconspirators which it provided to Schussel prior to trial, nor ever fully reverse its pretrial position that DeFranceschi was not a member of the conspiracy charged and that the conspiracy charged in Count One could not be predicated on their agreement. Accordingly, no reasonable juror could conclude beyond a reasonable doubt that the conspiracy charged in Count One extended into the limitations period, *i.e.*, that there existed an agreement between Schussel and another criminally culpable individual to conspire to impede the IRS audit as of February 26, 1998.

## III.    RULE 33 NEW TRIAL MOTION ISSUES.

### A.    A New Trial Is Required in the Interests of Justice Because of this Court's Failure to Instruct the Jury As Requested by the Defendant.

Prior to trial, and during trial, Schussel submitted to the Court requests that the jury be instructed on the law relating to his theories of defense. The proffered instructions – instructions relating to wilfulness, statute of limitations issues, multiple conspiracies, the attorney-client relationship and a client's reliance on counsel, and literal truth – were correct statements of the law and were not covered by any portion of the Court's charge, yet the Court refused to provide the guidance to the jury regarding the legal principles applicable to its determination of Schussel's guilt or innocence of the offenses charged which was essential to its ability to properly evaluate Schussel's defenses. The Court's declination to instruct the jury as requested by the defense effectively denuded Schussel of his defenses because the jury was not informed that defense counsel's arguments were in fact predicated on valid legal principles based upon which it could find Schussel not guilty of the offenses charged. The Court's failure to instruct the jury as requested by

the defense denied Schussel a fair trial, and the interests of justice manifestly demand a new trial.

A trial court's failure to give a theory of defense instruction is reversible error if "(1) the requested instruction correctly describes the applicable law; (2) sufficient evidence is produced at trial to warrant the instruction; (3) the charge actually delivered does not fairly present the defense; and (4) the requested instruction was essential to the effective presentation of the particular defense." *United States v. Montanez*, 105 F.3d 36, 39 (1st Cir. 1997). *See, e.g., United States v. Gamache*, 156 F.3d 1, 9 (1st Cir. 1998)("A criminal defendant is entitled to an instruction on his theory of defense so long as the theory is a valid one and there is evidence in the record to support it"). In determining whether the evidence at trial warrants the instruction,

> the district court is not allowed to weigh the evidence, make credibility determinations, or resolve conflicts in the proof. Rather, the court's function is to examine the evidence on the record and to draw those inferences as can reasonably be drawn therefrom, determining whether the proof, *taken in the light most favorable to the defense* can *plausibly* support the theory of the defense.

*Gamache*, 156 F.3d at 9 (first emphasis added; second emphasis in original). *See, e.g., United States v. Nishnianidze*, 342 F.3d 6, 17 (1st Cir. 2003), *cert. denied*, 540 U.S. 1132 (2004); *Montanez*, 105 F.3d at 39. The First Circuit has indicated that this is not "a high standard to meet," because to be "plausible" means in this context to be "superficially reasonable." *Gamache*, 156 F.3d at 9. *See also United States v. Martinelli*, 454 F.3d 1300, 1316 (11th Cir. 2006)("the threshold burden a defendant must satisfy to have an instruction on his theory of defense is extremely low: The defendant is entitled to have presented instructions relating to a theory of defense for which there is *any foundation* in the evidence" (emphasis in original; internal quotation marks omitted)). Although the district court is not required to use the verbatim language of the defendant's proposed instructions, *see, e.g., United States v. Rosario-Peralta*, 199 F.3d 552, 567 (1st Cir. 1999), *cert. denied*, 531 U.S.

902 (2000); *United States v. McGill*, 953 F.3d 10, 12 (1st Cir. 1992), the instructions as a whole must "adequately inform[] the jury of the viability of the defense." *Montanez*, 105 F.3d at 39.

