UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) ) ) ) | |
| v. | ) ) ) | CRIMINAL NO. 04-10060-RCL |
| GEORGE SCHUSSEL | ) ) ) | |

**DEFENDANT GEORGE SCHUSSEL'S SUPPLEMENTAL MEMORANDUM IN SUPPORT OF HIS MOTION FOR JUDGMENT OF ACQUITTAL OR, IN THE ALTERNATIVE, A NEW TRIAL**

On February 1, 2007, defendant Schussel filed his Motion for Judgment of Acquittal Or, in the Alternative, a New Trial (Doc. #108) ("Motion"), in which he argued that the failure of the Court's instructions to provide the jury with the guidance essential to its full and fair consideration of the issues before it warranted the granting of a new trial in the interests of justice. Specifically, Schussel argued that the failure to instruct the jury as Schussel had requested effectively denuded him of a defense and left the jury unable to properly assess the arguments of his counsel in his defense. Since the filing of that motion, which was required to be filed within seven days of the verdict, Schussel has obtained a transcript of his counsel's closing argument. He now files this supplemental memorandum in support of his Motion for Judgment of Acquittal Or, in the Alternative, a New Trial to highlight for the Court portions of counsel's closing argument – arguments which lay at the heart of his defense – which the jury, because of the Court's failure to instruct, lacked both the necessary foundation to evaluate and the essential understanding that the theories which counsel was advancing could, if the jury found them supported by the evidence, provide a valid defense to the offenses charged. Although counsel knew, prior to argument, what

form the Court's instructions would take, he was left with no option but to argue to the jury the theories of defense which had been painstakingly constructed throughout the defense cross-examination of the government's witnesses in the rightful expectation that they would be supported by the Court's instructions to the jury. The Court's failure to instruct as requested by Schussel left him effectively denuded of a defense in violation of Schussel's rights under the Fifth and Sixth Amendments.

## I. FAILURE TO PROPERLY INSTRUCT ON THE WILFULNESS ELEMENT OF THE OFFENSES CHARGED.

With respect to the critical March 11, 1998, letter, counsel argued:

> The government wants to blame the client for the lawyer's answer that the client had every right, reading that answer, to think, That's what lawyers do; that's what my professor of taxation is answering. The client has told the lawyer everything. The lawyer has selected a little piece of what he knows to tell the IRS. *It's not on the client to instruct the lawyer*, Don't be such a good lawyer, tell the IRS more, disclose more. *That's not a burden we place on clients who are being threatened with IRS revenue agents.*

Ex. A at 15 (emphasis added).

With respect to Schussel's signing of the May 6, 1998, adjustment letter, counsel argued:

> Mr. Schussel is not saying that the IRS revenue agent got it right. He is simply consenting to the adjustments as determined by the IRS revenue agent after an audit that he had very little to do with because he had a lawyer who made all of the statements.
> It is not a criminal act to accept adjustments that are made by the IRS. *Citizens don't have some overriding obligation to tell the IRS everything.* Citizens do have a right to arm their lawyer with the facts so the lawyer make the judgments what to tell the IRS and what not to tell the IRS, and that is all the Mr. Schussel did.

Exhibit A at 26 (emphasis added). As addressed more fully in Schussel's Motion at 8-10, in the absence of the requested instruction – that in order to find that Schussel acted "wilfully," the jury was required to find that the law imposed a duty on him, that he knew of that duty, and that he voluntarily and intentionally violated that duty – the jury would not have known that what counsel

2

was arguing was a correct statement of the law which could provide a valid basis for Schussel's acquittal. The failure to instruct on the element of "wilfulness" as requested by Schussel and the error in the "wilfulness" instruction actually given by the Court were highly prejudicial error, warranting a new trial in the interests of justice.

