UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

_____
                                    )
UNITED STATES OF AMERICA            )
                                    )
                                    )
v.                                  )    CRIMINAL NO. 04-10060-RCL
                                    )
                                    )
GEORGE SCHUSSEL                     )
_____ )

**DEFENDANT GEORGE SCHUSSEL'S REPLY TO GOVERNMENT'S OPPOSITION TO HIS MOTION FOR JUDGMENT OF ACQUITTAL OR, IN THE ALTERNATIVE, A NEW TRIAL**

Defendant George Schussel replies to the government's Opposition to Defendant's Motion for Judgment of Acquittal or New Trial ("Opposition") as follows.

**I.    NEW TRIAL INSTRUCTIONAL ISSUES.**

The government's Opposition is most noteworthy for what it does not address rather than what it does. Most remarkably, it entirely fails to grapple with Schussel's arguments that the Court's failure to provide the jury with the requisite guidance regarding his theories of defense left him effectively denuded of a defense, in violation of his right to a fair trial and to present a defense, as guaranteed by the Fifth and Sixth Amendments. In addition, the government's Opposition:

- fails to recognize that the Supreme Court's decision in *Cheek* requires more than the standard wilfulness instruction, which is all that the Court gave the jury, *see* Section I(A), *infra*;

- erroneously characterizes some of the requested instructions which the Court declined to give as a concealed attempt to assert an advice of counsel defense with respect to the March 11, 1998, letter which Schussel never in fact asserted or intended to assert in light of the fact that it was DeFranceschi, and not he, who authored and sent the letter, *see* Sections I(A), (E), *infra*;

- ignores the fact that, even if the Court were to conclude that the evidence was sufficient to support a jury conclusion that a single conspiracy extending into the

> limitations period existed, the single/multiple conspiracy issue was fundamentally one to be decided by the jury on proper instructions, which the Court declined to give, *see* Section I(B), *infra*;

- ignores the fact that the indictment charged Schussel with making or causing to be made *false* statements, not misleading or vague statements, thus requiring the giving of the "literal truth" instruction requested by Schussel, *see* Section I(C), *infra*;

- ignores the fact that its own pretrial discovery disclosures, on which Schussel justifiably relied in formulating his defenses, did not include DeFranceschi on the list of persons who the government would contend at trial were coconspirators, *see* Section I(D), *infra*;

- ignores the fact that the Court's refusal to instruct the jury regarding Schussel's theory of defense effectively eviscerated his defense, *see* Section I(E), *infra*.

### A. Failure to Properly Instruct Regarding Wilfulness.

The government's Opposition largely fails to respond at all to Schussel's contentions regarding the Court's failure to instruct the jury as requested in his Proposed Instructions 3, 3(A), and 3(D) and the concomitant inadequacy of the Court's wilfulness instructions. The government is quite correct that "[t]he relevant legal question for purposes of Counts Two and Three . . . was whether [Schussel] *wilfully* filed a false and fraudulent tax return for the calendar year 1995 and *wilfully* made or caused to be made false statements to a revenue agent in order to mislead and impede the audit examination on or about March 11, 1998." Opposition at 13 (emphasis added). That is precisely why a correct definition of wilfulness in the context of tax evasion prosecutions – with which the Court's instructions did not provide the jury – was crucial to the jury's proper assessment of whether the government had proven beyond a reasonable doubt that Schussel acted "wilfully" with respect to the pivotal March 11 letter, absent which it could not convict him of the offenses charged in Counts Two and Three.[1]

---

[1] The jury also could not convict Schussel of the conspiracy charged in Count One, unless it relied either on the March 11, 1998, letter or on the only other charged overt act within the statute of limitations, Schussel's signing of the May 6, 1998, IRS adjustment letter – an overt act which, in contrast to DeFranceschi's sending of the March 11,

In *Cheek*, which the government does not so much as cite, the Supreme Court made it clear beyond dispute that wilfulness in the context of §7201 prosecutions requires that the government prove beyond a reasonable doubt that the law imposed a duty on Schussel, that he knew of that duty, and that he voluntarily and intentionally violated that duty. *See* JOA/New Trial Motion at 9-10.[2] That being the case, guidance from the Court was required to enable the jury to properly evaluate whether the law imposed a duty on *Schussel* with respect to *DeFranceschi's* sending of the March 11, 1998, letter, and, if so, whether Schussel knew of that duty and whether he voluntarily and intentionally violated that duty. The proposed instructions were intended to embody this crucial concept, as to which the Court's generic wilfulness instruction left the jury wholly without guidance.

