UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| v. ) | CRIMINAL NO. 04-10060-RCL |
| ) | |
| GEORGE SCHUSSEL, ) | |
| Defendant ) | |

**DEFENDANT GEORGE SCHUSSEL'S MOTION FOR BAIL PENDING APPEAL
AND INCORPORATED MEMORANDUM OF LAW**

Defendant George Schussel respectfully requests that this Honorable Court allow him to remain on bail pending his appeal to the United States Court of Appeals for the First Circuit. The Court has twice concluded that the issues which Schussel intends to raise on appeal are substantial. *See* Tr.1/25/07 at 8 ("there are substantial issues raised as to rulings made in this case. I believe those rulings were correctly made, but they are substantial issues, and they were fervently argued"), *see* Tr. 7/12/07 at 5 ("I don't disagree with you there are substantial issues…"). In denying Schussel bail pending appeal, however, the Court applied a more exacting standard than is provided in 18 U.S.C. §3143(b)(1)(B), the statute governing the availability of bail pending appeal, *see* Tr. 7/12/07 at 5 ("I think you have to persuade me that this is going to be a successful – there's a likelihood, substantial likelihood of a successful appeal"), *id.* at 4 ("it's the likelihood that I'm going to be reversed and that's the part I can't get over"). Section 3143(b)(1)(B), as the First Circuit has stressed, does *not* require that the defendant demonstrate that there is a likelihood that his appeal will result in the reversal of his conviction or an order for a new trial. Instead, what he must demonstrate is that the issues to be raised are "substantial" and that *if* the appellate court rules in his favor, reversal or an order for a

new trial will be the likely result, *i.e.*, that the appellate court will likely find the error not harmless.

Under 18 U.S.C. §3143(b)(1)(B), a court considering a defendant's request for bail pending appeal must make two determinations: (1) whether "the appeal raise[s] a substantial question of law or fact and (2) whether, "if the substantial question is determined favorably to defendant on appeal, that decision is likely to result in reversal or an order for a new trial on all counts on which imprisonment has been imposed." *United States v. Bayko*, 774 F.2d 516, 522 (1st Cir. 1985). A "substantial question" is "a 'close' question or one that very well could be decided the other way." *Bayko*, 774 F.2d at 523. Whether or not the defendant's appeal presents a "close" question is to be decided on a case-by-case basis. *Id.* "[L]ikely to result in reversal or an order for a new trial" requires "that the claimed error not be harmless or unprejudicial." *Id.* The "likely to result" standard is to be applied "flexibly." *United States v. Colon-Munoz*, 292 F.3d 18, 20 (1st Cir. 2002). *See United States v. Powell*, 761 F.2d 1227, 1233 (8th Cir. 1985)(in deciding the second part of the standard, the court "must assume that the substantial question presented will go the other way on appeal and then assess the impact of such assumed error on the conviction").

The First Circuit has stressed that bail pending appeal is *not* "contingent on a finding by the district court that it is likely to be reversed." *Bayko*, 774 F.2d at 523. *See, e.g., United States v. Greenberg*, 772 F.2d 340, 341 (7th Cir. 1985)(district court does not have to find that it is more likely to be reversed than affirmed); *Powell*, 761 F.2d at 1232 ("a judge considering the question of bail pending appeal need not hold . . . that he or she has probably made a mistake"); *United States v. Miller*, 753 F.2d 19, 23 (3d Cir. 1985)("The federal courts are not to be put in the position of 'bookmakers' who trade on the probability of ultimate outcome"); *United States*

*v. DeSimone*, 424 F.Supp.2d 344, 345 (D.R.I. 2006)(district court is not required to conclude that it is likely to be reversed).

> Thus, in determining whether there is a substantial question, a court must keep in mind that it is not being asked to reverse its position on issues decided at trial, nor is it being asked to grant a new trial. It must decide only that a significant issue exists that merits appellate review and that the issue is critical enough to the defendant's conviction that a contrary appellate ruling would warrant a reversal.

*United States v. Hicks*, 611 F.Supp. 497, 499 (S.D. Fla. 1985).

