UNITED STATES DISTRICT COURT
DISTRICT COURT OF MASSACHUSETTS

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | |
| | ) | CRIMINAL NO. 04-10060-RCL |
| GEORGE SCHUSSEL, | ) | |
| Defendant | ) | |
| | ) | |

**GOVERNMENT'S OPPOSITION
TO GEORGE SCHUSSEL'S MOTION FOR BAIL PENDING APPEAL**

This Court should not allow Defendant George Schussel ("Schussel") to remain on bail

pending appeal. For the reasons that follow, Schussel's request does not satisfy the requirements

for bail pending appeal under the relevant controlling authorities.

**A.      The Relevant Legal Standard**

Detention pending appeal is mandatory unless the court finds that two requirements have

been met: first, by clear and convincing evidence that the person is not likely to flee or pose a

danger to the community; and second, that the appeal is not for the purpose of delay and raises a

substantial question of law or fact likely to result in reversal, an order for new trial, a sentence

that does not include a term of imprisonment, or a reduced sentence to a term of imprisonment

less than the total of the time already served plus the expected duration of the appeal process.

See 18 U.S.C. § 3143(b)(1)(A) and (B). The principal issue raised by Schussel's motion is

whether Schussel has satisfied the second requirement.[1] The First Circuit has recognized that the

second requirement breaks down into two distinct parts: "(1) that the appeal raise a substantial

---

[1] The United States continues to assert that Schussel is a substantial flight risk and that
Schussel has not, and cannot, show "by clear and convincing evidence" that he is not a risk of
flight. As the United States argued during the sentencing hearing on July 12, 2007, Schussel has
substantial means at his disposal (in excess of $90 million) that he can use to flee the country.

question of law or fact and (2) that if that substantial question is determined favorably to defendant on appeal, that decision is likely to result in reversal or an order for a new trial of all counts on which imprisonment has been imposed." United States v. Bayko, 774 F.2d 516 (1st Cir. 1985).

In construing the first part – whether the appeal raises a "substantial question of law or fact" – the First Circuit has adopted the formulation first made by the Eleventh Circuit that the appeal raise a 'close' question or one that very well could be decided the other way." Id. at 523 (citing United States v. Giancola, 754 F.2d 898 (11th Cir. 1985)).  While this is a formulation to be applied flexibly, the First Circuit has recognized that this is a more difficult standard for a defendant to meet than was the case before Congress enacted § 3143(b)(1)(A) and (B).  See Bayko, 774 F.2d at 523.  It is not enough for a defendant to show that a disputed point of law or fact was "fairly debatable" or that a "possibility of reversal" exists.  Id.[2]  As is explained in United States v. Greenberg, 772 F.2d 340, 341 (7th Cir. 1985), a case Schussel cites:  "[I]t must mean that the appeal could readily go either way, that it is a toss-up or nearly so. . . . that the chance for reversal is substantial."

In construing the second part – whether, if the defendant is successful on appeal, it will likely result in a reversal or new trial – the First Circuit has said that what is required is that the claimed error must not be harmless or unprejudicial.  It must be "more probable than not that a favorable decision will result in a reversal of the conviction or a new trial."  Bayko, 774 F.2d at

---

[2]  In Bayko, thr First Circuit vacated a district court's order of bail and ordered revocation of bail "forthwith" holding that the district court erroneously ordered bail when it concluded that there was a "possibility of reversal" on appeal.  Id. at 523.

522.  As mentioned above, reversal or a new trial must affect "all counts on which imprisonment has been imposed."  Id.

Although Schussel tries to make much of the Court's statements that "substantial issues" exist in the case, see Def. Motion at 1, the case law has consistently held that more is needed. Thus, under this standard, courts have routinely denied bail pending appeal – even in cases where the district court stated that a certain defense raised a "substantial question"  See, for example, United States v. Schoffner, 791 F.2d 586 (7th Cir. 1986) (applying the Bayko standard) (reversing and remanding order of bail pending appeal where district court stated about one of the defenses "it is a substantial question . . . I don't have any problem with that idea at all."); see also, United States v. Skilling, 2006 WL 3030721 (S.D.Tex. Oct. 23, 2006) ("substantial question" raised on conspiracy count, but because defendant was convicted on other counts, bail pending appeal was not appropriate).  Here, there is no substantial chance of reversal or of a new trial, and bail pending appeal is not appropriate.

