UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA | )<br>)<br>) |
| v. | ) CRIMINAL NO. 04-10060-RCL<br>)<br>) |
| GEORGE SCHUSSEL | )<br>) |

**DEFENDANT GEORGE SCHUSSEL'S REPLY TO GOVERNMENT'S OPPOSITION TO HIS MOTION FOR BAIL PENDING APPEAL**

An individual's liberty pending appeal is not contingent upon a finding by the district court that it is likely to be reversed on appeal. If the appeal presents a substantial question, as that term is defined by *Bayko*, bail pending appeal can be appropriate even if the district court remains convinced that its rulings were correct and that the appellate court is likely to uphold his rulings. What matters is whether the appeal presents a substantial question, and this Court has already found that Schussel's appeal does present such questions. If a substantial question is present, the Court must assume, for purposes of the bail pending appeal decision, that the appellate court will decide the question the other way and analyze the effect of that contrary ruling on the defendant's convictions, *i.e.*, assess whether the error was harmless. The government makes no serious effort to argue that, if the First Circuit ruled in Schussel's favor on one or more issues, the error(s) would be harmless.

This case presents a number of important and complex issues for which there is no controlling precedent, and which would require reversal or a new trial if decided in Schussel's favor. Schussel should not be detained before an appellate court has passed on those issues, especially as

he presents no risk of flight or dangerousness.[1]

The government makes the curious statement that "more" than a substantial issue is needed to satisfy the bail pending appeal standard, and on that basis urges that the Court's prior findings that the issues are substantial are irrelevant. *See* Opposition at 3. A "substantial question of law or fact," is, however, exactly what the first portion of the *Bayko* standard requires. *Bayko* does not, contrary to the government's suggestion, require that there be a "substantial chance of reversal or of a new trial." Opposition at 3. In so formulating the standard, the government perpetuates the error of essentially conflating the two separate portions of the *Bayko* standard to arrive at a more exacting standard than *Bayko* and 18 U.S.C. §3143(b)(1)(B) require. As addressed in Schussel's motion at 1-3, the first portion of the standard relates to the nature of the question presented – "a 'close' question or one that very well could be decided the other way," *United States v. Bayko*, 774 F.2d 516, 523 (1st Cir. 1985) – and the second portion relates to the likeliness of reversal or a new trial if the appellate court decides the issues in the defendant's favor. *Id.* Thus, the court is not to ask whether there is a substantial chance of reversal, but instead whether the appeal presents a *substantial question* which, if decided favorably to the defendant, will likely result in reversal or an order for new trial. The issues to be raised in Schussel's appeal satisfy this standard.

The statute of limitations issue, *see* Opposition at 8-9, presents a paradigmatic example of a close question that could be decided the other way, as the Eleventh Circuit in *United States v. Uscinski*, 269 F.3d 1243 (11th Cir. 2004), *did* decide the issue as Schussel contends it should be

---

[1] The government continues to argue that Schussel presents a risk of flight. Opposition at 1 n.1. This Court has already correctly found otherwise.

decided.[2] As Schussel has previously argued at length, *United States v. Ferris*, 807 F.2d 269, 271 (1st Cir. 1986), is not to the contrary. The question whether the First Circuit will follow *Uscinski* and limit *Ferris* to cases in which no return has been filed is a substantial one within the meaning of *Bayko*.

Another error which pervades the government's opposition is its apparent belief that it can demonstrate the lack of a substantial question by presenting the same legal and factual arguments which it advanced when these issues were originally litigated before the Court. This error is illustrated by the government's discussion of the multiple conspiracy/withdrawal issues, Opposition at 6-8, in which all the government does is restate the same legal and factual arguments it advanced during trial. *See also* Opposition at 8-9 (statute of limitations issues), 10-12 (wilfulness instruction), 12-14 (theory of defense instructions). Whether this case is controlled by *Grunewald or Forman*, for example, is a question which will be decided by the appellate court, and the government does not demonstrate that this is not a substantial question by simply arguing as it does that the defendant is wrong on the merits. *See* Defendant George Schussel's Motion for Judgment of Acquittal or, in the Alternative, A New Trial ("JOA/NT Motion") (Doc. 108) at 10-13.