The Court has the obligation to provide the jury with the instructions regarding the law applicable to the issues before it. The necessary guidance must come from the Court – it cannot be supplied by the evidence or by witness testimony or by arguments of counsel. Indeed, the Court instructed the jury that arguments of counsel were not evidence, Instructions at 3, and that if the attorney's arguments as to the law differed from the Court's instructions, the jury was to be "guided only by [the] instructions." Instructions at 2. Absent instructions, the jury has no authoritative guidance as to whether defenses advanced by the defendant, if proven, have a principled legal basis. In this case, the defense was multi-faceted and required the jury to understand the operation of the statute of limitations, the role of the advice of counsel, and literal truth, among other matters, which were, as to both the advice of counsel and literal truth issues, wholly extrinsic to the instructions given and which could only be fairly addressed by the jury with judicial guidance which was absent in this case. The failure to provide the jury with the instructions addressed herein was extraordinarily prejudicial to Schussel. Counsel argued each of these defenses in summation, but the jury was not thereafter provided with the instructions necessary for it to assess the viability of the defenses advanced. The combined result of the failure to give the requested instructions was the denial of a fair trial and the right to present a defense, in violation of Schussel's rights under the Fifth and Sixth Amendments.

>    1.   **Failure to give Schussel's requested wilfulness instruction and the concomitant incompleteness of the Court's instructions to the jury regarding the wilfulness element of §7201.**

Schussel requested that the jury be instructed as follows:

> Defendant Schussel acted wilfully if the law imposed a duty on him, he knew of that duty, and he voluntarily and intentionally violated that duty. Thus, if defendant Schussel acted in good faith, he cannot be guilty of filing a false and fraudulent tax return, as charged in Counts Two and Three. This is a subjective standard; the question is what defendant Schussel actually believed, not what a reasonable person would have believed. Negligence, even gross negligence, is not enough to meet the wilfulness requirement. As with all other elements of the offense, the government bears the burden to prove beyond a reasonable doubt that defendant Schussel acted wilfully.
>
> Thus, you cannot convict defendant Schussel of the offenses charged in Counts Two or Three unless the government proves beyond a reasonable doubt that he knew that he had the duty to instruct his attorney Edward DeFranceschi to make changes in the letter to the IRS prepared by DeFranceschi dated March 11, 1998.

Proposed Instruction Nos. 3, 3(A).

> You may not convict defendant Schussel of the offenses charged in Counts Two or Three based upon the signing of the May 6, 1998, adjustment letter unless you find beyond a reasonable doubt that he knew that he had a duty to reject his attorney's advice that he sign the May 6, 1998, adjustment letter.

Proposed Instruction No. 3(D). Instead, the Court instructed the jury:

> To act "wilfully" means to act knowingly and voluntarily with the specific intent to disobey or disregard the law. The term excludes acts done out of ignorance, accident or mistake.

Instructions at 20. These instructions would be unexceptionable in the ordinary case in which wilfulness is an element, but the Supreme Court has decreed that in tax fraud cases under §7201, the government bears an enhanced burden to prove wilfulness. Under *Cheek v. United States*, 498 U.S. 192 (1991), the government must prove beyond a reasonable doubt that Schussel acted wilfully, which in the context of a tax prosecution under 26 U.S.C. §7201 requires that the government prove that the law imposed a duty on Schussel, that he knew of that duty, and that he voluntarily and intentionally violated that duty. *See United States v. Lavoie*, 433 F.3d 95, 98 (1st Cir. 1995)("Wilfulness requires the 'intentional violation of a known legal duty," *quoting United States*

*v. Pomponio*, 429 U.S. 10, 12 (1976)); *United States v. Olbres*, 61 F.3d 967, 970 (1st Cir.)(same), *cert. denied*, 516 U.S. 991 (1995); *see also* First Circuit Pattern Jury Instructions (2002 Revisions) §4.37 ("[Defendant] acted 'wilfully' if the law imposed a duty on [him], [he] knew of that duty, and [he] voluntarily and intentionally violated that duty"). The instruction requested by Schussel is, therefore, a correct statement of the law of wilfulness in the context of §7201 prosecutions, and the Court's instruction is not.