## II.     FAILURE TO INSTRUCT ON LITERAL TRUTH.

Counsel argued:

> Let me focus first on question 1. If I can, let me show you -- to understand the answer, we need to first get the question. And the question here -- and this is in what they call an "Information Document Request" written by the IRS revenue agent, and it's written in 1998. And it asks, "Is Dr. Schussel a shareholder, employee, or officer in DCIL? Please provide a description of Dr. Schussel's relationship with DCIL." Please provide a description of the relationship.
>     The answer is -- and this is an answer written by Mr. DeFranceschi, endorsed by him -- let me first take the second part of the answer. About the relationship, he wrote, "In 1988, at the formation of DCIL, he" -- meaning Schussel -- "received one share of one dollar par value stock out of 12,000."
>     It's literally true. You have the certificates, the stock certificates of Mr. Schussel. Although he controlled the company, got only one share. . . . .

Ex. A at 13-14. Counsel further argued:

> Second part. "Dr. Schussel is not an employee or officer of DCIL." Well, we know that in 1998, when this letter is being written, George Schussel was not. It was literally true. He was not an officer of DCIL. DCIL didn't exist in 1998. You have exhibits to show that the government in Bermuda took DCIL off its list in 1997.
>     So when the IRS revenue agent asks a question in the present tense in 1998, Is Dr. Schussel an officer? rather than, Was he an officer? or, Was he an officer in 1995? – every other question -- and you have this, this is an exhibit -- every other question asked by the IRS revenue agent was framed in terms of 1995. Question one was framed in the present tense, "Is George Schussel an officer, is he a shareholder, is he an employee?" And the truthful and
> literally truthful answer to that question in 1998 was "no."

Ex. A at 16.

[Schussel] shouldn't lose his liberty because the revenue agent didn't ask crystal clear questions, because the revenue agent didn't ask follow-up questions . . . .

Ex. A at 26. For all the reasons addressed in Schussel's Motion at 13-14, the "literal truth" instruction requested by Schussel was a correct statement of the law and was essential to the jury's understanding that "literal truth" was a valid defense and not simply a clever tax lawyer's trick to circumvent what it could have found to be the misleading nature of the communication, followed by the criminal defense lawyer's reliance on such a "trick" defense to aid his criminally charged client.

### III.  FAILURE TO INSTRUCT THAT THE JURY COULD NOT CONVICT SCHUSSEL ON THE THEORY THAT DEFRANCESCHI WAS A COCONSPIRATOR.

Counsel argued:

> The government tells you that Mr. DeFranceschi, who wrote the letter, decided what to tell the IRS and what not to tell the IRS, is blameless, that he has done nothing wrong.

Ex. A at 4.

> . . . . Now, this is the lawyer that the government says did no wrong.

Ex. A at 14.

> The government doesn't challenge any of those cornerstones. They hold Mr. DeFranceschi blameless. They support him. They endorse his representation.

Ex. A at 15-16. These portions of counsel's closing argument illustrate Schussel's contention, addressed in his Motion at 14-16, that Schussel's entire defense theory was predicated upon the theory that DeFranceschi was not criminally culpable – a position from which the government did not deviate until its rebuttal argument[1] – and that the failure to inform the jury, after the government informed the jury in its rebuttal argument that its position was *not* that DeFranceschi was innocent

---

[1] DeFranceschi was not listed in the mandatory local rule discovery disclosure as a coconspirator, nor was the list of coconspirators ever amended to include him, an option which was open to the government if its view of DeFranceschi changed over time.

in the matter, that it could not convict Schussel on the theory that he and DeFranceschi were coconspirators denied him his right to present a defense and to a fair trial.

## IV.  FAILURE TO INSTRUCT REGARDING THE ATTORNEY-CLIENT RELATIONSHIP.

This was the matter that was at the heart of the defense: Schussel's defense was predicated on his reliance on DeFranceschi to conduct the audit in a professional, ethical, and responsible manner, and to advise him accordingly. This defense was fully applicable to both the March 11, 1998, letter, authored by DeFranceschi, and to Schussel's May 6, 1998, signing of the adjustment letter on the advice of DeFranceschi. As counsel concluded his argument to the jury:

> . . . . And I contend to you that the defense is simple: [Schussel] hired the best lawyer he knew. He relied on that lawyer. He disclosed the truth to that lawyer. And, respectfully, he should be found not guilty.