The government suggests that the requested instructions were a sort of back-door insertion of an advice of counsel defense. Opposition at 13. They were not. Schussel did not assert an advice of counsel defense with respect to the sending of the March 11 letter *because the representations at issue were made by DeFranceschi, not by Schussel.* The issue was essentially one of what

---

1998, letter *did* require the giving of a limited advice of counsel instruction (Proposed Instruction 3(D)), in that the evidence clearly reflected that it was DeFranceschi's routine practice simply to instruct his clients to sign the adjustment letter if his legal determination was that the adjustment reflected a favorable conclusion to the civil audit.

[2] The government's argument that the Court's instructions adequately conveyed the meaning of "wilfulness" in a §7201 prosecution, *see* Opposition at 14-15, entirely ignores the holding in *Cheek*. This is not just a question of infelicitous phrasing, *see id.*, but the utter failure of the instructions to convey to the jury the meaning of wilfulness, as defined by *Cheek*. In *United States v. McGill*, 953 F.2d 11 (1st Cir. 1992), on which the government relies, the instructions, although not couched in the exact language requested by the defendant, expressly conveyed to the jury the requirement that the defendant have known that he had a legal duty to report the income in question and that he intentionally violated that duty. *See* 953 F.2d at 12. Unlike this case, the instructions in *McGill* "accurately communicated the meat of the defense's theory." *Id.* The other case cited by the government, *United States v. Monteiro*, 871 F.2d 204 (1st Cir. 1989), was decided prior to *Cheek* and therefore provides no guidance as to what a proper, post-*Cheek* definition of wilfulness must tell the jury. Nothing in the Court's instructions communicated to the jury that, before it could convict Schussel based upon the March 11 letter, *i.e.*, before it could find that his conduct with respect to that letter was "wilful" within the meaning of §7201, it was required to find that the law imposed a duty on Schussel with respect to DeFranceschi's sending of that letter, that he knew of that duty, and that he intentionally violated that duty. Instructing the jury that Schussel could not be found guilty on Counts Two and Three if it found that he believed in good faith that his actions comported with the law, *see* Opposition at 14, is very different from telling it, as required under *Cheek*, that it was required to find that the law *actually imposed* on Schussel a duty which he knew of and intentionally violated. *See* First Circuit Pattern Jury Instructions (2002 Revisions) §4.37.

3

causation means in the context of the attorney-client relationship, *i.e.*, how was the jury to determine whether Schussel wilfully caused DeFranceschi to send the letter? The jury was provided no legal framework within which to assess the facts before it on this pivotal issue. Ironically, the government opposed defense presentation of the expert testimony of Arnold Rosenfeld on the ground that it embodied legal conclusions and, hence, "improperly encroache[d] on areas reserved for the Court," United States' Memorandum in Support of Its Motion to Exclude Defense Experts (Doc. #82-1) at 8, and the Court indicated that it was improbable that his testimony would be admitted if offered. How then is the defendant to put before the jury his legally supportable theory of defense if he cannot present evidence on this issue because it is an issue of law reserved for judicial instructions and the Court's instructions to the jury are silent on the issue?

      **B.**      **Failure to Instruct on Multiple Conspiracies and the Statute of Limitations.**

Even should the Court conclude that there was sufficient evidence of a single conspiracy extending into the limitations period to withstand a Rule 29 motion, *but see* Section II(B)(1), *infra*, the fact remains that this was a jury question and that the Court declined to instruct the jury regarding the multiple conspiracy/*Grunewald* theory despite the fact that there was evidence in the record to support it. *See* Defendant George Schussel's Motion for Judgment of Acquittal Or, in the Alternative, a New Trial (Doc. #108)("JOA/New Trial Motion") at 10-13. As addressed at length in Schussel's JOA/New Trial Motion at 7-8, the Court's function in assessing whether an instruction on a defense theory should be given to the jury is to "determin[e] whether the proof, *taken in the light most favorable to the defense*, can *plausibly* support the theory of the defense." *United States v. Gamache*, 156 F.3d 1, 9 (1st Cir. 1998)(first emphasis added; second emphasis in original). That decision is one, as the standard makes clear, to be made based on the evidence in the particular case

before the court, and not based on what courts have said in other cases on different facts.[3] The government has not responded to Schussel's argument that the *evidence* sufficed to require the giving of the requested instruction.