The government's argument to the Court that the defendant has the burden to establish by "clear and convincing evidence that even though there may be questions of law or fact on the appeal that they're likely to result in a reversal, *see* Tr. 7/12/07 at 3, overstated the real burden on the defendant. If the burden on the defendant was – as argued by the government and preliminarily determined by this Court – to show a "likelihood" – of reversal (*i.e.,* a greater than 50% chance that his conviction will be reversed) then there would be little distinction between the burden of convincing a Court that the appeal raises substantial issues and the burden of prevailing on the merits of the appeal itself. The reality is that the standard for bail pending appeal is properly lower, as the First Circuit determined in *Bayko*. A defendant such as Schussel whose crimes of conviction occurred almost 9 years ago and who has twice been determined by the Court to not be a flight risk, *see* Tr. 7/12/07 at 3 ("I don't think there's a risk of flight"), *see* Tr. 1/25/07 at pp. 8, 17, and who has substantial issues on appeal should not be imprisoned pending the results of his direct appeal. If successful on any of the many substantial issues that will be raised on appeal, and if Schussel were imprisoned without bail, without risk of flight or danger, there would be the risk of the unnecessary forfeiture of 12, even 15, months of his remaining life. The criminal justice system does not require that Schussel prove the "likelihood"

of success – just that the issues he raises are substantial, that the issues could be resolved in his favor, and that if released on conditions determined by the Court he will not present a flight risk or a danger to the community. The issues to be raised in Schussel's appeal meet this standard.

Rather than re-brief the many issues that were the subject of significant pleadings and arguments submitted to the Court, Schussel will just identify some of the issues that are close, that could be decided in his favor, that meet the test of "substantiality", and that if decided in his favor would result at least in a new trial:

1. The government received facially privileged attorney-client documents from Schussel's attorney Edward DeFranceschi (hereinafter referred to as "DeFranceschi") without a prior judicial determination that Schussel had lost or waived his attorney-client privilege and without notice to the client, Schussel. The government was permitted to offer these documents to the jury based upon findings of crime-fraud and waiver that resulted from the Magistrate Judge's review of the contents of the documents — contents that would not otherwise have been available for review absent the original violation of Schussel's rights to confidentiality and secrecy. *See* Findings and Recommendation on Motion to Suppress Government's Use and Acquisition of Privileged Materials and for Other Appropriate Relief (Dkt. 62 at pp. 20-22). The government should not have received these facially privileged documents from DeFranceschi who was advancing his own, not Schussel's, interests when he made the disclosures without notice to Schussel and without a prior judicial determination that the documents were not fully entitled to confidentiality. This Court's December 5, 2005, decisions to adopt the Findings and Recommendation and to deny Schussel's Motions to Suppress DeFranceschi's testimony

and related documents (Dkt. 20, 21, 29) resulted in the jury's receiving privileged materials and testimony from Schussel's counsel. These documents and testimony required Schussel, in defense, to disclose further privileged communications (such as testimony from Reed that she made full disclosure to DeFranceschi that "DCIL was George") in order to respond and provide context and completeness to the documents and testimony the prosecution was permitted, over objection, to offer. As a result of the Court's approving the Magistrate Judge's findings, the prosecution was able to predicate that part of its case which alone provided the jury with a basis to convict within the statute of limitations exclusively on the testimony of Schussel's counsel DeFranceschi and documents that would not have been possessed by the prosecution other than through DeFranceschi's improper disclosures. The decisions of the Court regarding matters of privilege were close questions. Absent DeFranceschi's testimony and the privileged documents, including faxes from Schussel to his attorney, the government could not have proven any illegal conduct in regards to the audit and therefore no illegal conduct within 6 years of indictment. The issues are substantial and by themselves satisfy the requisites of the bail pending appeal statute. [1]

2. The Court's denial of Schussel's Motions for Judgment of Acquittal (Dkt. 99, 108) raises substantial issues on appeal. As to Count 1, Schussel contended that Diane Reed had withdrawn from conspiratorial conduct more than 6 years before the return of the

---

[1] At the first status conference, following the defendant's filing a Notice of Appeal from this Court's decision to admit certain facially privileged documents and testimony, the government, in response to the Court's question as to whether the government would challenge the jurisdiction of the Court of Appeals, stated "we would … but I think *that there is a legitimate basis for going forward given the nature of the subject matter of the documents and the testimony that they are seeking to continue to suppress*", *see* Tr. 1/4/06 at 5 (emphasis added). Although the Court of Appeals denied interlocutory relief in an April, 2006 order, it did so not on the merits of the issues raised but solely on procedural grounds relating to the narrow basis for interlocutory relief.