**B.    Schussel's Motion Does Not Meet The Standard For Bail Pending Appeal**

In his Motion, Schussel lists five issues he claims are "substantial" and, if decided in his favor, would result in the grant, at a minimum, of a new trial.  Many of these issues were the subject of earlier motions and argument during the course of the trial.  And although many of them were the subject of extensive briefing and argument during the course of the proceedings, none of them raises an issue that satisfies the requirements necessary for the Court to order bail pending appeal.

### 1.    DeFranceschi's Documents And Testimony

Schussel asserts that this Court's rulings permitting the government's use of alleged privileged attorney-client documents and the testimony of attorney Edward DeFranceschi ("DeFranceschi") present "close" questions. Def. Motion at 4. In particular, Schussel contends that the government should not have received the "facially privileged documents" from DeFranceschi without a prior judicial determination that Schussel had lost or waived his attorney-client privilege and without notice to Schussel. Id. Nowhere, however, does Schussel explain how this issue – namely, the circumstances pursuant to which the documents were provided to the government and then, in turn, provided to the Court for a ruling on privilege – will have a bearing on the outcome of the appeal. If the Court's rulings that the documents used at trial were not privileged is correct, then the disclosure of those documents to the government by DeFrancheschi did not infringe on any privilege Schussel may have had. If the First Circuit rules the documents to have been privileged, then (assuming no waiver) the First Circuit will fashion a remedy for Schussel. Either way, the circumstances pursuant to which DeFranceschi provided the documents to the government will not affect the outcome of the appeal.[3]

The real issue on appeal is the Court's determination permitting the government to use certain documents received from DeFranceschi, and here, there is no substantial issue that is

---

[3] The government maintains, as it has throughout this case, that there was nothing improper about its receipt of the documents from DeFranceschi. The manner in which the government received the DeFranceschi documents was thoroughly briefed in the Government's Opposition to Defendant's Motion to Suppress Evidence on Claim of Privilege (Dkt. 47 at 25-30). Furthermore, Schussel's complaint is, in essence, a dispute between DeFranceschi and Schussel and bears on DeFranceschi's duties to Schussel. As the record shows, DeFranceschi only provided documents to the government after receiving a legal opinion that such a disclosure was appropriate. See Id., Ex. 3 (Affidavit of Elliot Lobel, Esq.).

likely to result in reversal or a new trial.  After the government received the documents, there

were extensive pretrial hearings at which Diane Reed ("Reed"), Ronald Gomes ("Gomes"),

DeFranceschi, and Kenneth Glusman (another Schussel attorney) testified.  The Magistrate

Judge reviewed the documents at issue.  After careful review, the Court determined that certain

documents obtained from DeFranceschi were not privileged pursuant to the crime-fraud

exception, third party disclosure rule, and because they were not "privileged communication[s]."

See Findings and Recommendation On Motion to Suppress Government's Use and Acquisition

of Privileged Materials and for Other Appropriate Relief (Dkt. 62 at 18-22).  This Court then

reviewed the Magistrate's findings and adopted the Report and Recommendations of the

Magistrate on December 5, 2005.  Furthermore, at trial, prior to DeFranceschi's testimony and

the introduction of documents received from him, this Court revisited the issue of attorney-client

privilege and reviewed the documents to be admitted at trial and again ruled that the documents

the government used at trial were not privileged.  Given the numerous reviews and careful

determinations made by the Court, there is no indication that this is a substantial issue on

appeal.[4]

---

[4] In his Motion, Schussel makes the curious statement that the contents of the documents
subject to the Court's ruling "would not otherwise have been available for review absent the
original violation of Schussel's rights to confidentiality and secrecy." Def. Motion at 4.  Why
that would have been so, Schussel does not explain.  Schussel certainly would have (or should
have) listed the documents on a privilege log and, based on this record, those documents would
have been subject to, at a minimum, in camera review by the Court.