The time for the presentation of those arguments is on appeal. The defendant will present his arguments, the government will present its counter arguments, and the First Circuit will rule. Questions are not rendered non-substantial for purposes of bail pending appeal simply because the government can marshal arguments – even strong arguments – for its position. Substantial questions

---

[2] The government cites *United States v. Winfield*, 960 F.2d 970 (11th Cir. 1992), in support of its argument, but in *Uscinski* the Eleventh Circuit expressly limited *Winfield* to cases in which no return had been filed. 369 F.3d at 1247 n.*.

by definition will frequently be characterized by strong legal arguments on both sides.

Nor, as the government suggests, does the care and attention devoted to the issue by the district court indicate that a question is not substantial, *see* Opposition at 4-5; in fact, it would tend to indicate quite the opposite. What the government is really arguing is that the Court spent so much time on the attorney-client privilege issues that its decision is likely to have been correct and not likely to be reversed on appeal. *See* Opposition at 5 ("Given the numerous reviews and careful determinations made by the Court, there is no indication that this is a substantial issue on appeal"). This is not, however, the test.

The government's arguments with respect to this Court's failure to give a *Cheek* instruction, Opposition at 10-11, completely fail to recognize that *Cheek* requires more than the standard wilfulness instruction, which is all that this Court gave the jury. Schussel requested that the jury be instructed that "Schussel acted wilfully if the law imposed a duty on him, he knew of that duty, and he voluntarily and intentionally violated that duty." Proposed Instruction No. 3. This was a correct statement of the law. The government's argument that the Court's wilfulness instructions were "remarkably similar" to the instructions given in *United States v. Pomponio*, 429 U.S. 10, 11 (1991), and *United States v. Evangelista*, 122 F.3d 112, 116 (2d Cir. 1997), Opposition at 10, is simply incorrect. The court instructed only that "[t]o act wilfully means to act knowingly and voluntarily with the specific intent to disobey or disregard the law. The term excludes acts done out of ignorance, accident, or mistake." Instructions at 20. *Cheek* requires more. *See* JOA/NT Motion at 9-10; Defendant George Schussel's Reply to Government's Opposition to His Motion for Judgment of Acquittal or, in the Alternative, A New Trial ("JOA/NT Reply")(Doc. 115) at 2-4.

Contrary to the government's argument, the absence of a *Cheek* instruction here does, under

the circumstances of this case require reversal of Schussel's Count 1 conviction. The question here is not, as in *United States v. Derezinski*, 945 F.2d 1006 (8th Cir. 1991), and *United States v. Cyprian*, 23 F.3d 1189, 1201 (7th Cir. 1994), on which the government relies, Opposition at 11, the *mens rea* for conviction of a *Klein* conspiracy under 18 U.S.C. §371 but instead the *mens rea* necessary for the critical overt acts – the March 11, 1998, letter and the May 6, 1998, adjustment. If neither of these overt acts were wilful acts of tax evasion – which they cannot be found to be unless the government satisfied the *Cheek* wilfulness standard as to these acts beyond a reasonable doubt – then there was no wilful act of tax evasion within the statute of limitations, and Count 1 would be time-barred, requiring reversal of Schussel's conviction.

      The government's arguments as to the Court's refusal to give a "literal truth" instruction are similarly unavailing. The Court's instructions did not place on the government a "more stringent" burden than the charged offenses required. *See* Supplemental Response at 12-13. It was the *government* which chose to charge Schussel in Counts 2 and 3 with "making and causing to be made *false* statements," Indictment at 16-17 (emphasis added), and the Court rightly required the government to prove what it had charged, not some other sort of §7201 offense. Similarly, Schussel's request that the jury be charged that a literally true statement could not be found by them to be a *false* statement was geared to the offense actually charged by the government in this case. It is irrelevant that other types of conduct might also violate §7201. Further contrary to the government's argument, telling the jury that it could convict Schussel only if it found that Schussel had made or caused to be made false statements did *not* tell the jury that it was required to acquit Schussel if it found that the statements in the March 11, 1998, letter were literally truthful. *See* Opposition at 12-13. The whole point of a literal truth instruction is to inform the jury that a statement with is literally true, but