Thus, for Schussel's signing of the May 6, 1998, adjustment to be a wilful act of tax evasion, *Cheek* required that the government prove beyond a reasonable doubt that Schussel knew that he had a duty not to sign the adjustment letter and that he voluntarily and intentionally violated that duty. With respect to the March 11, 1998, letter, to the IRS, the jury could not convict Schussel based on that act unless the government proved beyond a reasonable doubt that Schussel knew that he had the duty to instruct his attorney Edward DeFranceschi to make changes in the letter prepared by DeFranceschi. Because the government failed to prove Schussel's knowledge of any duty with specific respect to the March 11, 1998, letter or the May 6, 1998, adjustment which he voluntarily and intentionally violated, and because the issue of whether Schussel had a duty to do more than rely on his counsel's decisions was at the core of his defense, the Court's erroneous wilfulness instructions were highly prejudicial error. A new trial is warranted in the interests of justice based on this error alone.

       **2.    Failure to Instruct on multiple conspiracies and the statute of limitations.**

Schussel requested that the jury be instructed:

Acts undertaken to conceal the commission of a crime do not extend the duration of a conspiracy to commit the crime unless there was an express original agreement among the conspirators to continue to act in concert in order to cover up their crime. Thus, in order to

> find that a later act undertaken or designed to conceal the crime was an overt act in furtherance of the conspiracy to commit the crime, you must find beyond a reasonable doubt that the original conspiratorial agreement expressly contemplated that the coconspirators would continue to act together after the commission of the crime to conceal its commission. If you cannot find beyond a reasonable doubt that concealment of the crime was expressly part of the original conspiratorial agreement, then such acts of concealment cannot constitute overt acts in furtherance of the conspiracy. Unless you find beyond a reasonable doubt that future concerted action to conceal the filing of false tax returns for 1995 was an express part of the original conspiratorial agreement to file false tax returns, if you find that such an agreement existed, no such acts of concealment may be considered by you to be overt acts in furtherance of the conspiracy. Even if you find that defendant Schussel later agreed with others to conceal the filing of false income tax returns for 1995, such later agreement does not suffice to extend the life of the original conspiracy to file false tax returns for 1995, if you find that such a conspiracy existed at all.

This requested instruction was a correct statement of the applicable law. Efforts to conceal a crime extend the life of a conspiracy *only* if the government proves beyond a reasonable doubt that there was "an express original agreement among the coconspirators to continue to act in concert in order to cover up" the crime which was the object of the conspiracy. *Grunewald v. United States*, 353 U.S. 391, 404 (1957). As the First Circuit has explained:

> *Grunewald* . . . laid down special requirements of proof resting upon a distinct policy concern, namely, that "every conspiracy is by its nature secret"; that "every conspiracy will inevitably be followed by actions taken to cover the conspirators' traces"; and that if these facts were enough for a conspiracy to conceal, then the statute of limitations and other safeguards would be virtually "wipe[d] out." 353 U.S. at 402 . . . . *For this reason, it held that even egregious and organized acts of concealment were not sufficient, unless agreed to as part of the original conspiratorial plan.*

*United States v. Twitty*, 72 F.3d 228, 233 (1st Cir. 1995)(emphasis added). Thus, "a vital distinction must be made between acts of concealment done in furtherance of the main criminal objectives of the conspiracy, and acts of concealment done after these central objectives have been obtained, for the purpose only of covering up after the crime." *Grunewald*, 353 U.S. at 405. The government was required to adduce "*direct* evidence that the particular acts of concealment relied on to extend the

11

statute of limitations were fully embraced within the original aims of the conspiracy." *United States v. Gabriel*, 920 F.Supp. 498, 506-07 (S.D.N.Y. 1996)(emphasis in original), *aff'd* 125 F.3d 89 (2d Cir. 1997). *See Grunewald*, 353 U.S. at 404. "[T]he crucial question . . . is the scope of the conspiratorial agreement." *Id.* at 397.