Ex. A at 27. This theory of defense was the centerpiece of counsel's entire argument to the jury, a theme sounded again and again throughout the argument:

> The government instead wants you to criminalize Mr. Schussel for relying on Mr. DeFranceschi.  The government says to you that he lied to his lawyer, that he was less than truthful with his lawyer, that he gave his lawyer false documents.  As to those allegations, the defense is simple and straightforward:  It's not true.  Mr. Schussel armed his lawyer with the facts necessary to competently and ethically and effectively represent him in regards to an IRS revenue audit. It's what citizens do when the government knocks on your door. They hire a lawyer.  They hire a lawyer that they believe is experienced, who they believe is competent.

Ex. A at 4.

> . . . . And Mr. Schussel was fully entitled to rely on the counsel of Mr. DeFranceschi and to rely on representations made by Mr. DeFranceschi to the IRS.
>  Mr. Schussel put Mr. DeFranceschi in charge of the audit.  The government wants you to believe there's something wrong or sinister or criminal about that.  In some respects they're trying to criminalize the hiring of a tax lawyer to represent a citizen who has serious tax problems in a tax audit.
>   He put him in charge of the tax audit. Mr. Schussel never again spoke to or wrote letters to the revenue agent.  All of the letters, all of the statements, all of the representations

made to the IRS both before the six-year statute of limits and then after February 26, 1998, including March 11, were made by Mr. DeFranceschi.

But what's even more important than hiring an experienced lawyer and trusting an experienced lawyer and putting the experienced lawyer in charge of the decision making and in charge of the statements is that Mr. Schussel fully armed Mr. DeFranceschi with all of the information about Mr. Schussel's past conduct, or, if you will, past misconduct in terms of the . . . Bank of Bermuda and the monies going from the user groups and coming back to Fidelity.

Ex. A at 5-6.

We have an experienced lawyer, we have an experienced lawyer in charge of the audit, an experienced lawyer in charge of what to say and what not to say to the IRS, and a client who is relying on that lawyer. This is the essence of an attorney/client relationship. He didn't expect that years later his lawyer would be on the witness stand testifying against him. He didn't expect that his lawyer would be cutting a deal to give up confidential documents to the government because the lawyer was concerned about the lawyer. But that's what happened. . . .

Ex. A at 12.

Now, you may not like an answer that for a man that controls a company all the lawyer is saying is that he receives one share out of 12,000, but that was an answer deliberately selected by the lawyer, not the client. That was Mr. DeFranceschi's answer.

The government wants to blame the client for the lawyer's answer that the client had every right, reading that answer, to think, That's what lawyers do; that's what my professor of taxation is answering. The client has told the lawyer everything. The lawyer has selected a little piece of what he knows to tell the IRS. It's not on the client to instruct the lawyer, Don't be such a good lawyer, tell the IRS more, disclose more. That's not a burden we place on clients who are being threatened with IRS revenue agents. That's a burden which, if at all, is on the lawyer to act ethically, to act legally, to act competently, to provide effective representation.

Ex. A at 15.

And there's no burden on him to try to instruct his lawyer: Tell them more. Tell them I was an officer in 1995. Tell them I was an officer in 1991. That's just not the job of a client that puts a lawyer between him and the United States government that's trying to do an audit of his taxes. That's a serious legal problem for him. That's why clients hire lawyers. We may not like it, but it was a lawyer decision to answer the question the way it was answered. And it's a client right not to direct a lawyer to do things that are against the client's interest.

Ex. A at 17-18.