The fact that the indictment in this case charged a single conspiracy is irrelevant to the present inquiry, as is the fact that the Court instructed the jury that it was required to find that the conspiracy charged in Count One existed and not some other conspiracy. *See* Opposition at 15. If that were all that was required, a specific multiple conspiracy instruction would *never* be required.[4] The jury may have been told that it was required to find that the conspiracy charged in Count One had been proven and that a coconspirator had committed an overt act in furtherance of it after February 26, 1998, Opposition at 15, but it was not given the necessary guidance, in the form of a multiple conspiracy/*Grunewald* instruction, as to *how* it was to reach its decision on those questions.

    **C.**    **Failure to Give a Literal Truth Instruction.**

The government's argument that "[a]lthough a false statement to the IRS would qualify as an affirmative act, . . . other statements to the IRS with the intent to mislead or conceal could also be sufficient to establish an overt act," and that "half truths, vague responses, and claimed 'literally

---

[3] The government's reliance on *Forman* in this context, *see* Opposition at 15, is misplaced for at least three reasons. First, that the instruction given at the defendant's request in *Forman* was found by the Court to have been inappropriate does not govern whether, *on the facts of this case*, the requested multiple conspiracy/*Grunewald* instruction should have been given. Second, the instruction requested in *Forman* was that the defendants should be acquitted unless the jury found that the defendants entered into a "subsidiary conspiracy" to conceal – language similar to the charge given in *Grunewald. See* 361 U.S. at 418, 423. This was a very different instruction than that requested by Schussel and, moreover, one inconsistent with *Grunewald*, which had not yet been decided at the time of Forman's trial. Third, the Supreme Court *upheld* the granting of a new trial by the court of appeals because the jury had not been properly instructed regarding the necessity of finding that that later acts of concealment were in furtherance of the original tax evasion conspiracy.

[4] The government's complete failure to address the applicable inquiry is evidenced by its citation of *United States v. Morrow*, 39 F.3d 1228 (1st Cir. 1994). The issue in *Morrow* was not, as in the present context, whether a multiple conspiracy instruction should have been given but rather whether the evidence sufficed to support the defendants' conspiracy convictions, *see* 39 F.3d at 1233-34, a very different inquiry governed by a very different standard.

true' statements" could fall into the latter category, Opposition at 16, ignores the actual charges in this case. Counts Two and Three did not charge Schussel with making statements to the IRS which were half truths, vague, or literally true but misleading; on the contrary, they expressly charged Schussel with "making or causing to be made *false* statements" to an IRS revenue agent. Indictment at 16, 17 (emphasis added).

Thus, the jury was required to find that the March 11 letter contained a *false* statement. It makes no difference that other types of misleading statements might support a §7201 prosecution if the case had been differently charged. The government advances no argument as to why "false" should have a different meaning in the context of a §7201 prosecution than it does in the context of perjury or §1001 prosecutions. Contrary to the government's argument, the fact that the instructions told the jury that it was required to find that Schussel made a false statement, *see* Opposition at 16, does not end the matter. On the facts of this case, and as the offense was charged in the indictment, further instruction, as requested by Schussel, was required to define for the jury the parameters of what it could permissibly find to be a false statement. A literally true statement may be incomplete and it may be misleading, but it is not *false*.

### D. Failure to Instruct That the Jury Could Not Convict Schussel on the Theory That Defranceschi Was a Coconspirator.

The government's response to Schussel's argument on this point is, at best, disingenuous. It is implausible to suggest, as the government does, Opposition at 17, that the government's rebuttal argument that it was not contending that DeFranceschi was innocent did not at least imply the converse: that the government believed that DeFranceschi, although not charged in the indictment, shared in Schussel's criminal culpability. This is clearly the inference which the jury would have drawn from the government's argument; it is not necessary to the validity of Schussel's argument that the government have explicitly argued that Schussel could be convicted if the jury found that

6

he conspired with DeFranceschi.