indictment, that Ronald Gomes' conspiratorial involvement ended with the filing of the 1995 tax returns more than 6 years before the return of the indictment, that DeFranceschi was not alleged to be a co-conspirator, and that Schussel's conduct within the statute of limitations lacked an agreement with any second conspirator and that the conspiracy had therefore ended more than 6 years before the return of the indictment and was barred by the statute of limitations (*see* Dkt. 108 at pp. 3-6). Likewise, as to Counts 2 and 3, Schussel contended that the statute of limitations for each substantive count began with the filing of the false returns in 1996, *i.e.,* that the filing of the returns was a completed crime for purposes of 26 U.S.C. §7201 more than 6 years before the return of the indictment and was barred by the statute of limitations, *see Sansone v. United States*, 380 U.S. 343, 354 (1965)(§7201 offense complete "as soon as the false and fraudulent understatement of taxes…was filed"); *United States v. Uscinski,* 369 F.3d 1243, 1247 & n* (11th Cir. 2004)(following *Sansone* and distinguishing cases where the return was not filed at all); *cf. United States v. Ferris,* 807 F.2d 269 (1st Cir. 1986)(failure to file case where false statements acted as starting point for statute of limitations). The issues raised in relation to these legal issues which were significant enough for the court to reserve decision until after the verdict are substantial for purposes of bail pending appeal.

3. Schussel also moved pretrial to dismiss Counts 2 and 3 on grounds of the statute of limitations and Count 1 on the grounds that it charged a multiple conspiracy, (Dkt. 30). As to the substantive tax counts, the government charged that the 6-year statute of limitations did not begin on the date of filing, almost 8 years before indictment, as

required by *Sansone*. As to the conspiracy count, the government charged in a single conspiracy count what were in fact two discrete conspiracies, one ending with the filing of the 1995 tax returns, the other beginning more than 18 months later with the tax audit. *Compare Grunewald v. United States,* 353 U.S. 391 (1957), *with Forman v. United States,* 361 U.S. 416 (1960). Each motion raised substantial issues. The Court denied the motions on December 5, 2005.

4. The Court's "willfulness" instruction which required that the jury find a "specific intent to disobey" but did not adopt Schussel's requests for instructions 3, 3A, and 3D (*see* Dkt. 85) requiring that the jury find that Schussel knew of his legal duty to act and intentionally violated that duty – a heightened *mens rea* standard required for tax offenses by *Cheek v. United States,* 498 U.S. 192 (1991); *see* First Circuit Pattern Jury Instructions (2002 Revisions) §4.37; *United States v. McGill,* 953 F.2d 10 (1st Cir. 1992) – constitutes a substantial issue on appeal. The absence of a "*Cheek* instruction" was error as to each count, since the March 11, 1998, tax audit letter was one of only two essential overt acts within the statute of limitations as to Count 1, and the jury's determination of that overt act required the same *mens rea* determination as their determination of the substantive tax counts 2 and 3 (*see* Dkt. 108, pp. 9-10).

5. The Court's denial of several "theory of the defense" instructions, each of which was legally principled and based on facts in the record, deprived Schussel of his right to have the jury determine whether he had proved a viable defense as set forth in Schussel's post-verdict Motion for a New Trial (Dkt. 108, 112, 115):

A) The Court denied a request by Schussel to instruct the jury that if they determined that the representations of DeFranceschi in the letter to the IRS of March 11, 1998, were "literally truthful" that Schussel was entitled to be acquitted (even if the jury also believed the letter to be misleading)(Dkt. 85, Request for Instruction 10) deprived Schussel of a theory of defense to each of the three counts given that the jury's verdict as to Counts 2 and 3 depended on their finding criminal liability for the March 11, 1998, letter and given that one of only two overt acts necessary to support a conviction on Count 1 was the March 11, 1998 letter (with the other being Schussel's signing of a waiver, *i.e.,* an agreement not to appeal the auditor's adjustments to his taxes on May 6, 1998 – an overt act that Schussel moved to strike as not being in furtherance of the conspiracy). *See Bronston v. United States,* 409 U.S. 352 (1973); *United States v. Poutre,* 646 F.2d 685 (1st Cir. 1981)(applying *Bronston* to false statements not made under oath).

B) The Court denied a request for instruction that "acts undertaken to conceal the commission of a crime do not extend the duration of a conspiracy to commit the crime unless there was an *express original agreement* among the conspirators to continue to act in concert in order to cover up their crime (Dkt. 85, Instruction 8, Dkt. 108, pp. 10-12), *citing Grunewald v. United States,* 353 U.S. 391, 404 (1957); *compare Forman v. United States.* 361 U.S. 416 (1960). The defense raised a

8

factual issue that the conspiracy to file false returns omitting DCIL income was complete in 1996, that Schussel had ended his tax-related misconduct and voluntarily terminated the practice of sending unreported income to Bermuda, and that any conduct relating to the tax audit was a separate conspiracy not contemplated within any "original" agreement to evade taxes. The denial of the defense instruction deprived the jury of the basis for determining whether the government's proof constituted, at best, evidence of multiple conspiracies, with the evidence of filing false tax returns being barred by the statute of limitations from being considered as a basis for criminal liability.