## 2.    Multiple Conspiracies And Withdrawal

Schussel's claim that denial of his Motions for Judgment of Acquittal (Dkt. 99, 108) raises substantial issues on appeal also fails.  The assertion that the Indictment charged multiple conspiracies and that the participation of co-conspirators Reed and Gomes ended more than six years before the Indictment issued, completely ignores the language of the Indictment and the evidence produced at trial.[5]  Schussel's continued reliance on Grunewald v. United States, 353 U.S. 391 (1957) is misplaced, as the controlling case under the facts of the present case is Forman v. United States, 361 U.S. 416 (1960), where the court held that concealment objectives can indeed be intertwined with an underlying money diversion/tax evasion scheme.  Id., overruled on other grounds, Burks v. United States, 437 U.S. 1 (1978).

The Indictment in this case charged Schussel with an extensive tax evasion conspiracy that existed from January 1988 through May 8, 1998, in which he knowingly and willfully conspired to defraud the United States by impeding, impairing, obstructing, and defeating the lawful government function of the Treasury Department and the Internal Revenue Service, in the ascertainment, computation, assessment and collection of revenue: to wit, federal income taxes.  See Indictment, Dkt 1 at ¶12.  Incorporated in the section of the Indictment entitled "Manner and Means," are specific acts relating to Schussel's diversion of funds to Bermuda, the obstructed audit in 1991, the filing of false tax returns for several years including 1995, meetings that were held to discuss different ways in which to conceal the diversion of funds from the IRS, and efforts to obstruct the 1997/1998 audit and the use of an attorney to achieve that goal.  The claim

---

[5] The government briefed these issues in its Government's Opposition to Defendant's Motion for Acquittal or New Trial (Dkt. 113 at 4-12).

that the Indictment charged "two discrete conspiracies," see Def. Motion at 7, instead of one single conspiracy does not present a substantial issue on appeal that is likely to result in a new trial.

Schussel's assertion that Reed and Gomes withdrew from the conspiracy also does not present a substantial issue on appeal. Withdrawal is a demanding defense requiring affirmative evidence of an effort to defeat or disavow or confess. See United States v. Potter, 463 F.3d 9, 20 (1st Cir. 2006). Typically, that requires either a full confession to authorities or a communication by the accused to his co-conspirators that he has abandoned the enterprise and its goals. See United States v. Pizarro-Berrios, 448 F.3d 1, 10 (1st Cir. 2006). Mere cessation of activity in furtherance of a conspiracy does not constitute withdrawal. See United States v. Nason, 9 F.3d 155, 162 (1st Cir. 1993). The evidence at trial simply does not support Schussel's claim that there was a withdrawal.

Both Reed and Gomes remained employed at DCI after 1996 and participated in meetings in which efforts to conceal and evade the payment of taxes for 1995 continued, including the destruction of records, providing false information to Coopers and Lybrand for a "review" of DCI's 1995 finances, and the obstruction of the 1997/1998 audit (in which Reed acted as a conduit between DeFranceschi and the revenue agent).[6] Schussel's claim that his conduct alone within the statute of limitations lacked an agreement with any second conspirator because the conspiracy had ended 6 years before the indictment issued, see Def. Motion at 6, is not supported by the evidence at trial or the law. Indeed, the fact that Schussel was the person

---

[6] See Government's Opposition to Defendant's Motion for Acquittal or New Trial (Dkt. 113 at 9-12), for greater details regarding Reed and Gomes' participation in the conspiracy from 1996 through 1998.