misleading or incomplete, cannot be found to be a false statement. That this is necessary guidance which the jury requires was settled by *Bronston v. United States*, 409 U.S. 352 (1973), for perjury prosecutions, which the First Circuit has also applied in §1001 false statements cases and bank fraud cases. *See United States v. Poutre*, 646 F.2d 685, 687-88 (1st Cir. 1980); *United States v. Attick*, 649 F.2d 61, 63 (1st Cir. 1981). There is no principled reason why the same rule should not be applied in §7201 prosecutions predicated on false statements, and this remains an open – and substantial – question in the First Circuit.

Schussel has not attempted to "artificially subdivide" the conspiracy into separate phases, Opposition at 13, any more than the division according to the nature of the conspiratorial agreement was "artificial" in *Grunewald v. United States*, 353 U.S. 391 (1957), controlling Supreme Court authority for Schussel's position. *See* JOA/NT Motion at 3-6,10-13; Defendant George Schussel's Motion for Judgment of Acquittal and Incorporated Memorandum of Law ("JOA Motion")(Doc. 99) at 1-6. The fact of the matter is that, contrary to the government's argument, the Court gave neither a general multiple conspiracy instruction nor a *Grunewald* instruction, regarding both of which there is adequate support in the record to require the giving of the instruction. Similarly, there was also adequate evidence to support the giving of a withdrawal instruction. *See* JOA/NT Motion at 17-19; JOA Motion at 6-7; JOA/NT Reply at 11-12. All of these issues present substantial questions – they are, at a minimum, close questions which could well have been decided the other way.

The Court's failure to give the instructions requested by Schussel regarding the attorney-client relationship, or at least their substance, if not the same language, also present a substantial issue on appeal. For all the reasons which have been previously addressed, these instructions represented correct statements of the law, and the Court's failure to so instruct effectively eviscerated

his defenses. *See* JOA/NT Motion at 16-17; JOA/NT Reply at 8-9. As with most of its other arguments, all that the government does here is rehash its arguments why such an instruction should not have been given. Its argument may explain why the government believes that the First Circuit will resolve the issue in its favor, but it does not establish that the issue does not present a substantial question.

The failure to instruct that the jury could not convict Schussel on the theory that DeFranceschi was a coconspirator presents a substantial issue for all the reasons set forth in JOA/NT Motion at 14-16; JOA/NT Reply at 6-7, which more adequately refute the government's arguments, which do not in any event demonstrate that this is not a substantial question to be presented on appeal. The failure to give the requested instruction, which was required to counteract the government's rebuttal argument in which it for the first time suggested that DeFranceschi might be criminally culpable, undermined Schussel's entire defense, which was predicated on the understanding, derived from the government's statements in discovery, that the government did not contend that DeFranceschi was a coconspirator.

## CONCLUSION

For all the foregoing reasons, and for all the reasons set forth in Schussel's original motion, the requirements for bail pending appeal are satisfied in this case, and this Court should permit Schussel to remain free, on terms and conditions which this Court deems appropriate, pending his appeal to the First Circuit.

                                              Respectfully submitted,
                                              By his attorneys,

| **/s/ Francis J. DiMento** | **/s/ Martin G. Weinberg** |
|---|---|
| Francis J. DiMento. | Martin G. Weinberg |
| DiMento & Sullivan | Mass. Bar. No. 519480 |
| 7 Faneuil Hall Marketplace | 20 Park Plaza, Suite 905 |
| Boston, Massachusetts 02109 | Boston, Massachusetts 02116 |
| (617) 523-2345 | (617) 227-3700 |

## CERTIFICATE OF SERVICE

      I, Martin G. Weinberg, hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) on July 31, 2007.

                                                                           **/s/ Martin G. Weinberg**