Based upon the evidence before it, the jury could have found that there was a conspiracy to defraud the IRS with respect to any taxes due and owing for calendar year 1995, but that that conspiracy ended no later than March 15, 1996, the date on which DCI's and Schussel's federal tax returns for calendar 1995 were filed. If the jury found that any acts of concealment were undertaken in conjunction with the 1997-98 IRS audit after February 26, 1998, it could also have found, based upon the evidence, that those acts were not part of the original conspiratorial agreement but were instead, at most, acts in furtherance of a separate conspiracy to impede the IRS audit (assuming *arguendo* that it could find that Schussel had a coconspirator, *see* Section II(B), *supra*). Had it so found, and had it been properly instructed, it could then have found Schussel not guilty on Count One on statute of limitations grounds.

The Court's instructions did not adequately convey to the law the legal principles governing separate conspiracies and the statute of limitations. The Court told the jury only that it was required to find that the conspiracy charged in Count One existed, Instructions at 15, 16, and that a coconspirator committed an over act on or after February 26, 1998. Instructions at 15, 17. These instructions did not provide the guidance which was essential to the jury's ability to give fair consideration to Schussel's statute of limitations defense to Count One. The requested instruction was, accordingly, "essential to the effective presentation of th[is] particular defense." *Montanez*, 105 F.3d at 39. *See United States v. Oreto*, 37 F.3d 739, 748 (1st Cir. 1994)(noting that "a jury's choice

12

may be influenced by the alternatives presented"), *cert. denied*, 513 U.S. 1177 (1995).

### 3. Failure to give a literal truth instruction.

Schussel requested that the jury be instructed:

> Counts Two and Three charge defendant Schussel with wilfully attempting to evade and defeat a part of the income tax due and owing by DCI and by himself personally by making false statements to an IRS revenue officer or by causing false statements to be made to an IRS revenue officer. In determining whether defendant Schussel is guilty of the offenses charged in Counts Two and Three, you may not consider as false statements any statements which were made in response to questions asked by Revenue Agent Kelly McGovern Jordan and which were literally true, even if those statements are determined by you to have been incomplete or even misleading.

Proposed Instruction No.10.

The March 11, 1998, letter – written, signed, and sent by DeFranceschi – was of pivotal importance to the jury's consideration of Schussel's guilt of Counts Two and Three. Indeed, the Court instructed the jury that it could not convict Schussel of the offenses charged in Counts Two and Three unless it found beyond a reasonable doubt that Schussel "wilfully attempted to evade and defeat part of the income tax due and owing by [DCI] . . . by making or causing to be made, on or about March 11, 1998, false statements to an agent of the [IRS] . . . ." Instructions at 17-18. Schussel took the position at trial that, even if the letter was arguably misleading, it could not be the basis for conviction of Schussel on Counts Two and Three because it was literally true. For example, the first question to which DeFranceschi was responding in his March 11, 1998, letter was framed by R/A McGovern in the present tense: "Is Dr. Schussel a shareholder, employee, or officer in DCIL?" DeFranceschi elected to answer the question as it was written, in the present tense: "Dr. Schussel is not an employee or officer of . . . . DCIL." This response was literally true in March, 1998, as DCIL had ceased to exist by that time. Similarly, the statement in the letter that Schussel received one share out of the 12,000 shares issued by DCIL was literally true, but incomplete. The absence

13

of an instruction on how a jury was to assess a literally true statement that was at the same time arguably misleading or incomplete, or how a jury was to assess the client's failure to direct his experienced attorney to supplement the literally true answers, left the defense unable to argue that Schussel did not cause the making of a false statement or otherwise cause an impeding of the audit.