6

>      And in this case every element includes, as to each count, the mandate that you find beyond a reasonable doubt misconduct, criminal conduct with a criminal intent after Mr. DeFranceschi is hired.  It's not enough just to say that Mr. Schussel diverted money to Bermuda in 1995 or 1994.  The essence of this case, the boiling point, is March 11.  And by that time Mr. DeFranceschi is a quarterback, and Mr. Schussel is simply watching his lawyer and responding to his lawyer, having fully armed his lawyer with all the facts that were essential to the lawyer providing effective representation of counsel.

Ex. A at 24-25.

>      The government also asked you to criminalize May 6th.  May 6th is the signature on Exhibit 57 that Mr. Schussel signed at the conclusion of the audit, weeks after Mr. DeFranceschi physically received the Fidelity records and the Bank of Bermuda records, weeks after Mr. DeFranceschi had every right to supplement the March 11 letter if he felt that
> he made any representations that were not complete. Mr. DeFranceschi had every right to make them then, having received all of the documents from Mr. Schussel.  There was no change, there was nothing in those documents that conflicted with what Mr. DeFranceschi knew or that caused Mr. DeFranceschi to change his mind about any of the representations made in the March 11 letter.
>      The government wants to criminalize Mr. Schussel's signature on the bottom of Exhibit 57, which says "consent to assessment and collection."  Consent.  "I do not wish to exercise my appeal rights with the IRS or to contest in the U.S. Tax Court the findings in this report; therefore, I give  my consent to the immediate assessment and collection of any increase in tax and penalties.  It is understood that this report is subject to acceptance by the assistant director." Signed, at his lawyer's instruction, by Mr. Schussel. DeFranceschi said, It's my practice just to put these things out and say "sign."

Ex. A at 25.

>      . . . . Citizens do have a right to arm their lawyer with the facts so the lawyer can make the judgments what to tell the IRS and what not to tell the IRS, and that is all that Mr. Schussel did.
>      And Mr. DeFranceschi, with his experience, may have answered these questions too narrowly; but I contend he should not lose his liberty because his lawyer answered the questions too narrowly, didn't disclose enough.

Ex. A at 26.

These portions of counsel's argument to the jury cogently illustrate the centrality of the attorney-client relationship to Schussel's defense, a defense which was effectively eviscerated by the Court's failure to instruct the jury regarding the proper parameters of the attorney-client

7

relationship and the role of the attorney and client in matters such as the IRS audit. Absent such instructions, the jury entirely lacked the necessary foundation for determining whether counsel's arguments in fact articulated a valid theory of defense which could absolve Schussel of criminal liability for the offenses charged. *See* Motion at 16-17. Schussel's having "caused" his attorney to act was a crucial offense allegation, yet the Court's failure to instruct regarding the attorney-client relationship left the jury entirely without guidance regarding this critical issue: the jury was provided no principled basis on which to differentiate acceptable client "causation" from criminally culpable causation. The failure to instruct the jury regarding the attorney-client relationship was particularly problematic because the factual disclosures elicited by Schussel during the trial to support the defense were likely, absent instruction, to be misinterpreted by the jury as tantamount to a confession of guilt of all or part of the offenses charged.

## CONCLUSION

For all the foregoing reasons, and for all the reasons set forth in Schussel's Motion for Judgment of Acquittal Or, in the Alternative, a New Trial, this Court should, at a minimum, grant Schussel a new trial in the interests of justice.

Respectfully submitted,
By his attorneys,

**/s/ Francis J. DiMento**
Francis J. DiMento.
DiMento & Sullivan
7 Faneuil Hall Marketplace
Boston, Massachusetts 02109
(617) 523-2345

**/s/ Martin G. Weinberg**
Martin G. Weinberg
Mass. Bar. No. 519480
20 Park Plaza, Suite 905
Boston, Massachusetts 02116
(617) 227-3700

## CERTIFICATE OF SERVICE

    I, Martin G. Weinberg, hereby certify that on this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) on February 12, 2007.

                                                    **/s/ Martin G. Weinberg**