Similarly, the government brushes aside Schussel's notice-based argument as a "red herring," without so much a acknowledging that it *never* at any time prior to its rebuttal argument indicated that it might so much as suggest that DeFranceschi may have been a criminally culpable coconspirator. As Schussel has argued, and as the Court is aware from presiding at the trial, Schussel framed his entire defense around the theory that DeFranceschi was not a criminally culpable participant in the offense charged, *see* JOA/New Trial Motion at 14-16, a position which he derived from the government's pretrial stance, including its not having listed DeFranceschi as a coconspirator in pretrial discovery. What matters in the present context is not what Schussel may have known about DeFranceschi's role, *see* Opposition at 17, but what the government told him regarding the theory of prosecution on which it would rely at trial, on which he reasonably relied in preparing his defense.[5]

Finally, the fact that the Court instructed the jury that it was required to find that the conspiracy charged in Count One existed, Opposition at 18, is entirely beside the point. The indictment charged Schussel with conspiring with "others both known and unknown to the grand jury," Indictment at 3, a category which the jury would have no way of knowing did not include DeFranceschi.

### E.    Failure to Instruct the Jury Regarding the Attorney-Client Relationship.

As addressed in Schussel's JOA/New Trial Motion at 16-17, the failure to give the requested

---

[5] The government's reliance on *United States v. Pengaricano-Soler*, 911 F.2d 833, 840 n.5 (1st Cir. 1990), is wholly misplaced. In that case, the defendants challenged the failure of the indictment to name all the alleged coconspirators. The failure of the indictment to name all coconspirators is not remotely comparable to an affirmative representation by the government to a defendant that a list provided to him during pretrial discovery contains the names of all those who the government will contend at trial conspired with the defendant.

instructions[6] – if not in the precise form requested by Schussel, then at least in substance – effectively eviscerated his defense. The government offers no explanation for its bald assertion that "[t]he requested instructions were not a defense properly put to the jury." Opposition at 18. As previously discussed, the government opposed the introduction of Rosenfeld's testimony, and the Court indicated that its admission was improbable. Although the fact that Rosenfeld did not testify does, of course, mean, as the government points out, Opposition at 18, that his testimony is not part of the evidentiary record of the trial, Rosenfeld's testimony is not required to validate the substance of the instructions requested by the defense, which set forth a valid theory of defense for which there was sufficient basis in the record to require that the jury be provided with guidance as to how to evaluate this central and all-important theory of defense. There was an evidentiary basis for the requested instructions without testimony from Rosenfeld, given that both DeFranceschi and Reed testified to Schussel's having communicated privileged and confidential matters both directly and through Reed to DeFranceschi, to DeFranceschi's complete sovereignty over communications with the IRS auditor, and to the fact that Schussel, as the client, entrusted control over the audit to DeFranceschi, as his attorney.

These instructions were not, as the government contends, an attempt to insert an advice of counsel defense, *see* Opposition at 18-19, as, as has been previously addressed, *that was not the defense with respect to the March 11 letter.*[7] Instead, they were instructions crucial to the jury's ability to properly evaluate whether Schussel could or should be held criminally liable for statements

---

[6] Those proposed instructions include not just Proposed Instructions 11 and 12, which the government does address, but also Supplemental Requests for Instructions Nos. 1 and 2, which the government does not address. *See* Doc. #97.

[7] After the Court permitted Schussel's signing of the May, 1998, adjustment letter to stand as an overt act in furtherance of the conspiracy charged in Count One, Schussel did seek to assert a reliance of counsel defense limited to that discrete act.

8

made *by DeFranceschi* – not by Schussel – in his March 11 letter to the IRS revenue agent. Absent any instruction to guide the jury's consideration of whether it was the attorney or the client, or both, who were responsible for the March 11, 1998, letter or the May 6, 1998 acceptance of the IRS adjustment, the jury was without judicial guidance in assessing whether the Schussel-Reed disclosures to DeFranceschi of past conduct (for example, the diversion of money to Bermuda) were privileged communications of past conduct, and thus outside the scope of the crime-fraud exception to the attorney-client privilege, or were instead a confession to at least some elements of the crimes charged.

### F. Failure to Give a Withdrawal/Statute of Limitations Instruction.

Schussel continues to rely on the arguments advanced in his JOA/New Trial Motion at 17-18.