C) The Court denied a requested instruction that would have provided the jury with a basis to determine that Schussel withdrew from the conspiracy charged before the statute of limitations, (*see* Dkt. 85, request #9, Dkt. 108, pp. 17-19). Schussel's contention that he withdrew from the tax conspiracy in 1996 and was therefore protected by the statute of limitations was based on evidence that he filed accurate returns starting with the 1996 tax years, that the transfers to Bermuda stopped, that DCI was audited for 1996 by Coopers and Lybrand, and by testimony that Schussel affirmatively directed an end to the routing of money to DCIL. The failure to give the requested instruction is a substantial issue on appeal.

D) The Court denied all 4 requests for instructions on the attorney-client relationship, on Schussel's right to rely on the decisions of retained counsel, on the government's burden to prove that he caused the wrongful acts of his counsel on March 11, 1998, and on the government's burden to show that Schussel knew he had a duty to not sign the acceptance letter on May 6, 1998, although he was directed to sign it by his counsel and although it merely agreed not to appeal (rather than agreeing on the accuracy of the adjustments)(*see* Dkt. 85 requests 3, 11, 12 and Dkt. 97 1, 2, *see also* Dkt. 108, pp. 16-18). Given that Schussel elicited evidence from Diane Reed that he had instructed her and others at DCI to make full disclosure of all evidence of past tax-related conduct and misconduct to DeFranceschi - disclosures that included the evidence from Reed, memorialized in DeFranceschi's notes which were introduced by Schussel to prove full disclosure that DCI, DCIL and George were all the same (a disclosure that is facially incriminating unless tied to the right of a client to confide in an attorney and rely on his attorney's subsequent decisions, *e.g.,* how to respond to the IRS questions in the pivotal March 11, 1998 letter) - instructions such as those requested were required. The complete absence of any instruction guiding the jury in how to determine whether the client Schussel was liable for the lawyer's March 11, 1998, letter constitutes a substantial issue on appeal.

  E) The Court's failure to instruct the jury that it was precluded from basing a conspiracy conviction on the theory that DeFranceschi was a co-conspirator – a request made after the government's rebuttal argument retreated from their position that DeFranceschi was not culpable – constitutes a substantial issue on appeal (*see* Dkt. 108, pgs 14-16).

A "criminal defendant is entitled to an instruction on his theory of defense so long as the theory is a valid one and there is evidence in the record to support it…**.** In making this determination, the district court is not allowed to weigh the evidence, make credibility determinations, or resolve conflicts in the proof" but instead must take the evidence "in the light most favorable to the defense" and determine if the evidence "can plausibly support the theory of the defense." *United States v. Gamache* 156 F.3d 1, 9 (1st Cir. 1998). The denial of his requests for instructions denied Schussel a jury determination of the merits of his theories of defense on literal truth, willfulness, multiple conspiracy, statute of limitations, duty of counsel, and as to the May 6, 1998, overt act on reliance on counsel, and constitute individually and collectively substantial issues meriting bail pending appeal.

  The issues identified above both individually and cumulatively satisfy the First Circuit test that "substantiality" of issue does *not* require a finding by the district court that it is *likely* to be reversed. *United States v. Bayko,* 774 F.2d 516, 523 (1st Cir. 1985). Instead, a finding that issues that are "close" or "could be decided the other way" satisfy the substantiality test of 18 U.S.C. §3143 and require bail for a defendant like Schussel who has already been determined to not pose a risk of flight or danger to the community.

                                        Respectfully submitted,
                                        By his attorneys,

| **/s/ Francis J. DiMento** | **/s/ Martin G. Weinberg** |
|---|---|
| Francis J. DiMento. | Martin G. Weinberg |
| DiMento & Sullivan | Mass. Bar. No. 519480 |
| 7 Faneuil Hall Marketplace | 20 Park Plaza, Suite 905 |
| Boston, Massachusetts 02109 | Boston, Massachusetts 02116 |
| (617) 523-2345 | (617) 227-3700 |

## CERTIFICATE OF SERVICE

    I, Martin G. Weinberg, hereby certify that on this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) on July 23, 2007.

                                          **/s/ Martin G. Weinberg**
                                          Martin G. Weinberg