who committed most of the overt acts in furtherance of the conspiracy after February 26, 1998, does not mean that there was no conspiracy. The law does not require proof of overt acts undertaken by other members of the conspiracy within the statue of limitation in order to prove the ongoing existence of a conspiracy. Cf. United States v. Rabinowitz, 56 F.3d 932 (8th Cir. 1995) (lies to revenue agent by defendant provided basis to conclude that the conspiracy continued to time period within the statute of limitations). However, Schussel was not the only conspirator committing overt acts after February 26, 1998. The evidence at trial relating to Reed's involvement during the audit in transmitting information from Schussel to DeFranceschi, and to and from the revenue agent, clearly established her consistent involvement in the conspiracy. See Government's Opposition to Defendant's Motion for Acquittal or New Trial (Dkt. 113 at 10, fn. 7). In light of all the evidence at trial, there was no affirmative evidence of withdrawal from the conspiracy by Reed or Gomes produced by Schussel. This issue does not present a "close" question or one that could have been decided the other way.

### 3.        Statute Of Limitations

Schussel moved pretrial to dismiss Counts 2 and 3 for violation of the statute of limitations (Dkt. 30),[7] and this Court denied the motion on December 5, 2005, adopting and incorporating by reference the government's memorandum opposing the motion.[8] Schussel

---

[7] Although Schussel now claims that the pretrial motion to dismiss included Count 1 on the grounds that it charged a multiple conspiracy, see Def. Motion at 6, he is incorrect. The only pretrial motion to dismiss filed was on the grounds of the statute of limitations. It only related to Counts 2 and 3 (Dkt. 30).

[8] See Government's Opposition to Defendant's Motion to Dismiss Counts 2 and 3 for Violation of the Statute of Limitations (Dkt. 39). The government submitted further briefing on this issue in the Government's Opposition to Defendant's Motion for Acquittal or New Trial (Dkt. 113 at 1-4).

claims that denial of this motion presents a substantial issue on appeal likely to result in a new trial.  In making this argument, Schussel relies primarily on United States v. Uscinski, 369 F.3d 1243 (11th Cir. 2004) and Sansone v. United States, 380 U.S. 343 (1965).  Schussel asserts that the two counts charging him with tax evasion (26 U.S.C. § 7201), were barred by the statute of limitations because the crimes were complete when the tax returns were filed in 1996.  In making this argument, Schussel misconstrues the holdings in those cases to mean that the use of the term "complete" implied that in a case relating to a violation of § 7201 the statute of limitations begins to run when a tax return is filed and cannot, therefore, be extended by a subsequent affirmative act of evasion.  Schussel's position is contrary to law.

The First Circuit Court held in United States v. Ferris that "it is the date of the latest act of evasion, not the due date of the taxes, that triggers the statute of limitations." 807 F.2d 269, 271 (1st Cir. 1986); accord United States v. Anderson, 319 F.3d 1218 (10th Cir. 2003), United States v. Dandy, 998 F.2d 1344 (6th Cir. 1993); United States v. Wilson, 118 F.3d 228 (4th Cir. 1997); United States v. Winfield, 960 F.2d 970 (11th Cir. 1992); United States v. DeTar, 832 F.2d 1110 (9th Cir. 1987).  As Ferris noted, "[t]he language of § 145(b)  [the predecessor to 26 U.S.C. § 7201] which outlaws willful attempts to evade taxes 'in any manner' is clearly broad enough to include false statements made to Treasury representatives for the purpose of concealing unreported income." Ferris, 807 F.2d at 270.  In the present case, as the evidence established at trial, Schussel committed affirmative acts of evasion after February 26, 1998.  Thus, Schussel's argument does not present a substantial issue for appeal.