The requested instruction was a correct statement of the law. In *Bronston v. United States*, 409 U.S. 352 (1973), the Supreme Court held that a defendant could not be convicted of perjury based upon statements which were literally true, even if they were misleading or incomplete. Courts have applied *Bronston* in other false statements contexts as well.[6] Because Counts Two and Three were predicated upon alleged false statements in the March 11, 1998, letter, *Bronston* is equally applicable in the context of this prosecution. The requested instruction was also essential to the jury's fair consideration of Schussel's defenses. Absent such an instruction, the jury was without the means to determine whether literal truth was a valid defense – as it was – or instead a clever lawyer's trick to circumvent what it could have found to be the misleading nature of the communication.

### 4. Failure to instruct that the jury could not convict Schussel on the theory that DeFranceschi was a coconspirator.

Schussel's entire defense was posited on the theory that DeFranceschi was not a

---

[6] *See United States v. Poutre*, 646 F.2d 685, 687-88 (1st Cir. 1980)(§1001 prosecution); *United States v. Attick*, 649 F.2d 61, 63 (1st Cir.)(§1014 bank fraud prosecution), *cert. denied*, 454 U.S. 861 (1981); *United States v. Good*, 326 F.3d 589, 591 (4th Cir. 2003)(§1001 prosecution); *United States v. Moses*, 94 F.3d 182, 188 (5th Cir. 1996)(§1001 prosecution); *United States v. Mandanici*, 729 F.2d 914, 921 (2d Cir. 1984)(§1001 prosecution); *United States v. Rendon-Marquez*, 79 F.Supp.2d 1361, 1363 (N.D. Ga. 1999)(§1001 prosecution), *aff'd* 228 F.3d 416 (11th Cir. 2000)(table). *See also United States v. Serafini*, 167 F.3d 812, 822 n.16 (3d Cir. 1999)(Bronston applies to all perjury and false material declaration prosecutions).

coconspirator, consistent with the government's failure to list DeFranceschi as a coconspirator in pretrial discovery, a position from which the government never deviated until its rebuttal argument. Schussel proceeded on this theory throughout the presentation of the evidence and, equally if not more critically, in his final argument to the jury. In its rebuttal argument, however, the government for the first time suggested that DeFranceschi might share some criminal culpability when it told the jury that it was not contending that DeFranceschi was innocent.[7] Counsel for Schussel then quite properly orally requested that the Court instruct the jury that it could not convict Schussel on the theory that DeFranceschi was a coconspirator and objected to the Court's failure to so instruct. Such an instruction was crucial to Schussel's defense. The jury had before it extensive evidence about consultations between Schussel and DeFranceschi regarding the audit strategy and about Schussel's suggestions to DeFranceschi, as well about acts undertaken by DeFranceschi to further Schussel's interests, such as the all-important March 11, 1998, letter, which was drafted by DeFranceschi and which the jury may have found to be deceptive in some respects. The absence of the requested instruction left it open for the jury to conclude that Schussel and DeFranceschi were coconspirators and to convict Schussel on a theory of guilt of which he had no notice – a theory which he had in fact been assured would *not* be a basis for conviction – in complete derogation of his right to a fair trial and to the effective presentation of a defense. Moreover, as the Court denied Schussel's requests for instructions relating to the attorney-client relationship, *see* Section III(A)(5), *infra*, the jury lacked the guidance necessary to place DeFranceschi's actions in the appropriate perspective, *i.e.*, as the acts of an attorney undertaken in the lawful representation of his client. This instruction

---

[7] Counsel does not yet have a transcript of the argument, but this is what his notes indicate that the government argued.

too was "essential to the effective presentation of th[is] particular defense." *Montanez*, 105 F.3d at 39.

### 5.     Failure to instruct the jury regarding the attorney-client relationship.

Schussel requested that the jury be instructed:

> Taxpayers have the right to hire professionals to perform legal services for them in connection with tax matters and to rely on them to act competently, ethically, and lawfully in the discharge of their professional responsibilities.