## II. JUDGMENT OF ACQUITTAL ISSUES.

### A. Counts Two and Three.

Contrary to the government's argument, *United States v. Ferris*, 807 F.2d 269, 271 (1st Cir. 1986), does not validate the timing of the filing of this indictment with respect to the filing of the 1995 return. *See* Opposition at 2-3. There was, in actuality, no issue before the *Ferris* Court regarding whether subsequent false statements extended the statute of limitations because, under *Spies v. United States*, 317 U.S. 492, 499 (1943), simply failing to file a tax return does not constitute an *affirmative* act of evasion sufficient to make the offense a §7201 felony, as opposed to a §7203 misdemeanor. *See, e.g., Sansone v. United States*, 380 U.S. 343, 351 (1965). The government's interpretation of the portion of *Ferris* which it quotes at page 3 of its Opposition is necessarily incorrect in light of *Spies*, of which the *Ferris* Court was fully cognizant. *See* 807 F.2d at 271. Although the *Ferris* Court described failure to file as what would have been "the last act of evasion" had the defendant done nothing other than fail to file a return, 807 F.2d at 271, *quoted in*

Opposition at 3, the fact of the matter is that, under *Spies*, the false statements could not have "continued" a §7201 offense *because there was no §7201 offense until the defendant made the first of his deceptive statements – the requisite affirmative act of evasion – for the purpose of evading the taxes due and owing*. Where, as here and as in *Uscinski*, the offense is predicated upon the filing of a false return, the §7201 statute of limitations as to that offense begins to run with the filing of the return.[8]

### B. Count One.

#### 1. Multiple conspiracies/*Grunewald*.

Contrary to the government's argument, Schussel has *not* argued that under *Grunewald* subsequent efforts to cover up after a crime are always a separate crime from the underlying conspiracy to commit the crime which the defendants later sought to conceal. *See* Opposition at 5. What he *has* argued, consistently with *Grunewald*, is that, *under the facts and circumstances of this case*, any subsequent "cover-up" was not part of the original conspiratorial agreement. *See* Defendant George Schussel's Motion for Judgment of Acquittal and Incorporated Memorandum of Law (Doc. #99)("Rule 29 Motion") at 2-6, on which he continues to rely.

As for the government's factual argument, the fact that amended returns were not filed or that nothing else was done to "rectify the many years of evasion," Opposition at 7, is wholly

---

[8] Contrary to the government's suggestion, Schussel's argument is not undercut by the *Ferris* Court's "*see also*" citation to *Mousley*. *See* Opposition at 3 n.3. In *Mousley*, unlike this case, the indictment did not charge the filing of the false return as a violation of §7201, but only the false statements made many years later. *Mousley* is also the only case cited by the government in support of its argument that the alleged false statements in 1998 in conjunction with the DCI audit extended the statute of limitations as to the filing of Schussel's personal income tax return. *See* Opposition at 4. The statement which the government quotes from *Mousley* is, however, not the holding of *Mousley*, but is instead *Mousley*'s description of the holding in another case, *United States v. Bridell*, 180 F.Supp. 268 (1960). *See* 194 F.Supp. at 119-20. Unfortunately for the government, a reading of *Bridell* contains no discussion remotely like that which the *Mousley* Court summarized, nor was there any issue relating to the statute of limitations in *Bridell*. What the *Mousley* Court was referring to is anyone's guess, as *Bridell* did not so much as cite to *Beacon Brass*, much less distinguish it, nor did it address any interrelatedness between the filing of corporate and personal returns for purposes of statute of limitations analysis. *Compare* 194 F.Supp. at 119-20 *with* 180 F.Supp. at 269-79.

irrelevant to the question whether there existed two separate conspiracies or instead only one, as the government contends. Although they may have been discussions regarding the deletion of records, the important fact for present purposes is that those discussions *did not lead to any agreement that the records under discussion would be deleted*, as proven in part by the fact that 4 ½ months after the discussions began in June, 1997, the very management records that were the focus of the discussions were, according to the testimony of the government's own witness, Reed, made available to the IRS auditor. *See also* Section II(B)(2), *infra.*

> 2. **The government's failure to prove that any conspiracy which existed continued into the limitations period.**