### 4.    Jury Instructions: Willfulness

Schussel also argues that a "substantial issue" exists over his requested jury instructions

on willfulness for the two tax evasion charges (Counts 2 and 3). He claims a "substantial issue"

exists over whether it was error for the Court not to give his requested jury instructions 3, 3(A)

and 3(D), which stated that he could not be convicted of tax evasion unless he knew he had a

duty to instruct DeFranceschi to make changes to the March 11, 1998 letter and to reject the

advice to sign the May 6, 1998 adjustment letter. See Def. Motion at 7. Schussel's complaint

about the jury instructions is not a basis for bail pending review for two reasons.

First, Schussel was not entitled to the instructions in the form he was requesting them.

As the government set forth in its opposition to Schussel's motion for judgment of acquittal, see

Government's Opposition to Defendant's Motion for Acquittal or New Trial (Dkt. 113 at 12-15),

Schussel's requested instructions were not a correct formulation of the law, and, in any event,

raised a substantial risk of confusing the jury. In addition, as the government also argued, the

Court appropriately instructed the jury on willfulness. There was no violation of Cheek v.

United States, 498 U.S. 192 (1991), as Schussel claims. Indeed, the instructions on willfulness

the Court did give, see, e.g., Jury Instructions at 20, were remarkably similar to instructions that

other courts, including the Supreme Court, have approved in tax cases. See United States v.

Pomponio, 429 U.S. 10 (1976) (per curiam) (approving jury instruction in tax case defining a

willful act as one done "voluntarily and intentionally and with the specific intent to do something

the law forbids, that is to say with the bad purpose either to disobey or disregard the law.");

United States v. Evangelista, 122 F.3d 112 (2d Cir. 1997) (approving an instruction stating that

willfulness required a "purpose either to disobey or disregard the law"; also specifically rejecting

requests for further, additional theory of defense requests bearing on good faith reliance on an accountant).

Second, and more fundamentally for purposes of this motion, Schussel's claimed error on the willfulness instruction will not "likely [] result in a reversal or an order for a new trial of all counts on which imprisonment has been imposed." Bayko, 774 F.2d at 522. Schussel's claimed error under Cheek does not affect his conviction on the Klein conspiracy count (Count 1). To establish the Klein conspiracy charge, the government did not have to prove "the heightened mens rea standard required for tax offenses," as Schussel suggests. See United States v. Derezinski, 945 F.2d 1006 (8th Cir. 1991) (rejecting a requested instruction under Cheek in a Klein conspiracy case stating "Cheek does not apply to this case because the Government prosecuted [the defendant] under a general conspiracy statute [§ 371], not a criminal tax statute, and because 'willfulness' is not an express element of section 371."). Schussel's assertion that the absence of a "Cheek instruction" was error as to Count 1 and the jury's determination of the March 11, 1998 overt act required "the same mens rea determination . . . as substantive tax counts 2 and 3" is made without any citation and, is, in fact, contrary to relevant case law. Id.; see also United States v. Cyprian, 23 F.3d 1189, 1201 (7th Cir. 1994) (rejecting notion that a Klein conspiracy conviction requires the same mens rea as that required for substantive tax crime; no need to show agreement to commit a substantive tax offense, only agreement to "interfere with or obstruct" the United States' ability to collect taxes by defrauding the IRS). Accordingly, because any success Schussel may have on appeal challenging the willfulness instruction as to Counts 2 and 3 will not affect his conviction as to Count 1, he cannot show that the claimed error on the willfulness instruction for Counts 2 and 3 provides a basis to grant him

11

bail pending appeal.  <u>See</u>, <u>e.g.</u>, <u>Skilling</u>, 2006 WL 1810109 at *7-*8 (denying bail pending

appeal where substantial question on one count of conviction did not affect other counts of

conviction).[9]

### 5.    "Theory of the Defense" Instructions

#### a.    Literal Truth

This Court's denial of Schussel's requested jury instruction that a literally true statement

could not be considered as a false statement when made in response to the revenue agent's

questions in the March 11, 1998 letter, did not deprive Schussel of a valid and legal theory of

defense.  The requested instruction was not a correct statement of the law, given that § 7201

prohibits  "any conduct, the likely effect of which would be to mislead or to conceal."  <u>See</u>, <u>e.g.</u>,

<u>Spies v. United States</u>, 317 U.S. 492, 499.  Although a false statement made to the IRS qualifies

as an affirmative act, <u>see</u> <u>e.g.</u>, <u>United States v. Frederickson</u>, 846 F.2d 517, 520-21 (8th Cir.