Proposed Instruction No. 11. Schussel further requested that the jury be instructed:

> A defendant does not act wilfully if he retains counsel to represent him in conjunction with an IRS audit, gives him a power of attorney to act as his tax representative in conjunction with that audit, discloses to the attorney the relevant facts and circumstances, and then relies on his attorney to represent him during the audit in a professionally competent, ethical, and lawful manner. A defendant who has done so does not become criminally liable for wrongful acts of his attorney during the course of his representation of him in conjunction with an IRS audit, for example, for any false statements made by the attorney in response to inquiries made by the IRS revenue agent conducting the audit, such as the March 11, 1998, letter authored by DeFranceschi, if you find that any statements in the letter written by DeFranceschi were false.

Proposed Instruction No. 12. *See* also Supplemental Requests for Instructions Nos. 1 and 2.

The failure to instruct the jury regarding the attorney-client relationship effectively eviscerated Schussel's defense. The March 11, 1998, letter, which was authored by DeFranceschi, was pivotal to all three counts. It was a charged and essential basis for conviction in Counts Two and Three, and it was one of two charged overt acts within the statute of limitations in Count One. The only other alleged overt act within the statute of limitations was Schussel's signing of the May 6, 1998, adjustment letter based upon his attorney's advice. Thus, it was crucial for the jury to have an understanding of the attorney-client relationship and the duties and responsibilities of counsel and client.  While counsel could, to be sure, argue to the jury that Schussel had the right to make proposals or suggestions to his attorney and to rely on his attorney to conduct the audit in a

professionally responsible, ethical, and lawful manner, and could do so without incurring criminal liability, the jury was left utterly without guidance in this critical area, an area which lay at the heart of Schussel's defenses. Absent instructions regarding the proper parameters of the attorney-client relationship and the role of the attorney and the client in matters such as the IRS audit, the jury could not make a rational decision regarding whether this relatively technical and, to the jury, perhaps counterintuitive, defense sufficed to absolve Schussel of criminal liability for the offenses charged. *See Rosario-Peralta*, 199 F.3d at 568 (finding no error in failure to give theory of defense instruction where the district court's instructions "opened the door for the jury to give life to defendant's theme").

The requested instructions were correct statements of the law. *See* Mass. R. Prof. C. 1.6 & Comment [3].Rule 1.6; ABA Model Rules of Professional Conduct 1.6 & Comment [2]. *See also* Affidavit of Arnold R. Rosenfeld. Even if the Court was not required to instruct the jury in the precise language requested by Schussel or to give all four proposed instructions relating to the attorney-client relationship, it *was* required to instruct the jury on this theory of defense, which was not otherwise so much as touched on by the instructions which the Court did give. Failure to do so denied Schussel his right to a fair trial. A new trial should be ordered at which the jury will have the guidance it needed to fairly evaluate Schussel's defenses.

### 6. Failure to give a withdrawal/statute of limitations instruction.

Schussel requested that the jury be instructed:
In order to withdraw from a conspiracy, a conspirator must act affirmatively either to defeat or disavow the purposes of the conspiracy. One way in which a coconspirator may withdraw from a conspiracy is to communicate to his coconspirators that he has abandoned the conspiracy and its goals. If you find that the conspiracy charged in Count One existed and that defendant Schussel was a member of that conspiracy, defendant Schussel contends that by bringing in Coopers & Lybrand to do an audit of DCI's 1996 finances and by taking all necessary steps to bring DCI's tax returns for 1996 and thereafter into full compliance with

the requirements of the federal tax laws governing the reporting of income and the payment of taxes due and owing, he withdrew from the conspiracy, abandoned the conspiracy and its goals, and communicated his doing so to his coconspirators. It is defendant Schussel's contention that he withdrew from the conspiracy no later than December 31, 1996. If you find that defendant Schussel withdrew from the conspiracy, then the 6-year statute of limitations with respect to the conspiracy offense charged in Count One began to run as of the date on which you find that defendant Schussel withdrew from the conspiracy. If you find that defendant Schussel withdrew from the conspiracy more than six years prior to the date on which the indictment was returned, *i.e.*, before February 26, 1998, then you must acquit defendant Schussel of the offense charged in Count One.