While Reed may have continued to play a role as a conduit of information relative to the audit, *see* Opposition at 9-10, what the government's argument ignores is the altered quality of that role and the intent and purpose with which it was performed: *everything that Reed did after October, 1997, was done for the sole purpose of assisting DeFranceschi to accurately and properly represent DCI with respect to the audit.* There was no evidence that Reed believed that Schussel or DeFranceschi was acting unlawfully with respect to the audit or intended to do so after DeFranceschi assumed responsibility for the audit. After all, the evidence demonstrates that Schussel told Reed to tell DeFranceschi *everything* he wished to know regarding the diversion of funds to Bermuda, the Fidelity spreadsheets, and other matters relating to DCI's failure to report the Bermuda income – and according to Reed's undisputed testimony, she did. There was, moreover, no evidence that Reed knew anything about the contract or that she had anything to do with the March 11, 1998, letter. In sum, whatever Reed's status as a conspirator *before* the end of October, 1997, after that date she acted without conspiratorial intent or agreement and, hence, without criminal culpability.[9]

---

[9] The government continues to suggest that withdrawal from a conspiracy requires more than it in fact does under the controlling First Circuit case law. To withdraw from the conspiracy, Reed was required neither to "alert the

11

The evidence is clear that Reed never entered into an agreement to deceive the IRS auditor and that, when she came to believe that the audit would focus on the Bermuda transfers, she quickly announced to Schussel that she wanted to be relieved of the responsibility of being DCI's audit representative. Any conspiratorial agreement into which Reed may have entered did not include an agreement to provide false information to the IRS auditor. As the First Circuit has recognized, the importance of determining the scope of each individual coconspirator's conspiratorial agreement cannot be overstated:

> The gist of the conspiracy offense is the agreement. Consequently, it [is] "essential to determine what kind of agreement or understanding existed as to *each* defendant." . . . The agreement would not necessarily be the same with respect to each defendant . . . . To warrant conviction, "*the government must present evidence justifying the jury in finding beyond a reasonable doubt that the particular agreement into which the a defendant entered continued into the period not barred by limitation* . . . and the scope of his agreement must be determined individually from what was proved as to him."

*United States v. Juodakis*, 834 F.2d 1099, 1104 (1st Cir. 1987)(first emphasis added by Court; second emphasis added by Schussel), *quoting United States v. Borelli*, 336 F.2d 376, 384, 385 (2d Cir. 1964).

This same principle is of paramount importance when assessing the conduct of Gomes and the scope of his individual conspiratorial agreement. The evidence does not support the proposition that any conspiratorial agreement into which Gomes entered included an agreement to obstruct the IRS audit. While he may have engaged in general discussions regarding the possibility of deleting documents of a type which had never been requested in prior audits, those discussions led to neither a deletion of the records nor an agreement into which Gomes entered to delete them or to otherwise obstruct the IRS audit. In fact, Reed further testified that Gomes often circulated memos without anything happening in response to them.

---

IRS" nor to take steps to "hinder the ongoing conspiracy." Opposition at 10. Instead, it sufficed that she communicated to her coconspirators that she had "abandoned the enterprise and its goals." *See* JOA/New Trial Motion at 4.

Gomes had nothing to do with the audit, and there was no evidence of any connection between him and the contract or the March 11, 1998, letter, nor was there evidence that Gomes participated in any concealment of information or documents from either DeFranceschi or the IRS auditor after he stopped sending money to Bermuda. There was, in sum, insufficient evidence that any conspiratorial agreement into which Gomes entered included an agreement to obstruct the IRS audit to support a jury finding beyond a reasonable doubt that any conspiracy of which Gomes was a member continued into the limitations period.

## CONCLUSION

For all the reasons addressed herein, and for all the reasons addressed in Schussel's JOA/New Trial Motion and Rule 29 motion, the Court should order the entry of judgments of acquittal on all counts. Alternatively, the Court should grant Schussel a new trial in the interests of justice and because the evidence preponderates heavily against the verdict.

Respectfully submitted,
By his attorneys,

| | |
|---|---|
| **/s/ Francis J. DiMento** | **/s/ Martin G. Weinberg** |
| Francis J. DiMento. | Martin G. Weinberg |
| DiMento & Sullivan | Mass. Bar. No. 519480 |
| 7 Faneuil Hall Marketplace | 20 Park Plaza, Suite 905 |
| Boston, Massachusetts 02109 | Boston, Massachusetts 02116 |
| (617) 523-2345 | (617) 227-3700 |

## CERTIFICATE OF SERVICE

I, Martin G. Weinberg, hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) on March 14, 2007.

**/s/ Martin G. Weinberg**

Case 1:04-cr-10060-RCL    Document 115    Filed 03/14/2007    Page 14 of 14