1988); <u>United States v. Ferris</u>, 807 F.2d 269, 270-71 (1st Cir. 1986); <u>United States v. Calles</u>, 482

F.2d 1155, 1160 (5th Cir. 1973), other statements made to the IRS with the intent to mislead or

conceal could also be sufficient to establish an affirmative act.  <u>See</u> <u>Spies</u>, 317 U.S. at 499.

Therefore, half truths, vague responses, and claimed "literally true" statements would qualify as

affirmative acts if they are willfully made with the intent to mislead or conceal.

However, in the case before the Court, the jury instruction relating to the March 11, 1998

letter, limited the jury's consideration to "false" statements, making it a much more stringent

burden on the government.  Specifically, the jury was instructed that in order to convict Schussel

---

[9]  Success on this issue will also not affect Schussel's sentence of imprisonment.  Here,
the Court ordered a 60 month term of imprisonment, which is within the statutory range of 18
U.S.C. § 371.

they had to find that the government had established beyond a reasonable doubt "that Dr. Schussel willfully committed both the affirmative act of filing or causing to be filed a false and fraudulent tax return for the calendar year 1995 and the *affirmative act of making or causing to be made false statements to a revenue agent* in order to mislead and impede an audit examination on or about March 11, 1998." Jury Instructions at 20 (emphasis added). By telling the jury that it had to find that Schussel either made or caused to be made "false statements to a revenue agent," if the jury had only found "literally truthful" statements in the March 11, 1998 letter, they would have acquitted Schussel. The jury instruction given by the Court was proper and failure to give Schussel's requested instruction does not raise a substantial issue on appeal.

### b.      Multiple Conspiracies Instruction

The Court did not commit error in refusing to give Schussel's specific jury instruction regarding multiple conspiracies and such a ruling does not present a substantial issue on appeal that is likely to result in a new trial. Unless and until there was sufficient evidence to warrant a special instruction to the jury, the proper question for the jury was whether the government proved beyond a reasonable doubt the defendant participated in a conspiracy as charged. Schussel's effort to artificially subdivide the conspiracy into separate phases does nothing to clarify the issues in the case and much to invite error. See Forman, 361 U.S. at 424; see also United States v. Morrow, 39 F.3d 1228, 1233-34 (1st Cir. 1994).

The Court's instruction to the jury allowed them to consider whether there existed a single or multiple conspiracies. Specifically, the Court instructed the jury that in order to convict Schussel of conspiracy, the government had to prove beyond a reasonable doubt that it was the conspiracy "*specifically alleged in count one*" that had to be proven, "*and not some other*

*conspiracy or conspiracies*." <u>See</u> Jury Instructions at 15 (emphases added). The Court also instructed that the jury needed to find that one of the conspirators committed an overt act to further the purpose of the conspiracy on or after February 26, 1998. <u>Id.</u> at 17. This further instruction clearly directed the jury to determine whether or not one of the conspirators committed an overt act within the statute of limitations.

### c.    Withdrawal Instruction

Schussel's contention that the Court committed error in not giving the jury an instruction on withdrawal from the conspiracy regarding Schussel's claim that he withdrew from the conspiracy in 1996 does not raise a substantial issue on appeal. The Court properly rejected his proposed instruction as there was insufficient evidence at trial to support it. While a defendant is entitled to instructions on his theory of the defense if he produces some evidence to support all elements of his theory, <u>see</u> <u>United States v. Nason</u>, 9 F.3d 155, 161 (1st Cir. 1993), here, there was not sufficient evidence for such an instruction. As discussed above, in order to withdraw, a conspirator must act affirmatively either to defeat or disavow the purposes of the conspiracy. Mere cessation of activity in furtherance of a conspiracy does not constitute withdrawal.