      The government bears the burden to prove beyond a reasonable doubt that defendant Schussel did not withdraw from the conspiracy and that his membership in the conspiracy continued into the limitations period, *i.e.*, beyond February 26, 1998.

Proposed Instruction No. 9.

    The Court erred in not giving the requested instruction. Drawing all reasonable inferences in favor of the government, and taking the evidence in the light most favorable to the defense, there was evidence which could "plausibly support" this theory of defense. *See Gamache*, 156 F.3d at 9.[8] Moreover, the instruction was a correct statement of the law. In order to withdraw from a conspiracy, a coconspirator must act affirmatively either to defeat or disavow the conspiracy. One way in which he may do so is to communicate to his coconspirators that he had abandoned the conspiracy and its goals. *See, e.g., Nason*, 9 F.3d at 161-62; *Piva*, 870 F.2d at 757; *Juodakis*, 834 F.2d at 1102. instruction was crucial to the defense because, if the jury found that Schussel withdrew from the conspiracy, the statute of limitations began to run on the date on which it found that he withdrew. *See Juodakis*, 834 F.2d at 1103-05; *see also United States v. Rogers*, 102 F.3d 641, 644

---

[8] Similarly, defendant is entitled to a multiple conspiracy instruction – to which the requested instruction bears a relationship – "[i]f, on the evidence adduced at trial, a reasonable jury could find more than one . . . illicit agreement, or could find an agreement different from the one charged." *United States v. Pacheco*, 434 F.3d 106, 117 (1st Cir.), *cert. denied*, 126 S.Ct. 2312 (2006), *quoting United States v. Boylan*, 898 F.2d 230, 243 (1st Cir.), *cert. denied*, 498 U.S. 849 (1990).

(1st Cir. 1996)(withdrawal from conspiracy normally starts the running of the statute of limitations), *cert. denied*, 522 U.S. 879 (1997); *United States v. Sax*, 39 F.3d 1380, 1386 (7th Cir. 1994)(same). Here, that date would have been outside the limitations period, and, accordingly, had the jury been instructed as to this theory of defense, it would have been required to acquit Schussel if it found that he withdrew from the conspiracy before February 26, 1998.

      **B.**      **Even should the Court determine that judgments of acquittal should not be entered on all counts, it should nonetheless grant a new trial because the evidence preponderates heavily against the verdict.**

For all the reasons addressed in Section II, *supra*, and all the reasons set forth in Defendant George Schussel's Motion for Judgment of Acquittal and Incorporated Memorandum of Law (Doc. 99), even if this Court determines that the evidence sufficed to sustain the jury's verdicts on Counts One, Two, and Three, the Court should nonetheless grant Schussel a new trial on all counts because the evidence preponderates heavily against the verdicts. As addressed at page 2, *supra*, in considering whether to grant a new trial under Rule 33, unlike the more stringent standard applicable under Rule 29, the Court "has broad power to weigh the evidence and assess the credibility of . . . the witnesses who testified at trial . . . ." *United States v. Rothrock*, 806 F.2d 318, 321 (1st Cir. 1986).

## CONCLUSION

For all the foregoing reasons, the Court should order the entry of judgments of acquittal on all counts. In the alternative, the Court should grant Schussel a new trial in the interests of justice and because the evidence preponderates heavily against the verdict.

                Respectfully submitted,
                By his attorneys,

| **/s/ Francis J. DiMento** | **/s/ Martin G. Weinberg** |
|---|---|
| Francis J. DiMento. | Martin G. Weinberg |
| DiMento & Sullivan | Mass. Bar. No. 519480 |
| 7 Faneuil Hall Marketplace | 20 Park Plaza, Suite 905 |
| Boston, Massachusetts 02109 | Boston, Massachusetts 02116 |
| (617) 523-2345 | (617) 227-3700 |

## CERTIFICATE OF SERVICE

 I, Martin G. Weinberg, hereby certify that on this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) on February 1, 2007.

                **/s/ Martin G. Weinberg**