The evidence at trial showed that Schussel continued to participate in the conspiracy and took steps in furtherance of the conspiracy. At trial, the evidence established that Schussel consistently engaged in efforts to avoid the payment of taxes for 1995 and prior years by concealing the Bermuda money trail; he caused Coopers & Lybrand to conduct a review of DCI's finances for 1995 that was based on false income statements and general ledgers; he participated in numerous meetings with Reed and Gomes to discuss and plan different ways in which records could be concealed or destroyed to prevent potential DCI buyers or the IRS from discovering the

14

evasion; he used an attorney to provide a phony contract and false information to the IRS in order to mislead and impede the 1997/1998 audit; and, he agreed to pay a final adjustment to the IRS in May 1998 that he knew was based on false information provided to the IRS.  Given the evidence presented at trial, Schussel was not entitled to an instruction on the defense of withdrawal and the statute of limitations was properly addressed in the jury instruction given by the Court.  See Jury Instructions at 17-20.  This issue does not present a close question or one that would have gone the other way.

**d.      Attorney-Client Relationship**

Schussel is also not correct that the Court's decision not to give Schussel's requested instructions on the attorney-client relationship raise a substantial issue.  As the government addressed in its opposition to the motion for judgment of acquittal, the Court properly decided not to give Schussel's requested instructions.  See Government's Opposition to Defendant's Motion for Acquittal or New Trial (Dkt. at 18-19).  There was no basis for these instructions. The requested instructions were not a defense properly put to the jury.  Schussel provided no citation to any authority authorizing such instructions or theories of defense.  In addition, the requested instructions were simply attempts to insert an advice of counsel defense that Schussel claimed he was not pursuing and for which there was not a sufficient evidentiary basis to request anyway.  Furthermore, all of the instructions were particularized and skewed variants of good faith instructions which raised a considerable risk of confusing, rather than assisting the jury in its function.  It was entirely proper for the Court to decline Schussel's particular formulation and opt for a more conventional good faith instruction.  Schussel will not be able to show any error or prejudice.

15

      **e.     Preclusion Of Finding Of Guilt Based On DeFranceschi's Involvement**

Finally, Schussel's request for the additional instruction regarding DeFranceschi's involvement in the conspiracy does not raise a substantial issue either. As the government argued in its opposition to Schussel's motion for judgment of acquittal, Schussel was not entitled to that instruction. Furthermore, the instruction the Court did give on the conspiracy count adequately addressed the concern Schussel raised by focusing the jury on the actual charged conspiracy – and no other:

> If you find that the conspiracy alleged in count one did not exist, then you must return a verdict of not guilty on that count, even if you find that some other conspiracy existed and that Dr. Schussel was a member of that other conspiracy.

Jury Instruction at 16. There is no substantial issue for appeal on the Court's decision not to give the supplemental instruction.

## <u>Conclusion</u>

For these reasons, the Court should deny Schussel's motion for bail pending appeal. His motion does not meet the requirements of 18 U.S.C. § 3143.

                Respectfully submitted,

                MICHAEL J. SULLIVAN
                United States Attorney

By:

                **<u>/s/ Carmen M. Ortiz</u>**
                Carmen M. Ortiz
                Jack W. Pirozzolo
                Assistant U.S. Attorneys
                U.S. Attorney's Office
                One Courthouse Way
                Boston, MA 02210

Date:   July 30, 2007

## <u>CERTIFICATE OF SERVICE</u>

I, Jack W. Pirozzolo, hereby certify that on July 30, 2007, I served a copy of the foregoing by electronic filing on counsel for the defendant.

<u>**/s/ Jack W. Pirozzolo**</u>
Jack W. Pirozzolo